1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

                         ----oo0oo----

11

12  THE NATIONAL GRANGE OF THE          CIV. NO. 2:14-00676 WBS DAD
    ORDER OF PATRONS OF
13  HUSBANDRY, a District of            MEMORANDUM AND ORDER RE: CROSS-
    Columbia nonprofit                  MOTIONS FOR SUMMARY JUDGMENT
14  corporation,

15              Plaintiff,

16       v.

17  CALIFORNIA STATE GRANGE, a
    California corporation,
18

19              Defendant.

20

                         ----oo0oo----

21

22          Plaintiff National Grange of the Order of Patrons of

23  Husbandry brought this action for trademark infringement against

24  defendant California State Grange.   Presently before the court

25  are the parties' cross-motions for summary judgment pursuant to

26  Federal Rule of Civil Procedure 56.

27  I. Factual and Procedural Background

28          Plaintiff is a national fraternal agricultural

                                1

1    organization founded in 1867 to promote the interests of farmers

2    and farming in the United States.  (Luttrell Decl. ¶¶ 2, 5

3    (Docket No. 43-2).)  Plaintiff has grown to a network of

4    approximately 2,000 local chapters across the country, through

5    which it provides a variety of goods and services to agricultural

6    communities.  Plaintiff has registered numerous trademarks

7    featuring the word "Grange," which it uses for associational,

8    educational and advocacy activities.   (Turrill Decl. Ex. 21

9    (Docket No. 43-6); Luttrell Decl. ¶ 7.)

10          On July 15, 1873, plaintiff chartered defendant

11   California State Grange as its affiliate state-level chapter.

12   (Turrill Decl. Ex. 9.)  As a chartered affiliate, defendant

13   collected dues from local subordinate Granges and turned over a

14   portion of those dues to plaintiff.  (May 14, 2014 McFarland Dep.

15   at 44:22-45:15 (Docket No. 43-7).)

16          On April 5, 2013, plaintiff revoked defendant's charter

17   due to a dispute.  (Luttrell Decl. ¶¶ 19, 24; Turrill Decl. Ex.

18   15.)  In response, defendant sent a letter disclaiming any

19   further affiliation with plaintiff and stated that it would amend

20   its bylaws to reflect its new status.  (Turrill Decl. Ex. 19.)

21          Despite its disaffiliation, defendant continues to use

22   the name "California State Grange" at events, on its website, and

23   in its newsletter and other communications.  (May 14, 2014

24   McFarland Dep. at 112:8-11; Turrill Decl. Exs. 7, 23, 24.)

25   Plaintiff sent a cease and desist letter to defendant on December

26   2, 2013.  (Turrill Decl. Ex. 20.)  When defendant was

27

28

1   unresponsive, plaintiff filed this lawsuit.[1]

2           Plaintiff brought claims under the Lanham Act for (1)

3   trademark infringement, 15 U.S.C. § 1114; (2) unfair competition

4   and false designation of origin, 15 U.S.C. § 1125(a); (3)

5   trademark dilution, 15 U.S.C. § 1125(c); and (4) trademark

6   counterfeiting, 15 U.S.C. § 1114(1).  (Compl. ¶¶ 48-101.)

7   Defendant answered with numerous affirmative defenses and

8   counterclaims seeking a declaratory judgment that plaintiff's

9   trademark is invalid.  (Am. Answer (Docket No. 24).)  Plaintiff

10  now moves for partial summary judgment on its first and second

11  claims for trademark infringement and unfair competition,

12  respectively, and also on defendant's counterclaims.  (Docket No.

13  43.)  Defendant also moves for summary judgment on all of

14  plaintiff's claims and its counterclaims on the grounds that it

15  is entitled to the defenses of genericness, abandonment,

16  acquiescence, and unclean hands.  (Def.'s Mem. at 2 (Docket No.

17  44); Def.'s Opp'n at 2 (Docket No. 51).)

18  II. <u>Discussion</u>

19          Summary judgment is proper "if the movant shows that

20

21          [1]    Plaintiff also initiated a proceeding in California
    state court, <u>National Grange v. California State Grange</u>, Civ. No.
22  34-2012-00130434 (Cal. Sup. Ct. filed Oct. 1, 2013), seeking a
    declaration of the rights and duties of the parties following the
23  revocation of California State Grange's charter.
            In addition, there is a related case before this court,
24  <u>California State Grange v. Grange of the State of California's</u>
    <u>Order of Patrons of Husbandry</u>, Civ. No. 2:15-00317 (E.D. Cal.
25  filed Feb. 6, 2015), in which California State Grange is suing an
    affiliate of the National Grange for trademark infringement.  The
26  court denied a motion to consolidate that action with the present
    one, because doing so would have caused delay in the present
27  action.  (June 29, 2015 Order (Docket No. 52).)

28

                                    3

1   there is no genuine dispute as to any material fact and the

2   movant is entitled to judgment as a matter of law."  Fed. R. Civ.

3   P. 56(a).  A material fact is one that could affect the outcome

4   of the suit, and a genuine issue is one that could permit a

5   reasonable jury to enter a verdict in the non-moving party's

6   favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

7   (1986).  The party moving for summary judgment bears the initial

8   burden of establishing the absence of a genuine issue of material

9   fact and can satisfy this burden by presenting evidence that

10  negates an essential element of the non-moving party's case.

11  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

12  Alternatively, the moving party can demonstrate that the non-

13  moving party cannot produce evidence to support an essential

14  element upon which it will bear the burden of proof at trial.

15  Id.

16          Once the moving party meets its initial burden, the

17  burden shifts to the non-moving party to "designate 'specific

18  facts showing that there is a genuine issue for trial.'"  Id. at

19  324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden,

20  the non-moving party must "do more than simply show that there is

21  some metaphysical doubt as to the material facts."  Matsushita

22  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

23  "The mere existence of a scintilla of evidence . . . will be

24  insufficient; there must be evidence on which the jury could

25  reasonably find for the [non-moving party]."  Anderson, 477 U.S.

26  at 252.

27          In deciding a summary judgment motion, the court must

28  view the evidence in the light most favorable to the non-moving

1    party and draw all justifiable inferences in its favor.  Id. at

2    255.  "Credibility determinations, the weighing of the evidence,

3    and the drawing of legitimate inferences from the facts are jury

4    functions, not those of a judge . . . ruling on a motion for

5    summary judgment . . . ."  Id.  On cross-motions for summary

6    judgment, the court "must review the evidence submitted in

7    support of each cross-motion [in a light most favorable to the

8    non-moving party] and consider each party's motions on their own

9    merits." Corbis Corp. v. Amazon.com, Inc., 351 F. Supp. 2d 1090,

10   1097 (W.D. Wash. 2004).

11              A.  Trademark Infringement under § 1114

12        To prevail on its trademark infringement claim under §

13   1114 of the Lanham Act, a plaintiff must prove: (1) that it has a

14   protectable ownership interest in the mark; and (2) that the

15   defendant's use of the mark is likely to cause consumer

16   confusion."[2]  Rearden LLC v. Rearden Commerce, Inc., 683 F.3d

17   1190, 1202 (9th Cir. 2012) (internal quotation marks and citation

18   omitted).

19              1. Validity of the Trademark

20        "Federal registration of a mark constitutes prima facie

21   evidence of the validity of the mark." Yellow Cab Co. of

22   Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 928

23

24        [2]    Plaintiff must also prove that defendant is using
     plaintiff's mark without plaintiff's consent in commerce.  See
25   Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1079
     (C.D. Cal. 2012) (discussing the elements of an infringement
26   claim).  Because it is apparently undisputed that defendant is
     using plaintiff's mark in commerce without plaintiff's consent,
27   (see May 14, 2014 McFarland Dep. at 112:8-11), the court will
     focus its analysis on the remaining elements.
28

1    (9th Cir. 2005).  "If the plaintiff establishes that a mark has

2    been properly registered, the burden shifts to the defendant to

3    show by a preponderance of the evidence that the mark is not

4    protectable."  Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d

5    1108, 1114 (9th Cir. 2010).  Plaintiff has submitted evidence of

6    their registrations of the Grange trademark, (see Watson Decl. ¶

7    7, Ex. 21), and defendant has not raised a genuine dispute that

8    the registration was proper.  Plaintiff's trademark "Grange" is

9    thus presumptively valid, and the burden shifts to defendant to

10   show it is invalid because it is generic.

11        A term is generic if it "refers, or has come to be

12   understood as referring to the genus of which the particular

13   product or service is a species."  Filipino Yellow Pages, Inc. v.

14   Asian J. Publ'ns, Inc., 198 F.3d 1143, 1147 (9th Cir. 1999).  A

15   generic term is not protectable as a trademark.  Rudolph Int'l,

16   Inc. v. Realys, Inc., 482 F.3d 1195, 1197 (9th Cir. 2007).  It

17   lies in the public domain.  Classic Food Int'l Corp. v. Kettle

18   Foods, Inc., 468 F. Supp. 2d 1181, 1188 (C.D. Cal. 2007).

19        "Whether a mark is generic is a question of fact."

20   Yellow Cab, 419 F.3d at 929 (internal quotation marks and

21   citation omitted).  The test is "whether consumers understand the

22   word to refer only to a particular producer's goods or whether

23   the consumer understands the word to refer to the goods

24   themselves."  Id. (internal quotation marks and citation

25   omitted).  Courts in the Ninth Circuit have called this the

26   "'who-are-you/what-are-you' test: a valid trademark answers the

27   former question, whereas a generic product name or adjective

28   answers the latter."  Rudolph Int'l, 482 F.3d at 1198.

1   As support for its contention that "grange," as it is

2   used by plaintiff, is generic, defendant offers an excerpt from

3   the 1980 edition of the Random House Dictionary.  (See Def.'s

4   Mot. Ex. D.)  Courts sometimes consider dictionaries as evidence

5   that a term is generic.  See Filipino Yellow Pages, 198 F.3d at

6   1147-48 (citing Webster to support the observation that "yellow

7   pages" is generic); Surgicenters of Am., Inc. v. Med. Dental

8   Surgeries, Co., 601 F.2d 1011, 1020 (9th Cir. 1979) (noting that

9   the district court "careful analy[zed]" genericness by

10  considering dictionary definitions and other evidence of generic

11  use).

12   Random House does not support defendant's position that

13  "grange" is a generic term meaning farmers' association.  The

14  1980 edition defines Grange as

15

16   n. 1. Brit. A farm with its nearby buildings.  2.
     (cap.) a lodge or local branch of a farmers'
17   association in the U.S.

18

19  (Def.'s Mot. Ex. D.)  Random House indicates that the secondary

20  use of Grange is "cap." or capitalized, meaning it is a proper

21  noun, naming a particular thing.  This would suggest that the

22  secondary definition refers to a local branch affiliated with one

23  particular national association, plaintiff.  A more contemporary

24  dictionary definition further reflects that Grange, when used to

25  mean an association of farmers, is a proper noun naming

26  plaintiff's organization.  In the more recent 2005 version of the

27  Random House dictionary, the secondary definition of "grange" is

28  "the Patrons of Husbandry, a farmer's organization formed in 1867

7

1   for social and cultural purposes." (Pl.'s Opp'n Turrill Decl.

2   Ex. N.)  No trier of fact could reasonably conclude from these

3   dictionary definitions that "grange" is a generic term denoting a

4   local branch of <u>any</u> farmers' association.

5         Beyond the dictionary, there is nothing before the

6   court suggesting plaintiff's use of "grange," particularly when

7   capitalized, is generic.  Defendant has not pointed to a single

8   use of "grange" meaning a local chapter of an association of

9   farmers in the United States that predates plaintiff's use.

10  Moreover, the court has not found any use of "grange" meaning

11  farmers' association other than plaintiff and its affiliates and

12  defendant's uses.  The only conclusion the court can reasonably

13  draw from the evidence before it is that "Grange" does not signal

14  "an association of farmers," but rather the national association

15  of farmers founded by plaintiff in 1867.

16        Moreover, "there is no legal disability in taking a

17  generic name and using it as a trademark for another type of

18  product."  2 <u>McCarthy on Trademarks and Unfair competition</u> § 12:1

19  n.10 (4th ed.).  Arbitrary marks are protectable even though they

20  are comprised of generic terms, because they do not describe the

21  goods or services offered by the user of the mark.  <u>Sara Lee</u>

22  <u>Corp. v. Kayser-Roth Corp.</u>, 81 F.3d 455, 464 (4th Cir. 1996).

23  Based on the dictionary definition offered by defendant, "grange"

24  is a generic term for a farm with its nearby buildings.

25  "Grange," as plaintiff uses it, does not signify that plaintiff

26  deals in "a farm with its nearby buildings."  It names

27  plaintiff's national association.

28        Plaintiff's mark is therefore not generic, and there is

8

1   no genuine issue of material fact as to the validity of the term

2   "Grange" as a protectable trademark.[3]

3                           2. Consumer Confusion

4           The second element requires a plaintiff to show that "a

5   reasonably prudent consumer in the marketplace is likely to be

6   confused as to the origin or source of the goods or services

7   bearing one of the marks or names at issue in the case."

8   Rearden, 683 F.3d at 1209.  The record is replete with evidence

9   that a reasonably prudent Grange member, prospective member, or

10  other person contemplating doing business with it is likely to be

11  confused as to the origin of defendant's services due to its use

12  of "Grange."

13          Defendant's use of "grange" on its website strongly

14  suggests it is associated with plaintiff.  The homepage of

15  defendant's website, which carries the domain

16  californiagrange.org, reads,

17

18          The Grange is a grass roots organization that began in
            1867, in the aftermath of the destructive and divisive
19          Civil War. . . . We built halls across the rural
            landscape of America. . . . For more than 140 years,
20          we've preserved our founding principles of unity,
            liberty, and charity.
21
            _____

22          [3]     Another category of mark is a descriptive term.  Unlike
    a generic term, a descriptive term may sometimes be protected as
23  a trademark "if the public comes to associate the mark with a
    specific source."  Kendall-Jackson Winery, Ltd. v. E. & J. Gallo
24  Winery, 150 F.3d 1042, 1047 (9th Cir. 1998).  This acquired
    distinctiveness is referred to as 'secondary meaning.'  Id.
25  Whether a mark has a secondary meaning is a question of fact.
    Yellow Cab, 419 F.3d at 930.  Defendant conflates the test for a
26  generic mark and a descriptive mark.  Because the court
    determines that plaintiff's mark is protectable because it is not
27  generic, it need not discuss whether it might also be protected
    as a descriptive mark because it has a secondary meaning.
28
                                    9

1

2   (Turrill Decl. Ex. 26 (emphasis added).)  Here, defendant

3   recounts plaintiff's history, and not its own.  Plaintiff, the

4   national association, and not defendant, which limits its

5   services to California, "built halls across the rural landscape

6   of America."  By using "we," defendant is likely to cause a

7   member or prospective member to believe it is affiliated with

8   plaintiff.  Defendant's use of the slogan "We are the Grange" in

9   its website banner, (see id.), implies it is part of "the

10  Grange," plaintiff's national association.  There are many more

11  examples on defendant's website and in its newsletters of what

12  appear to be uses of "grange" likely to cause the consumer to

13  believe defendant is affiliated with plaintiff, which the court

14  will not enumerate for the sake of brevity.  (See id. Exs. 7, 23,

15  24.)

16          Beyond defendant's communication tools, defendant's use

17  of plaintiff's mark is likely to cause confusion, because both

18  plaintiff and defendant offer similar services.  At the hearing,

19  counsel for defendant admitted defendant provides the same

20  services as plaintiff.  (See id.)  Because those services are

21  identical, a party looking to join the official Grange will

22  likely believe that defendant is somehow affiliated with

23  plaintiff.  See U.S. Jaycees v. San Francisco Jr. Chamber of

24  Commerce, 354 F. Supp. 61, 76 (N.D. Cal. 1972) (finding that

25  because defendant's and plaintiff's civic services were

26  substantially similar, defendant's use of plaintiff's trademark

27  would likely confuse consumers).

28          Lastly, because plaintiff chartered a new chapter in

1   California after defendant's disaffiliation, members and

2   prospective members in California are now likely to be confused

3   as to which California-based Grange is affiliated with national

4   organization.  In 2014, after defendant disaffiliated,

5   California-based members of National Grange voted to reorganize a

6   state Grange under the name Grange of the State of California's

7   Order of Patrons of Husbandry, Chartered.  It is foreseeable that

8   a prospective or current member would be uncertain as to which

9   California Grange originates from the national organization.  See

10  U.S. Jaycees, 354 F. Supp. at 76 (considering that there was a

11  new official local affiliate bearing a similar name to the

12  disaffiliated defendant as a factor weighing in favor of finding

13  a likelihood of confusion).

14          Defendant has even conceded that two California

15  organizations using the name "Grange" would--and has--caused

16  consumer confusion.  In a separate lawsuit, California State

17  Grange is suing the Grange of the State of California's Order of

18  Patrons of Husbandry ("TGSC") for trademark infringement.  See

19  Cal. State Grange v. Grange of the State of Cal.'s Order of

20  Patrons of Husbandry, Civ. No. 2:15-00317 (E.D. Cal. filed

21  February 6, 2015).  In that suit, California State Grange alleges

22  TGSC's use of the Grange mark causes "great confusion" among

23  local granges, causing them to pay their dues to TGSC rather than

24  California State Grange.  (See id., Compl. ¶ 13-14.)  In his

25  deposition for this lawsuit, defendant's president, Robert

26  McFarland, stated that TGSC's use of "Grange" caused actual

27  confusion:

28

> [W]e know of some of our Granges that have accidently
> sent their reports and dues to [TGSC]. I get emails
> and phone calls consistently from--when they get a
> bulletin from [TGSC]. They say, "Is this--is that you
> or is it"--like they refer to--[TGSC]. . . . So I
> consistently have to enlighten them and tell them
> where the communications are coming from.

(McFarland Dep. at 162:7-18.)

In light of defendant's concession, and the absence of any evidence or argument for why defendant's use of "Grange" is not likely to cause consumer confusion, only one inference can be drawn: defendant's use of "Grange" is likely to cause, and apparently has caused, a reasonably prudent consumer in the marketplace to be confused about the origin of defendant's services. Because there is also no genuine issue of fact regarding the "Grange" mark's validity, plaintiff has undisputedly established a trademark infringement claim under § 1114.

B. Defendant's Affirmative Defenses

1. Estoppel by Acquiescence

Defendant insists it had a "long and continued public use of Grange" for 150 years that went unchallenged, and so the court should estop plaintiff from prevailing in a suit that it has waited a century-and-a-half to bring. (Def.'s Mem. at 6-7 (Docket No. 44-1).) To establish a claim for acquiescence, defendant must prove that plaintiff knew of facts giving it notice of its trademark infringement claim. Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc., 106 F.3d 894, 899 (9th Cir. 1997). As previously discussed, a trademark infringement claim requires showing that plaintiff had a

1  protectable interest in the mark and that defendant's use of the

2  mark was likely to cause consumer confusion.  Rearden LLC, 683

3  F.3d at 1202.

4       The facts giving rise to the second element of

5  plaintiff's trademark claim did not exist until defendant

6  disaffiliated with plaintiff in April 2013.  So long as defendant

7  remained affiliated with plaintiff, a reasonably prudent consumer

8  in the marketplace would have been correct, and not confused, to

9  believe that defendant's use of "Grange" marked its affiliation

10  with plaintiff.  There would have been no risk of consumer

11  confusion until after defendant officially declared it was

12  disaffiliating and stopped paying dues to plaintiff.  Once

13  defendant no longer bore any relation to plaintiff, and was

14  operating by its own bylaws, (McFarland Decl. ¶ 13), and

15  collecting dues on its own terms, (McFarland Dep. at 147:13-

16  150:12), there arose a risk that consumers might be confused as

17  to whether defendant's use of "Grange" meant the "source" of its

18  services was the national order.

19       A month after defendant disclaimed its affiliation in

20  November 2013, and the facts existed that put plaintiff on notice

21  that defendant's use was likely to mislead consumers into

22  thinking it remained affiliated with plaintiff, plaintiff sent

23  defendant its cease and desist letter, (Turrill Decl. Ex. 20),

24  and filed this lawsuit in March 2014.  Waiting four months to

25  file a lawsuit after being put on notice that the facts

26  supporting an infringement claim exists is hardly acquiescence.

27  Based on the evidence before the court, defendant appears to be

28  unable to prevail on its acquiescence theory.  See Celotex, 477

1   U.S. at 323 ("[T]he plain language of 56(c) mandates the entry of

2   summary judgment, after adequate time for discovery and upon

3   motion, against a party who fails to make a showing sufficient to

4   establish the existence of an element essential to that party's

5   case, and on which that party will bear the burden of proof at

6   trial.").

7            2. Abandonment/Naked Licensing

8            "[N]aked licensing may result in the trademark ceasing

9   to function as a symbol of quality and controlled source."

10  Barcamerica Int'l USA Trust v. Tyfield Imps., Inc., 289 F.3d 589,

11  596 (9th Cir. 2002) (internal quotation marks and citation

12  omitted).  Although a trademark owner may license the use of its

13  trademark, "where the licensor fails to exercise adequate quality

14  control over the licensee, a court may find that the trademark

15  owner has abandoned the trademark, in which case the owner would

16  be estopped from asserting rights to the trademark."   Id.

17  Because showing subjective intent to abandon the mark is not

18  required, "the proponent of a naked license theory faces a

19  stringent standard of proof."   Id.

20           The Ninth Circuit has not yet decided whether the

21  preponderance of the evidence or clear and convincing standard

22  applies to the naked licensing defense.   Freecycle Sunnyvale v.

23  Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).  Under

24  either standard, to overcome summary judgment, defendant must

25  show that, viewing the light most favorable to defendant,

26  plaintiff allowed a licensee to use the Grange trademark with so

27  few restrictions as to compel a finding that plaintiff engaged in

28  naked licensing and abandoned the trademark.  See id. at 516.

1    Defendant provides several examples of alleged naked

2  licensing, the first involving an entity called the Brooklyn

3  Grange.  Brooklyn Grange is a rooftop farming operation in

4  Brooklyn, New York, which sells produce through retailers and

5  provides meal and alcohol services.  (See Def.'s Opp'n, Ex. K

6  (complaint filed against Brooklyn Grange, LLC in the Eastern

7  District of New York) (Docket No. 51-2).)  It is not a Grange

8  affiliate or a fraternity of farmers.  In 2011, plaintiff brought

9  an infringement action against the Brooklyn Grange.  (See id.)

10 The case settled, and the parties reached a "Settlement Agreement

11 and License Agreement."  (Def.'s Opp'n Ex. M.)  The parties kept

12 the agreement confidential, and it is not before the court.  From

13 the title of the document, it can be inferred that plaintiff

14 agreed to license its trademark to the Brooklyn Grange as part of

15 the settlement.

16    Defendant's only evidence that plaintiff has failed to

17 exercise adequate quality-control over Brooklyn Grange's license

18 is that Brooklyn Grange makes no reference to the license on its

19 website.  Even under the lower preponderance of the evidence

20 standard, no trier of fact could reasonably conclude from this

21 omission that plaintiff has failed to police the license.  See

22 Anderson, 477 U.S. at 252 (holding that the "mere existence of a

23 scintilla of evidence" is insufficient to overcome summary

24 judgment).  Whether the Brooklyn Grange has referred to its

25 license from plaintiff on its website has no apparent connection

26 to whether plaintiff has imposed so few restrictions on the use

27 of its mark that "Grange" has "ceased to function as a symbol of

28 quality and controlled source."  See Barcamerica Int'l, 289 F.3d

1   at 596.

2          Defendant also points to several farm-to-fork

3   restaurants using Grange in their names, one of which happens to

4   be just a few blocks from this courthouse.  Plaintiff has

5   licensed these restaurants to use the "Grange" mark, and those

6   licenses are subject to quality control provisions.  (Watson

7   Decl. ¶ 8.)  Like the Brooklyn Grange, defendant offers no

8   evidence that plaintiff has failed to maintain adequate quality

9   control over these licensees.

10          Because there is a total absence of evidence in the

11  record that plaintiff failed to exercise adequate quality control

12  over its licensing, defendant cannot meet a "stringent" standard

13  of proof on its naked licensing affirmative defense.  See

14  Barcamerica Int'l, 289 F.3d at 596.  Defendant's naked licensing

15  theory must fail.  See Celotex, 477 U.S. at 323.

16          3. Unclean Hands

17           "The doctrine [of unclean hands] bars relief to a

18  plaintiff who has violated conscience, good faith or other

19  equitable principles in his prior conduct, . . . [or] who has

20  dirtied his hands in acquiring the right presently asserted."

21  Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate

22  Educ., Inc., 621 F.3d 981, 986 (9th Cir. 2010) (citation and

23  internal quotation marks omitted).  For defendant to succeed on

24  an unclean hands defense, plaintiff's alleged misconduct must

25  bear some connection to the transaction from which the complaint

26  arose.  Id.  "The court must weigh the substance of the right

27  asserted by plaintiff against the transgression which, it is

28  contended, serves to foreclose that right.  The relative extent

1  of each party's wrong upon the other and upon the public should

2  be taken into account, and an equitable balance struck."

3  Republic Molding Corp. v. B.W. Photo Utils., 319 F.2d 347, 350

4  (9th Cir. 1963).  Ultimately, the court must decide whether

5  plaintiff's wrong, compared with the defendant's wrong, warrants

6  punishment of the plaintiff rather than of the defendant.  Id.

7        There is no evidence before the court suggesting

8  plaintiff engaged in wrongful conduct in connection to its

9  claims.  According to plaintiff's constitution, subordinate

10  granges "derive their rights and powers" from plaintiff.

11  (Turrill Decl. Ex. 22, Ch. 1 art. III § 1.3.1 (Docket No. 43-7).)

12  Plaintiff retains the authority to issue charters.  (Id. art. IV

13  § 1.4.1.)  Plaintiff's bylaws set out the procedure for the

14  revocation of charters where the "good of the Order" requires

15  such action.  (See id. Ch. 4 art. V.)  In its letter revoking

16  defendant's charter, plaintiff stated the reason for the

17  revocation was that defendant made no effort to work with

18  plaintiff following the suspension of defendant's president for

19  violating rules in the charter and instead launched a

20  "destructive public relations campaign" against plaintiff.

21  (Turrill Decl. Ex. 15.)  Defendant's president McFarland merely

22  states the disaffiliation was the result of a "political dispute"

23  between the parties, without offering more explanation.

24  (McFarland Decl. ¶ 13 (Docket 44-4).)  Regardless of the precise

25  ground for revoking defendant's charter, it is not genuinely

26  disputed that plaintiff was acting within its rights and in

27  accordance with its bylaws when it revoked defendant's charter.

28  Plaintiff even afforded defendant procedural due process, giving

1  defendant the opportunity to appeal the decision.  (Turrill Decl.

2  Ex. 16.)  Defendant declined.  (McFarland Dep. at 78:14-79:16.)

3         Moreover, as the organization bearing the right to use

4  the "Grange" name, plaintiff was also within its right to charter

5  a new organization in California.  (See Ex. 22 art. IV § 1.4.1.)

6  Defendant asserts that after kicking out defendant, plaintiff's

7  purpose in beginning a new California Grange chapter was "to take

8  defendant's local chapters and cripple defendant organization."

9  (Def.'s Opp'n at 14.)  Defendant offers no evidentiary support

10 for this bare allegation.  Viewing the record in the light most

11 favorable to defendant, plaintiff's conduct does not rise to the

12 level of violating "conscience, or good faith, or other equitable

13 standards of conduct" such that plaintiff should be precluded

14 from enforcing its rights.  See Seller Agency Council, 621 F.3d

15 at 986.

16        The record supports only one conclusion: plaintiff's

17 behavior, compared with the defendant's infringement, should not

18 prevent plaintiff from enforcing its right to its trademark.

19 Defendant's unclean hands defense must also fail.  See Celotex,

20 477 U.S. at 323.

21        Plaintiff has thus undisputedly established a trademark

22 infringement claim, and based on the record, defendant cannot

23 prevail on any of its affirmative defenses.  Accordingly, the

24 court must grant plaintiff's motion for summary judgment and deny

25 defendant's motion for the same on plaintiff's first claim for

26 trademark infringement.  Moreover, because defendant's

27 counterclaims turn on the same legal issues, the court will also

28 grant plaintiff's motion for summary judgment and deny motion for

18

1    the same on defendant's counterclaims.

2           B. Unfair Competition and False Designation of Origin
3    under § 1125(a)

4           Plaintiffs commonly frame their claims in infringement
5    suits under both §§ 1114 and 1125(a).  Brookfield Commc'ns, Inc.
6    v. W. Coast Entm't Corp., 174 F.3d 1036, 1046 n.8 (9th Cir.
7    1999).  "The analysis under the two provisions is oftentimes
8    identical."  Id; see Wecosign, Inc. v. IFG Holdings, Inc., 854 F.
9    Supp. 2d 1072, 1079 (C.D. Cal. 2012) (jointly analyzing the
10   plaintiff's §§ 1114 and 11259(a) claims).  Because the analyses
11   for plaintiff's first two claims appear to be indistinguishable
12   in all respects that are material to this action, the court must
13   also grant plaintiff's motion for summary judgment with respect
14   to its second claim for unfair competition.

15          C. Remaining Claims on which Defendant Moves for
16   Summary Judgment

17          While plaintiff only moves for summary judgment on its
18   first two claims, defendant moves for summary judgment on all of
19   plaintiff's claims as well as its counterclaims seeking the court
20   declare plaintiff's trademark invalid and abandoned.  Because
21   defendant failed to address any of plaintiff's remaining two
22   claims, the court will deny defendant's motion for summary
23   judgment as to those claims.

24          IT IS THEREFORE ORDERED that plaintiff's motion for
25   summary judgment be, and the same hereby is, GRANTED; and that
26   defendant's motion for summary judgment be, and the same hereby
27   is, DENIED.

28          IT IS FURTHER ORDERED that upon entry of final judgment

1  in this action defendant and its agents, affiliates, and assigns,

2  or any party acting in concert with defendant and its agents,

3  affiliates, and assigns, shall be permanently enjoined from using

4  marks containing the word "Grange."

5          The parties shall appear for a status conference on

6  August 17, 2015 at 2:00 p.m. regarding the status of plaintiff's

7  remaining claims and its prayer for damages.

8  Dated:  July 14, 2015

9

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28