UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| THE NATIONAL GRANGE OF THE ORDER OF PATRONS OF HUSBANDRY, a District of Columbia nonprofit corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>CALIFORNIA STATE GRANGE, a California corporation,<br><br>        Defendant. | CIV. NO. 2:14-00676 WBS DAD<br><br>MEMORANDUM AND ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT |

----oo0oo----

Plaintiff National Grange of the Order of Patrons of Husbandry brought this action for trademark infringement against defendant California State Grange. Presently before the court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.

I. Factual and Procedural Background

        Plaintiff is a national fraternal agricultural

1

organization founded in 1867 to promote the interests of farmers and farming in the United States.  (Luttrell Decl. ¶¶ 2, 5 (Docket No. 43-2).)  Plaintiff has grown to a network of approximately 2,000 local chapters across the country, through which it provides a variety of goods and services to agricultural communities.  Plaintiff has registered numerous trademarks featuring the word "Grange," which it uses for associational, educational and advocacy activities.   (Turrill Decl. Ex. 21 (Docket No. 43-6); Luttrell Decl. ¶ 7.)

On July 15, 1873, plaintiff chartered defendant California State Grange as its affiliate state-level chapter.  (Turrill Decl. Ex. 9.)  As a chartered affiliate, defendant collected dues from local subordinate Granges and turned over a portion of those dues to plaintiff.  (May 14, 2014 McFarland Dep. at 44:22-45:15 (Docket No. 43-7).)

On April 5, 2013, plaintiff revoked defendant's charter due to a dispute.  (Luttrell Decl. ¶¶ 19, 24; Turrill Decl. Ex. 15.)  In response, defendant sent a letter disclaiming any further affiliation with plaintiff and stated that it would amend its bylaws to reflect its new status.  (Turrill Decl. Ex. 19.)

Despite its disaffiliation, defendant continues to use the name "California State Grange" at events, on its website, and in its newsletter and other communications.  (May 14, 2014 McFarland Dep. at 112:8-11; Turrill Decl. Exs. 7, 23, 24.)  Plaintiff sent a cease and desist letter to defendant on December 2, 2013.  (Turrill Decl. Ex. 20.)  When defendant was

2

unresponsive, plaintiff filed this lawsuit.[1]

Plaintiff brought claims under the Lanham Act for (1) trademark infringement, 15 U.S.C. § 1114; (2) unfair competition and false designation of origin, 15 U.S.C. § 1125(a); (3) trademark dilution, 15 U.S.C. § 1125(c); and (4) trademark counterfeiting, 15 U.S.C. § 1114(1). (Compl. ¶¶ 48-101.) Defendant answered with numerous affirmative defenses and counterclaims seeking a declaratory judgment that plaintiff's trademark is invalid. (Am. Answer (Docket No. 24).) Plaintiff now moves for partial summary judgment on its first and second claims for trademark infringement and unfair competition, respectively, and also on defendant's counterclaims. (Docket No. 43.) Defendant also moves for summary judgment on all of plaintiff's claims and its counterclaims on the grounds that it is entitled to the defenses of genericness, abandonment, acquiescence, and unclean hands. (Def.'s Mem. at 2 (Docket No. 44); Def.'s Opp'n at 2 (Docket No. 51).)

II. Discussion

Summary judgment is proper "if the movant shows that

---

[1] Plaintiff also initiated a proceeding in California state court, National Grange v. California State Grange, Civ. No. 34-2012-00130434 (Cal. Sup. Ct. filed Oct. 1, 2013), seeking a declaration of the rights and duties of the parties following the revocation of California State Grange's charter.

In addition, there is a related case before this court, California State Grange v. Grange of the State of California's Order of Patrons of Husbandry, Civ. No. 2:15-00317 (E.D. Cal. filed Feb. 6, 2015), in which California State Grange is suing an affiliate of the National Grange for trademark infringement. The court denied a motion to consolidate that action with the present one, because doing so would have caused delay in the present action. (June 29, 2015 Order (Docket No. 52).)

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. Id.

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting then-Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving

4

1  party and draw all justifiable inferences in its favor.  Id. at
2  255.  "Credibility determinations, the weighing of the evidence,
3  and the drawing of legitimate inferences from the facts are jury
4  functions, not those of a judge . . . ruling on a motion for
5  summary judgment . . . ."  Id.  On cross-motions for summary
6  judgment, the court "must review the evidence submitted in
7  support of each cross-motion [in a light most favorable to the
8  non-moving party] and consider each party's motions on their own
9  merits."  Corbis Corp. v. Amazon.com, Inc., 351 F. Supp. 2d 1090,
10 1097 (W.D. Wash. 2004).

      A.  Trademark Infringement under § 1114

12         To prevail on its trademark infringement claim under §
13 1114 of the Lanham Act, a plaintiff must prove: (1) that it has a
14 protectable ownership interest in the mark; and (2) that the
15 defendant's use of the mark is likely to cause consumer
16 confusion."[2]  Rearden LLC v. Rearden Commerce, Inc., 683 F.3d
17 1190, 1202 (9th Cir. 2012) (internal quotation marks and citation
18 omitted).

            1. Validity of the Trademark

20         "Federal registration of a mark constitutes prima facie
21 evidence of the validity of the mark."  Yellow Cab Co. of
22 Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 928

---

[2]  Plaintiff must also prove that defendant is using plaintiff's mark without plaintiff's consent in commerce.  See Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012) (discussing the elements of an infringement claim).  Because it is apparently undisputed that defendant is using plaintiff's mark in commerce without plaintiff's consent, (see May 14, 2014 McFarland Dep. at 112:8-11), the court will focus its analysis on the remaining elements.

1  (9th Cir. 2005).  "If the plaintiff establishes that a mark has
2  been properly registered, the burden shifts to the defendant to
3  show by a preponderance of the evidence that the mark is not
4  protectable."  Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d
5  1108, 1114 (9th Cir. 2010).  Plaintiff has submitted evidence of
6  their registrations of the Grange trademark, (see Watson Decl. ¶
7  7, Ex. 21), and defendant has not raised a genuine dispute that
8  the registration was proper.  Plaintiff's trademark "Grange" is
9  thus presumptively valid, and the burden shifts to defendant to
10 show it is invalid because it is generic.

11       A term is generic if it "refers, or has come to be
12 understood as referring to the genus of which the particular
13 product or service is a species."  Filipino Yellow Pages, Inc. v.
14 Asian J. Publ'ns, Inc., 198 F.3d 1143, 1147 (9th Cir. 1999).  A
15 generic term is not protectable as a trademark.  Rudolph Int'l,
16 Inc. v. Realys, Inc., 482 F.3d 1195, 1197 (9th Cir. 2007).  It
17 lies in the public domain.  Classic Food Int'l Corp. v. Kettle
18 Foods, Inc., 468 F. Supp. 2d 1181, 1188 (C.D. Cal. 2007).

19       "Whether a mark is generic is a question of fact."
20 Yellow Cab, 419 F.3d at 929 (internal quotation marks and
21 citation omitted).  The test is "whether consumers understand the
22 word to refer only to a particular producer's goods or whether
23 the consumer understands the word to refer to the goods
24 themselves."  Id. (internal quotation marks and citation
25 omitted).  Courts in the Ninth Circuit have called this the
26 "'who-are-you/what-are-you' test: a valid trademark answers the
27 former question, whereas a generic product name or adjective
28 answers the latter."  Rudolph Int'l, 482 F.3d at 1198.

1       As support for its contention that "grange," as it is
2  used by plaintiff, is generic, defendant offers an excerpt from
3  the 1980 edition of the Random House Dictionary.  (See Def.'s
4  Mot. Ex. D.)  Courts sometimes consider dictionaries as evidence
5  that a term is generic.  See Filipino Yellow Pages, 198 F.3d at
6  1147-48 (citing Webster to support the observation that "yellow
7  pages" is generic); Surgicenters of Am., Inc. v. Med. Dental
8  Surgeries, Co., 601 F.2d 1011, 1020 (9th Cir. 1979) (noting that
9  the district court "careful analy[zed]" genericness by
10 considering dictionary definitions and other evidence of generic
11 use).
12      Random House does not support defendant's position that
13 "grange" is a generic term meaning farmers' association.  The
14 1980 edition defines Grange as

> n. 1. Brit. A farm with its nearby buildings.  2.
> (cap.) a lodge or local branch of a farmers'
> association in the U.S.

(Def.'s Mot. Ex. D.)  Random House indicates that the secondary
use of Grange is "cap." or capitalized, meaning it is a proper
noun, naming a particular thing.  This would suggest that the
secondary definition refers to a local branch affiliated with one
particular national association, plaintiff.  A more contemporary
dictionary definition further reflects that Grange, when used to
mean an association of farmers, is a proper noun naming
plaintiff's organization.  In the more recent 2005 version of the
Random House dictionary, the secondary definition of "grange" is
"the Patrons of Husbandry, a farmer's organization formed in 1867

7

1   for social and cultural purposes."  (Pl.'s Opp'n Turrill Decl.
2   Ex. N.)  No trier of fact could reasonably conclude from these
3   dictionary definitions that "grange" is a generic term denoting a
4   local branch of <u>any</u> farmers' association.
5          Beyond the dictionary, there is nothing before the
6   court suggesting plaintiff's use of "grange," particularly when
7   capitalized, is generic.  Defendant has not pointed to a single
8   use of "grange" meaning a local chapter of an association of
9   farmers in the United States that predates plaintiff's use.
10  Moreover, the court has not found any use of "grange" meaning
11  farmers' association other than plaintiff and its affiliates and
12  defendant's uses.  The only conclusion the court can reasonably
13  draw from the evidence before it is that "Grange" does not signal
14  "an association of farmers," but rather the national association
15  of farmers founded by plaintiff in 1867.
16         Moreover, "there is no legal disability in taking a
17  generic name and using it as a trademark for another type of
18  product."  2 <u>McCarthy on Trademarks and Unfair competition</u> § 12:1
19  n.10 (4th ed.).  Arbitrary marks are protectable even though they
20  are comprised of generic terms, because they do not describe the
21  goods or services offered by the user of the mark. <u>Sara Lee</u>
22  <u>Corp. v. Kayser-Roth Corp.</u>, 81 F.3d 455, 464 (4th Cir. 1996).
23  Based on the dictionary definition offered by defendant, "grange"
24  is a generic term for a farm with its nearby buildings.
25  "Grange," as plaintiff uses it, does not signify that plaintiff
26  deals in "a farm with its nearby buildings."  It names
27  plaintiff's national association.
28         Plaintiff's mark is therefore not generic, and there is

8

no genuine issue of material fact as to the validity of the term "Grange" as a protectable trademark.[3]

### 2. Consumer Confusion

The second element requires a plaintiff to show that "a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." Rearden, 683 F.3d at 1209. The record is replete with evidence that a reasonably prudent Grange member, prospective member, or other person contemplating doing business with it is likely to be confused as to the origin of defendant's services due to its use of "Grange."

Defendant's use of "grange" on its website strongly suggests it is associated with plaintiff. The homepage of defendant's website, which carries the domain californiagrange.org, reads,

> The Grange is a grass roots organization that began in 1867, in the aftermath of the destructive and divisive Civil War. . . . We built halls across the rural landscape of America. . . . For more than 140 years, we've preserved our founding principles of unity, liberty, and charity.

---

[3] Another category of mark is a descriptive term. Unlike a generic term, a descriptive term may sometimes be protected as a trademark "if the public comes to associate the mark with a specific source." Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1047 (9th Cir. 1998). This acquired distinctiveness is referred to as 'secondary meaning.' Id. Whether a mark has a secondary meaning is a question of fact. Yellow Cab, 419 F.3d at 930. Defendant conflates the test for a generic mark and a descriptive mark. Because the court determines that plaintiff's mark is protectable because it is not generic, it need not discuss whether it might also be protected as a descriptive mark because it has a secondary meaning.

9

(Turrill Decl. Ex. 26 (emphasis added).)  Here, defendant recounts plaintiff's history, and not its own.  Plaintiff, the national association, and not defendant, which limits its services to California, "built halls across the rural landscape of America."  By using "we," defendant is likely to cause a member or prospective member to believe it is affiliated with plaintiff.  Defendant's use of the slogan "We are the Grange" in its website banner, (see id.), implies it is part of "the Grange," plaintiff's national association.  There are many more examples on defendant's website and in its newsletters of what appear to be uses of "grange" likely to cause the consumer to believe defendant is affiliated with plaintiff, which the court will not enumerate for the sake of brevity.  (See id. Exs. 7, 23, 24.)

Beyond defendant's communication tools, defendant's use of plaintiff's mark is likely to cause confusion, because both plaintiff and defendant offer similar services.  At the hearing, counsel for defendant admitted defendant provides the same services as plaintiff.  (See id.)  Because those services are identical, a party looking to join the official Grange will likely believe that defendant is somehow affiliated with plaintiff.  See U.S. Jaycees v. San Francisco Jr. Chamber of Commerce, 354 F. Supp. 61, 76 (N.D. Cal. 1972) (finding that because defendant's and plaintiff's civic services were substantially similar, defendant's use of plaintiff's trademark would likely confuse consumers).

Lastly, because plaintiff chartered a new chapter in

California after defendant's disaffiliation, members and prospective members in California are now likely to be confused as to which California-based Grange is affiliated with national organization.  In 2014, after defendant disaffiliated, California-based members of National Grange voted to reorganize a state Grange under the name Grange of the State of California's Order of Patrons of Husbandry, Chartered.  It is foreseeable that a prospective or current member would be uncertain as to which California Grange originates from the national organization.  See U.S. Jaycees, 354 F. Supp. at 76 (considering that there was a new official local affiliate bearing a similar name to the disaffiliated defendant as a factor weighing in favor of finding a likelihood of confusion).

        Defendant has even conceded that two California organizations using the name "Grange" would--and has--caused consumer confusion.  In a separate lawsuit, California State Grange is suing the Grange of the State of California's Order of Patrons of Husbandry ("TGSC") for trademark infringement.  See Cal. State Grange v. Grange of the State of Cal.'s Order of Patrons of Husbandry, Civ. No. 2:15-00317 (E.D. Cal. filed February 6, 2015).  In that suit, California State Grange alleges TGSC's use of the Grange mark causes "great confusion" among local granges, causing them to pay their dues to TGSC rather than California State Grange.  (See id., Compl. ¶ 13-14.)  In his deposition for this lawsuit, defendant's president, Robert McFarland, stated that TGSC's use of "Grange" caused actual confusion:

> [W]e know of some of our Granges that have accidently sent their reports and dues to [TGSC]. I get emails and phone calls consistently from--when they get a bulletin from [TGSC]. They say, "Is this--is that you or is it"--like they refer to--[TGSC]. . . . So I consistently have to enlighten them and tell them where the communications are coming from.

(McFarland Dep. at 162:7-18.)

In light of defendant's concession, and the absence of any evidence or argument for why defedant's use of "Grange" is not likely to cause consumer confusion, only one inference can be drawn: defendant's use of "Grange" is likely to cause, and apparently has caused, a reasonably prudent consumer in the marketplace to be confused about the origin of defendant's services. Because there is also no genuine issue of fact regarding the "Grange" mark's validity, plaintiff has undisputedly established a trademark infringement claim under § 1114.

### B. Defendant's Affirmative Defenses

#### 1. Estoppel by Acquiescence

Defendant insists it had a "long and continued public use of Grange" for 150 years that went unchallenged, and so the court should estop plaintiff from prevailing in a suit that it has waited a century-and-a-half to bring. (Def.'s Mem. at 6-7 (Docket No. 44-1).) To establish a claim for acquiescence, defendant must prove that plaintiff knew of facts giving it notice of its trademark infringement claim. Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc., 106 F.3d 894, 899 (9th Cir. 1997). As previously discussed, a trademark infringement claim requires showing that plaintiff had a

12

protectable interest in the mark and that defendant's use of the mark was likely to cause consumer confusion.  Rearden LLC, 683 F.3d at 1202.

The facts giving rise to the second element of plaintiff's trademark claim did not exist until defendant disaffiliated with plaintiff in April 2013.  So long as defendant remained affiliated with plaintiff, a reasonably prudent consumer in the marketplace would have been correct, and not confused, to believe that defendant's use of "Grange" marked its affiliation with plaintiff.  There would have been no risk of consumer confusion until after defendant officially declared it was disaffiliating and stopped paying dues to plaintiff.  Once defendant no longer bore any relation to plaintiff, and was operating by its own bylaws, (McFarland Decl. ¶ 13), and collecting dues on its own terms, (McFarland Dep. at 147:13-150:12), there arose a risk that consumers might be confused as to whether defendant's use of "Grange" meant the "source" of its services was the national order.

A month after defendant disclaimed its affiliation in November 2013, and the facts existed that put plaintiff on notice that defendant's use was likely to mislead consumers into thinking it remained affiliated with plaintiff, plaintiff sent defendant its cease and desist letter, (Turrill Decl. Ex. 20), and filed this lawsuit in March 2014.  Waiting four months to file a lawsuit after being put on notice that the facts supporting an infringement claim exists is hardly acquiescence.  Based on the evidence before the court, defendant appears to be unable to prevail on its acquiescence theory.  See Celotex, 477

13

1  U.S. at 323 ("[T]he plain language of 56(c) mandates the entry of
2  summary judgment, after adequate time for discovery and upon
3  motion, against a party who fails to make a showing sufficient to
4  establish the existence of an element essential to that party's
5  case, and on which that party will bear the burden of proof at
6  trial.").

### 2. Abandonment/Naked Licensing

"[N]aked licensing may result in the trademark ceasing to function as a symbol of quality and controlled source." Barcamerica Int'l USA Trust v. Tyfield Imps., Inc., 289 F.3d 589, 596 (9th Cir. 2002) (internal quotation marks and citation omitted). Although a trademark owner may license the use of its trademark, "where the licensor fails to exercise adequate quality control over the licensee, a court may find that the trademark owner has abandoned the trademark, in which case the owner would be estopped from asserting rights to the trademark." Id. Because showing subjective intent to abandon the mark is not required, "the proponent of a naked license theory faces a stringent standard of proof." Id.

The Ninth Circuit has not yet decided whether the preponderance of the evidence or clear and convincing standard applies to the naked licensing defense. Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010). Under either standard, to overcome summary judgment, defendant must show that, viewing the light most favorable to defendant, plaintiff allowed a licensee to use the Grange trademark with so few restrictions as to compel a finding that plaintiff engaged in naked licensing and abandoned the trademark. See id. at 516.

        Defendant provides several examples of alleged naked licensing, the first involving an entity called the Brooklyn Grange. Brooklyn Grange is a rooftop farming operation in Brooklyn, New York, which sells produce through retailers and provides meal and alcohol services. (See Def.'s Opp'n, Ex. K (complaint filed against Brooklyn Grange, LLC in the Eastern District of New York) (Docket No. 51-2).) It is not a Grange affiliate or a fraternity of farmers. In 2011, plaintiff brought an infringement action against the Brooklyn Grange. (See id.) The case settled, and the parties reached a "Settlement Agreement and License Agreement." (Def.'s Opp'n Ex. M.) The parties kept the agreement confidential, and it is not before the court. From the title of the document, it can be inferred that plaintiff agreed to license its trademark to the Brooklyn Grange as part of the settlement.

        Defendant's only evidence that plaintiff has failed to exercise adequate quality-control over Brooklyn Grange's license is that Brooklyn Grange makes no reference to the license on its website. Even under the lower preponderance of the evidence standard, no trier of fact could reasonably conclude from this omission that plaintiff has failed to police the license. See Anderson, 477 U.S. at 252 (holding that the "mere existence of a scintilla of evidence" is insufficient to overcome summary judgment). Whether the Brooklyn Grange has referred to its license from plaintiff on its website has no apparent connection to whether plaintiff has imposed so few restrictions on the use of its mark that "Grange" has "ceased to function as a symbol of quality and controlled source." See Barcamerica Int'l, 289 F.3d

at 596.

Defendant also points to several farm-to-fork restaurants using Grange in their names, one of which happens to be just a few blocks from this courthouse.  Plaintiff has licensed these restaurants to use the "Grange" mark, and those licenses are subject to quality control provisions.  (Watson Decl. ¶ 8.)  Like the Brooklyn Grange, defendant offers no evidence that plaintiff has failed to maintain adequate quality control over these licensees.

Because there is a total absence of evidence in the record that plaintiff failed to exercise adequate quality control over its licensing, defendant cannot meet a "stringent" standard of proof on its naked licensing affirmative defense.  See Barcamerica Int'l, 289 F.3d at 596.  Defendant's naked licensing theory must fail.  See Celotex, 477 U.S. at 323.

### 3. Unclean Hands

"The doctrine [of unclean hands] bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, . . . [or] who has dirtied his hands in acquiring the right presently asserted." Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc., 621 F.3d 981, 986 (9th Cir. 2010) (citation and internal quotation marks omitted).  For defendant to succeed on an unclean hands defense, plaintiff's alleged misconduct must bear some connection to the transaction from which the complaint arose.  Id.  "The court must weigh the substance of the right asserted by plaintiff against the transgression which, it is contended, serves to foreclose that right.  The relative extent

of each party's wrong upon the other and upon the public should be taken into account, and an equitable balance struck." Republic Molding Corp. v. B.W. Photo Utils., 319 F.2d 347, 350 (9th Cir. 1963). Ultimately, the court must decide whether plaintiff's wrong, compared with the defendant's wrong, warrants punishment of the plaintiff rather than of the defendant. Id.

There is no evidence before the court suggesting plaintiff engaged in wrongful conduct in connection to its claims. According to plaintiff's constitution, subordinate granges "derive their rights and powers" from plaintiff. (Turrill Decl. Ex. 22, Ch. 1 art. III § 1.3.1 (Docket No. 43-7).) Plaintiff retains the authority to issue charters. (Id. art. IV § 1.4.1.) Plaintiff's bylaws set out the procedure for the revocation of charters where the "good of the Order" requires such action. (See id. Ch. 4 art. V.) In its letter revoking defendant's charter, plaintiff stated the reason for the revocation was that defendant made no effort to work with plaintiff following the suspension of defendant's president for violating rules in the charter and instead launched a "destructive public relations campaign" against plaintiff. (Turrill Decl. Ex. 15.) Defendant's president McFarland merely states the disaffiliation was the result of a "political dispute" between the parties, without offering more explanation. (McFarland Decl. ¶ 13 (Docket 44-4).) Regardless of the precise ground for revoking defendant's charter, it is not genuinely disputed that plaintiff was acting within its rights and in accordance with its bylaws when it revoked defendant's charter. Plaintiff even afforded defendant procedural due process, giving

17

1 | defendant the opportunity to appeal the decision.  (Turrill Decl.
2 | Ex. 16.)  Defendant declined.  (McFarland Dep. at 78:14-79:16.)
3 |           Moreover, as the organization bearing the right to use
4 | the "Grange" name, plaintiff was also within its right to charter
5 | a new organization in California.  (See Ex. 22 art. IV § 1.4.1.)
6 | Defendant asserts that after kicking out defendant, plaintiff's
7 | purpose in beginning a new California Grange chapter was "to take
8 | defendant's local chapters and cripple defendant organization."
9 | (Def.'s Opp'n at 14.)  Defendant offers no evidentiary support
10 | for this bare allegation.  Viewing the record in the light most
11 | favorable to defendant, plaintiff's conduct does not rise to the
12 | level of violating "conscience, or good faith, or other equitable
13 | standards of conduct" such that plaintiff should be precluded
14 | from enforcing its rights.  See Seller Agency Council, 621 F.3d
15 | at 986.
16 |           The record supports only one conclusion: plaintiff's
17 | behavior, compared with the defendant's infringement, should not
18 | prevent plaintiff from enforcing its right to its trademark.
19 | Defendant's unclean hands defense must also fail.  See Celotex,
20 | 477 U.S. at 323.
21 |           Plaintiff has thus undisputedly established a trademark
22 | infringement claim, and based on the record, defendant cannot
23 | prevail on any of its affirmative defenses.  Accordingly, the
24 | court must grant plaintiff's motion for summary judgment and deny
25 | defendant's motion for the same on plaintiff's first claim for
26 | trademark infringement.  Moreover, because defendant's
27 | counterclaims turn on the same legal issues, the court will also
28 | grant plaintiff's motion for summary judgment and deny motion for

the same on defendant's counterclaims.

### B. Unfair Competition and False Designation of Origin under § 1125(a)

Plaintiffs commonly frame their claims in infringement suits under both §§ 1114 and 1125(a). Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1046 n.8 (9th Cir. 1999). "The analysis under the two provisions is oftentimes identical." Id; see Wecosign, Inc. v. IFG Holdings, Inc., 854 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012) (jointly analyzing the plaintiff's §§ 1114 and 11259(a) claims). Because the analyses for plaintiff's first two claims appear to be indistinguishable in all respects that are material to this action, the court must also grant plaintiff's motion for summary judgment with respect to its second claim for unfair competition.

### C. Remaining Claims on which Defendant Moves for Summary Judgment

While plaintiff only moves for summary judgment on its first two claims, defendant moves for summary judgment on all of plaintiff's claims as well as its counterclaims seeking the court declare plaintiff's trademark invalid and abandoned. Because defendant failed to address any of plaintiff's remaining two claims, the court will deny defendant's motion for summary judgment as to those claims.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment be, and the same hereby is, GRANTED; and that defendant's motion for summary judgment be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that upon entry of final judgment

in this action defendant and its agents, affiliates, and assigns, or any party acting in concert with defendant and its agents, affiliates, and assigns, shall be permanently enjoined from using marks containing the word "Grange."

        The parties shall appear for a status conference on August 17, 2015 at 2:00 p.m. regarding the status of plaintiff's remaining claims and its prayer for damages.

Dated: July 14, 2015

_/s/ William B. Shubb_
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE