1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

                                  ----oo0oo----

11

12   THE NATIONAL GRANGE OF THE          CIV. NO. 2:14-676 WBS AC
     ORDER OF PATRONS OF
13   HUSBANDRY, a District of            MEMORANDUM AND ORDER RE: MOTION
     Columbia nonprofit                  FOR INJUNCTION
14   corporation,

15               Plaintiff,

16        v.

17
     CALIFORNIA STATE GRANGE d/b/a
18   "CSG," a California
     corporation,
19
                 Defendant.
20

21                                ----oo0oo----

22

23        Plaintiff National Grange of the Order of Patrons of

24   Husbandry brought this action against defendant California State

25   Grange for trademark infringement and unfair competition under

26   the Lanham Act.  Presently before the court is plaintiff's motion

27   for an injunction pursuant to the Lanham Act, 15 U.S.C.

28   § 1116(a).  (Docket No. 126.)  For the reasons explained below,

                                      1

1  plaintiff's motion is GRANTED in part.

2  I.   <u>Factual and Procedural Background</u>

3        Plaintiff is a national fraternal organization founded

4  in 1867 to promote the interests of farming and agriculture.

5  (July 14, 2015 Order at 1-2 (Docket No. 60).)  Plaintiff has

6  grown to a network of approximately 2,000 local chapters across

7  the country, through which it provides a variety of goods and

8  services to agricultural communities.  (<u>Id.</u> at 2.)  Plaintiff

9  owns numerous registered numerous trademarks featuring the word

10  "Grange," which it uses for associational, educational, and

11  advocacy activities.  (<u>Id.</u>)

12        Plaintiff chartered defendant as its affiliate

13  California state chapter in 1873.  (<u>Id.</u>)  As a chartered

14  affiliate, defendant collected dues from local subordinate

15  granges and turned over a portion of those dues to plaintiff.

16  (<u>Id.</u>)  In 1946, defendant registered as a non-profit corporation

17  with the California Secretary of State.  (Huber Decl. ¶ 8, Mar.

18  22, 2016 (Docket No. 126-3).)

19        In 2012, a dispute arose between plaintiff and

20  defendant.  (Compl. ¶ 5 (Docket No. 1).)  As a result, plaintiff

21  revoked defendant's charter and the parties disaffiliated.  (<u>Id.</u>

22  ¶ 7.)  Plaintiff's California-based members subsequently voted to

23  reorganize a California state chapter under the name Grange of

24  the State of California's Order of Patrons of Husbandry,

25  Chartered.  (<u>Id.</u> ¶ 38.)

26        Despite the parties' disaffiliation, defendant

27  continued to use its registered corporate name, California State

28  Grange, and represent itself publically as California State

2

1  Grange on its website, at events, and in its newsletters.  (July

2  14, 2015 Order at 2.)  In March 2014, plaintiff filed this

3  action, bringing claims for (1) federal trademark infringement

4  under Section 32 of the Lanham Act, 15 U.S.C. § 1114; (2) unfair

5  competition and false designation of origin under Section 43(a)

6  of the Lanham Act, 15 U.S.C. § 1125(a); (3) federal trademark

7  dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c);

8  and (4) federal trademark counterfeiting under § 32(1) of the

9  Lanham Act, 15 U.S.C. § 1114(1).  (Compl. ¶¶ 48-101.)[1]

10           On July 14, 2015, the court granted plaintiff's motion

11  for partial summary judgment on its claims for trademark

12  infringement and unfair competition and false designation of

13  origin.  (July 14, 2015 Order at 12, 19.)[2]  The court then denied

14  plaintiff's motion to enjoin defendant from using the words

15  "Granger," "CSG," and "CG" because summary judgment was limited

16  to the use of "Grange."  (Sept. 29, 2015 Order at 4.)  On

17  September 29, 2015, the court entered final judgment permanently

18  enjoining "defendant and its agents, affiliates, and assigns, or

19  any party acting in concert with defendant and its agents,

20  affiliates, and assigns from using marks containing the word

21  'Grange.'"  (Docket No. 86.)

22  _____

23           [1]   This case is related to another action presently
    pending before this court, National Grange of the Order of

24  Patrons of Husbandry v. California State Grange, Civ. No. 2:16-
    201 WBS AC.  (Docket No. 112.)  Plaintiff also filed an action in

25  California state court seeking a declaration of the parties'
    rights and duties following the revocation of defendant's

26  charter.  National Grange v. California State Grange, Civ. No.

27  34-2012-130434 (Cal. Sup. Ct. filed Oct. 1, 2013).
           [2]   Plaintiff voluntarily dismissed its remaining claims

28  with prejudice.  (Docket No. 64.)

1          On October 28, 2015, defendant filed a notice of appeal

2    from the court's judgment and its July 14 and September 29

3    Orders.  (Docket No. 87.)  Plaintiff cross-appealed the portion

4    of the court's September 29, 2015 Order limiting injunctive

5    relief to the word "Grange."  (Docket No. 90.)  The appeals are

6    currently pending before the United States Court of Appeals for

7    the Ninth Circuit.  In January 2016, the court denied defendant's

8    motion to stay the injunction pending appeal, holding that

9    plaintiff "would be substantially injured by defendant's

10   continued infringement of its trademark were the court to grant a

11   stay of the injunction."  (Jan. 12, 2016 Order at 4 (Docket No.

12   108).)

13         Defendant additionally registered with Sacramento

14   County to do business as "California State Guild" and "CSG."

15   (Sept. 29, 2015 Order at 4.)  To date, however, defendant

16   continues to use "California State Grange" as its corporate name

17   on file with the California Secretary of State.  (McFarland Decl.

18   ¶¶ 12-13, Feb. 22, 2016 ("McFarland I Decl.") (Docket No. 114-

19   1).)  Based on defendant's continued use of "California State

20   Grange," among other things, plaintiff brought a motion for an

21   order to show cause why defendant should not be held in contempt

22   for violating the court's injunction.  (Docket No. 109.)  The

23   court denied that motion without prejudice to plaintiff filing

24   the pending motion and requesting to enjoin defendant's specific

25   conduct based on the issues litigated and evidence presented to

26   the court at the time of the injunction.  (Docket Nos. 117, 120,

27   125.)

28         Plaintiff now moves to enjoin defendant, its agents,

4

affiliates, and any party acting in concert with defendant, from: (1) using "Grange," "Granger," or "CSG" in conducting business activities or as part of a business, trade, or domain name; (2) using "Grange" in corporate registrations or other filings with any federal, state, or local government; and (3) representing themselves to be the successor to "California State Grange." (Docket No. 126-4.)  Plaintiff further requests that defendant (4) remove the name "Grange" from all telephone and business directory listings; (5) include a prominent disclaimer on its website and in all future communications that it is "not affiliated with the California State Grange"; (6) include a hyperlink on its website that redirects users to plaintiff's California-based grange website; and (7) pay plaintiff reasonable attorney's fees in bringing the pending motion and its previous motion for an order to show cause why defendant should not be held in contempt.  (Id.)

II.  <u>Legal Standards</u>

    A.  <u>Injunctive Relief Under the Lanham Act</u>

        Plaintiff here succeeded on its claims for trademark infringement, 15 U.S.C. § 1114, and unfair competition, 15 U.S.C. § 1125(a), under the Lanham Act.  (See July 14, 2015 Order.) Defendant has conceded that its services are identical to those offered by plaintiff and that the use of "Grange" by two California organizations had caused actual confusion among consumers and "great confusion" among local granges.  (Id. at 10-11; see also Compl. ¶ 44 ("Defendant's continued use of GRANGE Marks will likely lead to actual confusion among members of the public, since there are two organizations--one legitimately

5

1    affiliated with the National Grange and one that is not--using

2    the same or substantially similar Grange name and GRANGE Marks to

3    offer the same goods and services to the same members of the

4    public.").)  The court thus found that "only one inference can be

5    drawn: defendant's use of 'Grange' is likely to cause, and

6    apparently has caused, a reasonably prudent consumer in the

7    marketplace to be confused about the origin of defendant's

8    services."  (July 14, 2015 Order at 12.)

9            "Injunctive relief is the remedy of choice for

10   trademark and unfair competition cases, since there is no

11   adequate remedy at law for the injury caused by a defendant's

12   continuing infringement."  Century 21 Real Estate Corp. v.

13   Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988).  The Lanham Act

14   authorizes the court "to grant injunctions, according to the

15   principles of equity and upon such terms as the court may deem

16   reasonable, to prevent the violation" of trademark rights and to

17   prevent unfair competition.  15 U.S.C. § 1116(a).

18           "[I]f a district court finds infringement, it retains

19   the discretion to fashion any remedy which alleviates that

20   confusion."  Interstellar Starship Servs., Ltd. v. Epix, Inc.,

21   304 F.3d 936, 948 (9th Cir. 2002).  Broad injunctions are

22   especially appropriate where the infringing use is for a similar

23   service.  Sandlin, 846 F.2d at 1181.  This court thus found that

24   injunctive relief was appropriate to prevent defendant's

25   continued trademark violations and unfair competition.  See 15

26   U.S.C. § 1116(a).

27   ///

28   ///

6

1         **B.**   **Injunctive Relief During a Pending Appeal**

2         "[A]n injunction often requires continuing supervision

3 by the issuing court and always a continuing willingness to apply

4 its powers and processes on behalf of the party who obtained that

5 equitable relief." Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v.

6 Wright, 364 U.S. 642, 647-48 (1961).  The court thus has

7 continuing jurisdiction here to "supervise the injunctive relief

8 [it had] granted." Transgo, Inc. v. Ajac Transm'n Parts Corp.,

9 768 F.2d 1001, 1030 (9th Cir. 1985).

10         Defendant appealed the court's judgment on October 28,

11 2015.  (Docket No. 87.)  Although an appeal ordinarily divests

12 the district court of jurisdiction over the matters on appeal,

13 Federal Rule of Civil Procedure 62(c) creates an exception to

14 that rule: "While an appeal is pending from an interlocutory

15 order or final judgment that grants, dissolves, or denies an

16 injunction, the court may suspend, modify, restore, or grant an

17 injunction on terms for bond or other terms that secure the

18 opposing party's rights." Fed. R. Civ. P. 62(c); see Nat. Res.

19 Def. Council, Inc. v. Sw. Marine, Inc., 242 F.3d 1163, 1166 (9th

20 Cir. 2001).

21         Rule 62(c) confers upon the district court the power

22 "it has always inherently possessed to preserve the status quo

23 during the pendency of an appeal." Nat. Res. Def. Council, 242

24 F.3d at 1166.  However, the Rule "does not restore jurisdiction

25 to the district court to adjudicate anew the merits of the case."

26 Id. (citation omitted).  Thus, any action taken pursuant to Rule

27 62(c) "may not materially alter the status of the case on

28 appeal." Id. (citation omitted); see In re TFT-LCD (Flat Panel)

1   Antitrust Litig., Civ. No. C-07-01827 SI, 2013 WL 6055079, at *1

2   (N.D. Cal. Nov. 13, 2013) ("[W]hile an appeal is pending, the

3   district court . . . may not take any action that would change

4   the core issues before the appellate court.").

5        Defendant makes much of the fact that in its Reply

6   Brief (Docket No. 133) plaintiff stated that it "is not asking

7   the Court to maintain the *status quo* . . ." (Id., p. 3).  The

8   court remains befuddled by that statement in the Reply Brief,

9   since preserving the status quo is exactly what plaintiff appears

10  to be asking for elsewhere in its moving papers, and it is all

11  the court intends to do by this Order.

12        Where the court supervises a continuing course of

13  conduct pursuant to an injunction, and new facts develop that

14  require additional action by the court to ensure compliance with

15  its order, an appeal from the original order "does not divest the

16  district court of jurisdiction to continue its supervision, even

17  though in the course of that supervision the court acts upon or

18  modifies the order from which the appeal is taken."  Hoffman v.

19  Beer Drivers & Salesmen's Local Union No. 888, 536 F.2d 1268,

20  1276 (9th Cir. 1976).  The court thus retains jurisdiction to

21  preserve the status quo and ensure the effectiveness of its

22  judgment, despite the pending appeal in this action.  McClatchy

23  Newspapers v. Cent. Valley Typographical Union No. 46, 686 F.2d

24  731, 734-35 (9th Cir. 1982); Tribal Vill. of Akutan v. Hodel, 859

25  F.2d 662, 663 (9th Cir. 1988).

26        The status quo is measured at the time the appeal is

27  filed.  In re Delta Smelt Consol. Cases, Civ. No. 1:09-407 OWW,

28  2011 WL 2559021, at *4 (E.D. Cal. June 24, 2011); see Nat. Res.

8

1   <u>Def. Council</u>, 242 F.3d at 1166); <u>see also</u> <u>TFT-LCD</u>, 2013 WL

2   6055079, at *1 ("[W]hile an appeal is pending, the district court

3   may act to preserve the status quo at the time the appeal was

4   filed.").  The permanent injunction here was entered on September

5   29, 2015, and defendant filed its appeal on October 28, 2015.

6   Accordingly, the status quo at the time the appeal was filed

7   prohibited "defendant and its agents, affiliates, and assigns, or

8   any party acting in concert with them, from using marks

9   containing the word "Grange."

10  III. <u>Analysis</u>

11        Plaintiff seeks an order enjoining defendant and its

12  agents, affiliates, and assigns, or any party acting in concert

13  with them, from using the word "Grange," including "California

14  State Grange" and "California Grange Foundation," in any business

15  activities or as part of any trademark, service mark, trade name,

16  corporate name, domain name, or e-mail address.

17        A.   <u>Subject Matter Jurisdiction</u>

18        Defendant argues that enjoining it from using "Grange"

19  as part of its corporate name is impermissible under Rule 62(c)

20  because the requested relief "goes well beyond preserving the

21  status quo" and "seeks to change the status quo" by granting "new

22  relief that plaintiff chose not to pursue during the litigation

23  of this action."  (Opp'n at 2 (Docket No. 132).)  On that basis,

24  defendant argues plaintiff's motion "must be denied for lack of

25  jurisdiction."  (<u>Id.</u>)

26        Defendant's contention that the requested relief

27  constitutes "new relief that plaintiff chose not to pursue during

28  the litigation of this action" is not accurate.  Plaintiff's

1   Complaint sought to "[p]ermanently enjoin Defendant, as well as

2   its agents, successors, assigns, and all persons in active

3   concert or participation with Defendant, from using the GRANGE

4   Marks or any other mark, <u>corporate name</u> or trade name that

5   contains the word GRANGE." (Compl. at 21-22 (emphasis added).)

6   The Complaint also requested that the court "direct that

7   Defendant's registration of the <u>corporate entity name</u> 'California

8   State Grange' be revoked." (<u>Id.</u> at 22 (emphasis added).)

9        The Ninth Circuit has repeatedly rejected the argument

10  that a district court lacks subject matter jurisdiction to grant

11  additional injunctive relief or modify its existing injunction

12  while an appeal is pending. <u>See</u> <u>McClatchy</u>, 686 F.2d at 735

13  ("[A]n appeal from an order granting an injunction does not

14  deprive the district court of jurisdiction to alter the

15  injunction for purposes of maintaining the status quo.");

16  <u>Hoffman</u>, 536 F.2d at 1276 ("[I]n the case of an appeal from an

17  order granting an injunction, the district court does not lose

18  jurisdiction to alter the injunction."). As discussed above,

19  <u>supra</u> Part II.B, Rule 62(c) authorizes the court to grant or

20  modify injunctive relief to preserve the status quo or ensure

21  compliance with its earlier orders. <u>E.g.</u>, <u>In re Icenhower</u>, 755

22  F.3d 1130, 1138 (9th Cir. 2014); <u>A&M Records, Inc. v. Napster,</u>

23  <u>Inc.</u>, 284 F.3d 1091, 1099 (9th Cir. 2002) ("The district court

24  properly exercised its power under Rule 62(c) to continue

25  supervision of [defendant's] compliance with the injunction.");

26  <u>Armstrong v. Brown</u>, 732 F.3d 955, 959 n.6 (9th Cir. 2013) ("The

27  district court acted to preserve the status quo and protect

28  plaintiffs' rights in direct response to defendants' repeated and

1   willful non-compliance with its earlier orders.").

2       The court may modify or broaden the scope of its

3   injunction under its continuing duty to supervise the relief

4   granted if it is informed of new facts that require additional

5   supervisory action.  Hoffman, 536 F.2d at 1276 (holding that the

6   general rule that an appeal to the circuit court deprives the

7   district court of jurisdiction "should not be applied in those

8   cases where the district court, as here, has a continuing duty to

9   maintain a status quo"); see Sys. Fed'n No. 91 v. Wright, 364

10  U.S. 642, 647-48 (1961) (holding that a district court has "wide

11  discretion" to modify an injunction based on changed

12  circumstances or new facts); A&M Records, 284 F.3d at 1098-99

13  (modification of injunction during pendency of appeal was proper

14  to clarify the injunction and supervise compliance in light of

15  new facts); Meinhold v. U.S. Dep't of Def., 34 F.3d 1469, 1480

16  n.14 (9th Cir. 1994) ("DOD also contends that the district court

17  lacked jurisdiction to issue its amended order, which broadened

18  the scope of injunctive relief, because an appeal had already

19  been taken from the original order.  As the district court issued

20  the amended order to clarify its original injunction and to

21  supervise compliance in the wake of [plaintiff's] motion for

22  contempt, it did not lack jurisdiction.").  The court may

23  therefore grant the relief requested here.

24      The court also has the authority to enforce its orders

25  while an appeal is pending.  Sekaquaptewa v. MacDonald, 544 F.2d

26  396, 406 (9th Cir. 1976).  "Absent a stay, all orders and

27  judgments of courts must be complied with promptly."  In re

28  Crystal Palace Gambling Hall, Inc., 817 F.2d 1361, 1364 (9th Cir

1  1987) (citation omitted).  The court here denied defendant's

2  motion to stay the injunction pending appeal.  (See Jan. 12, 2016

3  Order.)  Defendant is therefore obliged to comply with the

4  court's previous injunction and, absent a stay, with any

5  injunctive relief granted here.

6          Granting the requested relief would also not change the

7  status quo or materially alter the status of this case on appeal.

8  In granting the requested relief, the court would not be

9  adjudicating new issues that were "not decided in its original

10 disposition of the case."  McClatchy, 686 F.2d at 735 (holding

11 that the district court's post-judgment adjudication of an issue

12 not decided in its original disposition of the case materially

13 affected the substantial rights of the parties and thus did not

14 fall within the authority of Rule 62(c)).  In Britton v. Co-op

15 Banking Group, 916 F.2d 1405 (9th Cir. 1990), the Ninth Circuit

16 explained that a district court's post-judgment order may not

17 "change . . . the result of the very issue on appeal."  Id. at

18 1412.  If such an order were allowed to stand, the appellate

19 court's decision on the original order would be moot.  Id.

20 Alternatively, the appellate court would be dealing with a

21 "moving target" if it were to rule on the post-judgment order

22 instead.  Id.

23          Here, by contrast, granting the requested relief would

24 not change the result of the issues on appeal.  The issues on

25 appeal involve whether the court properly (1) granted plaintiff's

26 motion for partial summary judgment on its trademark infringement

27 and unfair competition claims, and (2) entered its September 29,

28 2015 permanent injunction.  (Docket Nos. 87, 90.)  Enjoining

1    defendant and its agents and affiliates from using the word

2    "Grange" in conducting any business activities or as part of any

3    corporate name, trademark, service mark, trade name, domain name,

4    or email address would not change the status quo because the

5    questions presented to the Ninth Circuit would remain unaffected.

6    See Nat. Res. Def. Council, 242 F.3d at 1166-67 (upholding

7    district court's post-judgment order because it "left unchanged"

8    the core questions before the appellate court); Armstrong, 732

9    F.3d at 959 n.6 ("[T]he status of this case on appeal remains

10   unaltered by the [post-judgment order] because the question

11   before us remains unchanged.").

12        Nor would the court be adjudicating any new issues that

13   were not decided in its original disposition of the case.  See

14   McClatchy, 686 F.2d at 735.  Plaintiff bases its requests for

15   injunctive relief in the pending motion on the court's

16   disposition that (1) plaintiff has a protectable interest in its

17   valid and federally-registered "Grange" mark, and (2) there is

18   substantial evidence that defendant's conduct created a strong

19   likelihood that a reasonably prudent consumer would be confused

20   as to the origin of defendant's services and believe that

21   defendant was affiliated with plaintiff.  (July 14, 2015 Order at

22   5-10.)  The court may grant plaintiff's requested injunctive

23   relief based upon these previously-adjudicated findings.  See

24   Delta Smelt, 2011 WL 2559021, at *6 ("This is not a case where

25   the requested actions will change the judgment in any way.").

26        Requiring defendant and its affiliates to remove the

27   word "Grange" from their corporate names would in fact preserve

28   the status quo by ensuring compliance with the court's summary

13

1    judgment Order and permanent injunction.  See 15 U.S.C. § 1116(a)

2    (district courts may enforce their injunctions granted under the

3    Lanham Act); Nat. Res. Def. Council, 242 F.3d at 1166 ("We

4    conclude that the district court possessed jurisdiction to modify

5    the injunction while the consolidated appeal was pending, because

6    the changes preserved the status quo and did not materially alter

7    the status of the case on appeal.").  Accordingly, the court

8    rejects defendant's argument that it lacks jurisdiction to grant

9    the requested relief.

10        B.   Defendant's Corporate Name

11        Defendant continues to use "Grange" as part of its

12   corporate name.  The California Secretary of State website

13   publically displays defendant's name as "California State Grange"

14   and Robert McFarland as its president.  See Business Entity

15   Detail for "CALIFORNIA STATE GRANGE," http://kepler.sos.ca.gov

16   (last visited Apr. 14, 2016).[3]  Defendant's lobbying registration

17   filed with the California Secretary of State also lists its name

18   as "California State Grange."  (McFarland Decl. Ex. C, Apr. 1,

19   2016 ("McFarland II. Decl.") (Docket No. 132-8).)

20        Defendant has also filed its fictitious name statements

21   for "California Guild Foundation" and "CSG" with Sacramento

22

23        [3]    The court takes judicial notice of filings with the
     California Secretary of State and County of Sacramento because
24   they are matters of public record whose accuracy is not subject
     to reasonable dispute.  See Fed. R. Evid. 201; Lee v. City of Los
25   Angeles, 250 F.3d 668, 689 (9th Cir.2001); see also Grant v.
     Aurora Loan Servs., Inc., 736 F. Supp. 2d 1257, 1265 (C.D. Cal.
26   2010) (judicial notice of incorporation filings with Delaware
     secretary of state); Helmer v. Bank of Am., N.A., Civ. No. 2:12-
27   733 TLN, 2013 WL 4546285, at *2 (E.D. Cal. Aug. 27, 2013)
     (judicial notice of records filed with county).
28

                                     14

1  County under its corporate name.  (McFarland I Decl. Ex. A.)  As

2  a result, the Sacramento County website displays "CALIFORNIA

3  STATE GRANGE" as the entity that owns every one of defendant's

4  business names.  (Komski Decl. Ex. 2, Feb. 1, 2016 ("Komski II

5  Decl.") (Docket No. 109-1); see McFarland II Decl. ¶¶ 4-5.)  By

6  continuing to use the word "Grange" in this manner, defendant

7  continues to infringe plaintiff's registered mark and engage in

8  unfair competition against plaintiff.  (See July 14, 2015 Order;

9  Allen Decl. ¶ 20 (Docket No. 126-3) ("[M]any local Grange members

10  are relying on the official records of the California Secretary

11  of State, among other governmental authorities, to ascertain the

12  'true' California State Grange.".)

13        The court's injunction in this case enjoined the

14  defendant and those acting in concert with it from using "marks

15  containing the word 'Grange.'"  Defendant now argues that by

16  using the word "marks" in its order the court intended only to

17  preclude the use of trade*marks*, not *names*, containing the word

18  "Grange."  (Opp'n at 6.)  That certainly was not the court's

19  intention.  It was never some design, symbol, or logo which

20  plaintiff sought to prevent defendant from using.  Nor was it the

21  way the word "Grange" was written.  It was always the use of the

22  word "Grange" in defendant's name which plaintiff sought to

23  enjoin, and that is what the court intended to do in its Order.

24  If the court erred in employing the term "marks" instead of

25  "names" in its order, it was a big mistake, but plaintiff should

26  not have to pay for that mistake by being required to wait while

27  a long appeal is processed before the court can correct it.

28        Upon more than just a cursory analysis, however,

1  defendant's interpretation of the injunction fails because, under

2  the Lanham Act, the term "mark" includes "words."  <u>See</u> 15 U.S.C.

3  § 1127.  The Lanham Act defines a "mark" as any trademark,

4  service mark, collective mark, or certification mark.  <u>Id.</u>  Each

5  of these is defined as "any word, name, symbol, or device, or any

6  combination thereof."  <u>See</u> <u>id.</u>  Trademarks and service marks are

7  any <u>words</u> or <u>names</u> used to identify and distinguish goods or

8  services and to indicate the source of those goods or services.

9  <u>Id.</u>[4]  Trademarks apply to goods; service marks apply to services.

10         Defendant's argument therefore amounts to no more than

11  a game of "gottcha" because the court's September 29, 2015

12  injunction prohibiting defendant from using marks containing

13  _____

14       [4]   Section 1127 of the Lanham Act provides in relevant
    part:

15

16       The term "trademark" includes any <u>word</u>, <u>name</u>, symbol, or
         device, or any combination thereof--

17            (1) used by a person, or
              (2) which a person has a bona fide intention to use

18       in commerce and applies to register on the principal
         register established by this chapter,

19       to identify and distinguish his or her goods, including a
         unique product, from those manufactured or sold by others

20       and to indicate the source of the goods, even if that
         source is unknown.

21

22       The term "service mark" means any <u>word</u>, <u>name</u>, symbol, or
         device, or any combination thereof--

23            (1) used by a person, or
              (2) which a person has a bona fide intention to use

24       in commerce and applies to register on the principal
         register established by this chapter,

25       to identify and distinguish the services of one person,
         including a unique service, from the services of others

26       and to indicate the source of the services, even if that
         source is unknown.

27

28  <u>Id.</u> § 1127 (emphases added).

"Grange" did indeed prohibit defendant from using the <u>word</u> "Grange" or any <u>name</u> containing "Grange" in connection with its goods or services.  This includes using a corporate <u>name</u> containing the word "Grange."  It also includes using the word "Grange" or a name containing "Grange" in any articles of incorporation, fictitious business name registrations, lobbying licenses, and public filings.

Numerous courts have held that the unauthorized use of a registered mark in a corporate name constitutes trademark infringement.  <u>See</u> <u>Accuride Int'l, Inc. v. Accuride Corp.</u>, 871 F.2d 1531, 1534-35 (9th Cir. 1989) (emphasizing that trademark and corporate trade name protection are intertwined and governed by the same test of infringement); <u>Nat'l Customer Eng'g Inc. v.</u> <u>Lockheed Martin Corp.</u>, Civ. No. 96-8938 DDP ANX, 1997 WL 363970, at *6 (C.D. Cal. Feb. 14, 1997) (enjoining defendants' use of "MountainGate" in their corporate name because it was substantially similar to plaintiff's "Mountain" trademark); <u>accord</u> <u>Atlas Supply Co. v. Atlas Brake Shops, Inc.</u>, 360 F.2d 16, 19 (6th Cir. 1966) (enjoining use of the word "Atlas" in defendant's corporate name); <u>Safeway Stores, Inc. v. Safeway</u> <u>Props., Inc.</u>, 307 F.2d 495, 499 (2d Cir. 1962) (defendant's use of the word "Safeway" in its corporate name, "Safeway Properties, Inc.," was trademark infringement); <u>Alfred Dunhill of London,</u> <u>Inc. v. Dunhill Shirt Co.</u>, 213 F. Supp. 179, 184 (S.D.N.Y. 1963) (defendant's use of "Dunhill" in its corporate name infringed plaintiff's "Dunhill" trademark); <u>see also</u> <u>Hulburt Oil & Grease</u> <u>Co. v. Hulburt Oil & Grease Co.</u>, 371 F.2d 251, 254 (7th Cir. 1966) ("[A] state does not pass upon the legality of a corporate

name by merely permitting incorporation under that name.").

In addition, the Lanham Act also protects trade names. A trade name is "any name used by a person [or entity] to identify [its] business or vocation."  15 U.S.C. § 1127. Trademarks and service marks distinguish goods and services, while trade names distinguish companies and their goodwill.  Am. Steel Foundries v. Robertson, 269 U.S. 372, 380 (1926).  Trade names commonly function as trademarks or service marks, and actions brought under the Lanham Act typically challenge the use of a mark as a trademark, service mark, and trade name.  See Accuride, 871 F.2d at 1534 (15 U.S.C. § 1114 governs trademark or service mark infringement; 15 U.S.C. § 1125(a) governs trade name infringement); Stork Rest. v. Sahati, 166 F.2d 348, 353 (9th Cir. 1948) ("A corporate name or trade name identifies a corporation; it also identifies its business and the goods or services which it sells or renders." (citation omitted)).

Trade names are accorded the same protection as trademarks and service marks because they serve the same fundamental purpose: "to identify a business and its products or services, to create demand for those products or services, and to protect the company's good will."  Accuride, 871 F.2d at 1536; see also Sahati, 166 F.2d at 360 ("A trade name is . . . no less effective than a trade-mark as a means of identification."); W. Des Moines State Bank v. Hawkeye Bancorp., 722 F.2d 411, 413 (8th Cir. 1983) ("Trade names (business names) are under modern law accorded the same protection as trademarks.").  All three also work to "preclude one from using another's distinctive mark or name if it will cause a likelihood of confusion or deception as

1  to the origin of the goods [or services]."  New W. Corp. v. NYM

2  Co. of Cal., 595 F.2d 1194, 1201 (9th Cir. 1979).

3        The Supreme Court has emphasized that the distinction

4  between trademarks, service marks, and trade names is often

5  immaterial because "the law affords protection against [their]

6  appropriation in either view, upon the same fundamental

7  principles."  Robertson, 269 U.S. at 380; accord Accuride, 871

8  F.2d at 1534 ("As a practical matter, courts are rarely called

9  upon to distinguish between trade names, trademarks and service

10  marks.").  "As in general trademark law, the test for

11  infringement of the names of corporate, professional[,] and

12  business organizations is likelihood of confusion [and the key

13  question is] whether the public is likely to be deceived or

14  confused by the similarity of the marks."  Accuride, 871 F.2d at

15  1533 (citation omitted).

16        Accordingly, defendant's use of a corporate name

17  containing the word "Grange" is a use of a mark containing the

18  word "Grange" within the definition of the Lanham Act.

19  Defendant's use of "California State Grange" as its corporate

20  name therefore infringes plaintiff's registered mark and

21  constitutes unfair competition against plaintiff.  See Sahati,

22  166 F.2d at 357 ("[T]he use of the advertising or trade name or

23  distinguishing mark of another, is in its [n]ature, fraudulent

24  and will be enjoined." (citation omitted)).

25        Pursuant to section 1116(a) of the Lanham Act,

26  defendant is ordered to remove the word "Grange" from all

27  corporate registrations and other documents filed with any

28  federal, state, or local government.  These include defendant's

articles of incorporation and lobbying licenses on file with the
California Secretary of State and all fictitious business names
on file with Sacramento County under the corporate name
"California State Grange."

C.   "California Grange Foundation"

California Grange Foundation (the "Foundation") is a
corporation that was created by defendant in 1992 and is
currently operated by defendant's president, Robert McFarland.
(See Komski Decl. ¶ 33, Ex. 22, Dec. 28, 2015 ("Komski I Decl.")
(Docket Nos. 99-2 to 99-43); McFarland Decl. Ex. C; Keel Decl.
¶¶ 3, 6, Apr. 1, 2016 (Docket No. 132-2).)  The California
Secretary of State lists the same corporate address for both
defendant and the Foundation, and both entities list McFarland as
their agent for service of process.  Compare Business Entity
Detail for "CALIFORNIA GRANGE FOUNDATION," with Business Entity
Detail for "CALIFORNIA STATE GRANGE," http://kepler.sos.ca.gov
(last visited Apr. 14, 2016).

McFarland exercises control over both entities,
including the contents of the Foundation's website.  (Komski I
Decl. ¶ 33; Keel Decl. ¶¶ 3, 6.)  The Foundation's board of
directors is also composed of members who sit on defendant's
executive committee.  (McFarland I Decl. ¶ 22; Komski I Decl. Ex.
24 at 1.)

The court thus finds that the Foundation is defendant's
agent, affiliate, assign, or an entity acting in concert with
defendant.  Cf. In re Gottheiner, 703 F.2d 1136, 1140 (9th Cir.
1983) ("When a person owns most or all of the shares in a
corporation and controls the affairs of the corporation, it is

1    presumed that in any litigation involving that corporation the

2    individual has sufficient commonality of interest." (citation

3    omitted)).  The Foundation is therefore bound by the court's

4    September 29, 2015 injunction prohibiting it from using the word

5    "Grange."  See Fed. R. Civ. P. 65(d)(2) (providing that an

6    injunction is binding upon the parties to an action and their

7    officers, agents, servants, employees, and attorneys and those

8    who are in active concert or participation with them, provided

9    that such non-parties received actual notice of the injunction).

10        The Foundation has registered fictitious business names

11   with Sacramento County to do business as "California Guild

12   Foundation."  See Fictitious Business Name Search for "CALIFORNIA

13   GRANGE FOUNDATION," Sacramento County On-Line Servs., https://

14   actonline.saccounty.net/CitizenAccess/SACCO_FBNSearch.aspx (last

15   visited Apr. 14, 2016).  The Sacramento County website lists

16   "California Grange Foundation" as the owner of that fictitious

17   business name, however, and the Foundation continues to retain

18   "California Grange Foundation" as its corporate name registered

19   with the California Secretary of State.

20        Accordingly, for the reasons discussed above, supra

21   Part III.B, California Grange Foundation is ordered to remove the

22   word "Grange" from all corporate registrations and other

23   documents filed with any federal, state, or local government.

24   These include articles of incorporation and lobbying licenses on

25   file with the California Secretary of State and all fictitious

26   business names on file with Sacramento County under its corporate

27   name "California Grange Foundation."  The Foundation is advised

28   that non-parties may be held liable in contempt for violating the

1    court's injunction.  <u>Peterson v. Highland Music, Inc.</u>, 140 F.3d

2    1313, 1323-24 (9th Cir. 1998); <u>see also</u> <u>Reebok v. McLaughlin</u>, 49

3    F.3d 1387, 1392 (9th Cir. 1995) (the court has personal

4    jurisdiction over domestic non-parties who act in concert with a

5    party in violating an injunction).

6         D.   <u>Use of "Granger" and "CSG"</u>

7              Plaintiff also requests the court to enjoin defendant's

8    use of the words "Granger" and "CSG."  As discussed in detail in

9    the court's Order of September 29, 2015, plaintiff's Complaint

10   did not seek trademark protection for "Granger" or "CSG."  (Sept.

11   29, 2015 Order at 3-4.)  All of the allegations in plaintiff's

12   Complaint were limited to ten registered trademarks: "NATIONAL

13   GRANGE," "THE GRANGE FOUNDATION," "NATIONAL GRANGE OF THE ORDER

14   OF PATRONS OF HUSBANDRY," two trademarks for "P OF H GRANGE," and

15   five trademarks for "GRANGE."  (Compl. ¶ 20.)  Plaintiff neither

16   alleged that defendant used "Granger" or "CSG" nor requested the

17   court to enjoin defendant from using "Granger" or "CSG."  Because

18   summary judgment was limited to the use of "Grange," whether

19   "Granger" or "CSG" are protected trademarks was never litigated

20   or before the court.

21             Enjoining defendant's use of "Granger" or "CSG" would

22   be improper because it would require the court to adjudicate new

23   issues that were "not decided in its original disposition of the

24   case."  <u>McClatchy</u>, 686 F.2d at 735.  Such an injunction would

25   also change the status quo and materially alter the status of the

26   case on appeal.  <u>See</u> <u>id.</u>; <u>Nat. Res. Def. Council</u>, 242 F.3d at

27   1166.  The court must therefore limit its grant of injunctive

28   relief to the relief plaintiff had requested in its Complaint and

1    the marks upon which the court granted summary judgment.  See

2    Skydive Arizona, Inc. v. Quattrocchi, 673 F.3d 1105, 1116 (9th

3    Cir. 2012) ("Injunctive relief under the Lanham Act must be

4    narrowly tailored to the scope of the issues tried in the

5    case."); Crawford v. Gould, 56 F.3d 1162, 1168 (9th Cir. 1995)

6    (holding that a court may not enter a judgment that goes beyond

7    the claims asserted in the pleadings).  Accordingly, the court

8    will deny plaintiff's request to enjoin defendant's use of

9    "Granger" and "CSG."

10        E.    Use of "Grange" in Business Activities

11        Plaintiff requests the court to enjoin defendant and

12   its agents and affiliates from conducting any business activities

13   using the name "Grange."  Defendant acknowledges that it

14   currently uses two bank accounts opened under the name

15   "California State Grange."  (McFarland I Decl. ¶ 19.)  Defendant

16   states it has removed the word "Grange" from its checks.

17   (McFarland II Decl. ¶ 21.)  But there is no indication that

18   defendant has removed the word "Grange" from the actual names of

19   its bank accounts.  (See Docket No. 114 at 12 ("Defendant's bank

20   accounts remain in its corporate name.").)

21        Defendant further contends that, at least since the

22   court's judgment of September 29, 2015, it has not solicited any

23   membership dues using the name "Grange."  (Opp'n at 6; McFarland

24   II Decl. ¶ 22.)  These statements do not appear to be true.

25   Until at least February 4, 2016, defendant issued billing

26   statements titled "Grange Dues."  (Hoag Decl. ¶¶ 1, 4 (Docket No.

27   132-1); e.g., Docket No. 99-29.)  During that time, defendant

28   collected membership dues paid by checks that were addressed to

1  "California State Grange," and it endorsed those checks under the

2  name "California State Grange" and deposited them into its bank

3  accounts.  (Hoag Decl. ¶ 5; McFarland I Decl. ¶ 19; Wallis Decl.

4  ¶ 8 (Docket No. 114-12).)

5           These actions amount to a blatant disregard for and

6  violation of the court's September 29, 2015 injunction.  As

7  described above, supra Part III.B, the permanent injunction

8  restricted defendant from using the word "Grange" or any name

9  containing "Grange" in connection with its goods or services.

10 This included mailing billing statements titled "Grange dues,"

11 endorsing checks using any name containing the word "Grange," and

12 using bank accounts under any name containing the word "Grange."

13          Accordingly, the court will enjoin defendant and its

14 agents, affiliates, and assigns, and any party acting in concert

15 with them, from conducting any business activities using the name

16 "Grange," including, but not limited to, soliciting dues using

17 the name "Grange," collecting checks addressed to any entity that

18 contains the word "Grange" in its name, endorsing checks using

19 any name that contains the word "Grange," using bank accounts or

20 other financial accounts under any name containing the word

21 "Grange," and endorsing, signing, or executing any document,

22 lease, instruction, or financial instrument using any name

23 containing the word "Grange."

24     F.   Use of "Grange" in Domain Names and Email Addresses

25          The court has previously expressed that the permanent

26 injunction prohibits defendant from using "Grange" in any domain

27 name or email address.  (See Sept. 29, 2015 Order at 5.)

28 Defendant and McFarland currently list their email address on the

1    California Secretary of State website as "president@california

2    grange.org."  <u>See</u> Lobbying Activity for "C.S.G.," http://

3    cal-access.ss.ca.gov/Lobbying/Employers/Detail.aspx?id=1146807&se

4    ssion=2015 (last visited Apr. 14, 2016); Lobbying Activity for

5    "MC FARLAND, BOB E.," http://cal-access.ss.ca.gov/Lobbying

6    /Lobbyists/Detail.aspx?id=1326773&session=2015 (last visited Apr.

7    14, 2016).  Accordingly, the court will grant plaintiff's request

8    to enjoin defendant and its agents and affiliates from using the

9    word "Grange" in any domain name or email address.

10          G.    <u>Reference to Past Affiliation</u>

11                Plaintiff seeks to enjoin defendant from making certain

12   references, discussed below, pertaining to defendant's past

13   affiliation with plaintiff.  After the parties disaffiliated in

14   2013, plaintiff's California-based members reorganized a state

15   chapter under the name "Grange of the State of California's Order

16   of Patrons of Husbandry, Chartered."  (July 14, 2015 Order at

17   11.)  The court previously found it "foreseeable that a

18   prospective or current member [of plaintiff] would be uncertain

19   as to which California Grange originates from [plaintiff's]

20   organization."  (<u>Id.</u>)

21                Defendant conceded that the use of "Grange" by two

22   separate California organizations had caused actual confusion

23   among consumers regarding the origin of defendant's services.

24   (<u>Id.</u> at 11-12; <u>see also</u> <u>id.</u> at 9 (finding the record "replete

25   with evidence that a reasonably prudent Grange member,

26   prospective member, or other person contemplating doing business

27   with [plaintiff] is likely to be confused as to the origin of

28   defendant's services due to its use of 'Grange'").)  In enjoining

1  defendant from using the word "Grange" or any name containing

2  "Grange," the court's September 29, 2015 injunction aimed to

3  protect consumers from being misled or confused about the source

4  of defendant's services or its association with plaintiff.

5        This is not to say that defendant can never make

6  reference to the history of its organization.  But that is not

7  what defendant is doing here.  Since the court's injunction,

8  defendant has referred to itself as the legal successor to the

9  former California State Grange.  (Allen Decl. ¶¶ 10-11.)

10  Defendant also identifies itself publically as CSG, formerly

11  known as California State Grange; formerly trading as California

12  State Grange; and formerly doing business as California State

13  Grange.  Every page on defendant's website currently contains a

14  prominent header at the top that says: "CSG Formerly the

15  California State Grange."  E.g., Welcome to the CSG,

16  www.csgunited.org (last visited Apr. 14, 2016).

17        It appears that these references to defendant's past

18  affiliation with plaintiff are an attempt to do an "end-run"

19  around the court's permanent injunction prohibiting defendant

20  from using the word "Grange" in connection with its goods or

21  services.  Cf. TrafficSchool.com, Inc. v. Edriver, Inc., 653 F.3d

22  820, 830 (9th Cir. 2011) (evidence of actual confusion strongly

23  supports a finding of willfulness); Earthquake Sound Corp. v.

24  Bumper Indus., 352 F.3d 1210, 1218 (9th Cir. 2003) (same).

25  Defendant's references have caused a number of plaintiff's

26  members to believe that defendant is currently plaintiff's

27  authorized representative.  (Allen Decl. ¶¶ 10-11; Huber Decl.

28  ¶¶ 20, 29 (Docket No. 126-3).)

1          These references, including representations that

2    defendant is the "former California State Grange," have also

3    caused actual confusion among at least fifty of plaintiff's

4    members since September 2015 regarding the origin of defendant's

5    services and defendant's association with plaintiff.  (Allen

6    Decl. ¶¶ 3, 10.)   In addition, the first sentence of defendant's

7    homepage states: "The CSG (formerly California State Grange) is

8    the oldest agricultural organization in California, started in

9    1870."  Id.

10          The court previously held that similar references to

11   defendant's historical affiliation with plaintiff strongly

12   suggested to consumers that defendant was presently affiliated

13   with plaintiff.  (July 14, 2015 Order at 9-10 (finding that

14   "defendant recounts plaintiff's history, and not its own" and

15   that this is likely to cause plaintiff's members or prospective

16   members to believe that defendant is affiliated with

17   plaintiff).); cf. FTC v. Algoma Lumber Co., 291 U.S. 67, 81

18   (1934) ("[T]here is a kind of fraud, as courts of equity have

19   long perceived, in clinging to a benefit which is the product of

20   misrepresentation, however innocently made.  That is the

21   respondents' plight today, no matter what their motives may have

22   been when they began.  They must extricate themselves from it by

23   purging their business methods of a capacity to deceive.").

24          Most importantly, by identifying itself as "formerly

25   the California State Grange," defendant is effectively using a

26   name containing the word "Grange" in violation of the court's

27   permanent injunction.  Precluding defendant from referencing its

28   past affiliation with plaintiff in a manner that causes consumers

to be misled or confused about the origin of defendant's services
or its association with plaintiff serves the key objective of the
Lanham Act.  See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,
469 U.S. 189, 198 (1985).  Doing so also accords with the court's
previous rulings and permanent injunction in this case.
Accordingly, the court will grant plaintiff's request and enjoin
defendant from referencing its past affiliation with plaintiff,
including representing that it is the former California State
Grange; successor to the California State Grange; or formerly
known as, trading as, or doing business as the California State
Grange.

        H.    Business Directory Listings

            Plaintiff requests that the court order defendant to
"cancel and discontinue use of all telephone number[] listings
containing the name 'Grange' and delete all appearances of the
name 'Grange' from Defendant's business directory listings with
Google and those appearing at ZoomInfo and similar internet
websites."  Defendant argues that it does not have control over
the contents of Google or ZoomInfo, has never requested any
information to be posted on those sites, and has not encouraged
any third-party website to refer to defendant using the word
"Grange."  (McFarland II Decl. ¶ 12; Keel Decl. ¶ 8.)

            Defendant's address and telephone number appear in
response to a Google search for "California State Grange."
(Komski I Decl. ¶ 10.)  The Google result is a business listing
for "California State Grange" in the Google Maps database.  See
"California State Grange," Google Search, https://www.google.com
/search?q=California+State+Grange (last visited Apr. 14, 2016).

1   Immediately under the listed information, there is a link titled

2   "Suggest an edit."  That link allows users who "see something

3   wrong with a business [they] don't own or manage" to report wrong

4   business information or remove their own information from an

5   unrelated business that appears on a Google search result.  Add

6   or Edit Business Information on Maps, Google.com, https://

7   support.google.com/business/answer/6174435 (last visited Apr. 14,

8   2016).[5]  Users can also remove data from Google's directory for

9   legal reasons by submitting a "legal request."  Report a Data

10  Problem in Google Maps, Google.com, https://support.google.com

11  /maps/answer/3094088 (last visited Apr. 14, 2016).

12          Defendant's company profile on ZoomInfo.com lists its

13  name as "CSG" and its website as www.californiagrange.org.  See

14  "CSG" Company Profile, www.zoominfo.com/c/California-State-

15  Grange/353967545 (last visited Apr. 14, 2016).  Its company

16  description states:

17      The CSG (formerly California State Grange) is the oldest
        agricultural organization in California, started in 1870.
18      Cities and townships have grown up around our rural halls
        and the CSG has evolved into a community service
19      organization with 10,000 members and 206 chapters across

20

21          [5]    To the extent some of the descriptions about Google and
22  ZoomInfo's websites are not in the record, the court takes
    judicial notice of www.Google.com and www.ZoomInfo.com and the
23  information contained therein pursuant to Federal Rule of
    Evidence 201.  See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir.
24  2005) (finding judicial notice of webpages appropriate because
    "[j]ust as a reader must absorb a printed statement in the
25  context of the media in which it appears, a computer user
    necessarily views web pages in the context of the links through
26  which the user accessed those pages"); Hendrickson v. eBay, Inc.,
    165 F. Supp. 2d 1082, 1084 n.2 (C.D. Cal. 2001) (taking "judicial
27  notice of www.eBay.com and the information contained therein
    pursuant to Federal Rule of Evidence 201").
28

1
2
3
4
5

     California. CSG community halls are often the center of their community, providing opportunities, culture and education, entertainment, emergency shelter, and a meeting place where new friends are made and old friends are cherished. Everyone is welcome to apply for membership in the CSG. Each member contributes at their own pace and level of participation. Each chapter decides how to best serve the community.

6
7
8

Id.  The court has previously found that similar language posted on defendant's website strongly suggested that defendant was affiliated with plaintiff.  (July 14, 2015 Order at 9-10.)

9
10
11
12
13
14
15
16

     Like Google, ZoomInfo also allows users to notify it if a company profile in their name is inaccurate or out-of-date and to correct that information.  See Contact Us, ZoomInfo, http://www.zoominfo.com/business/contact (last visited Apr. 14, 2016). Users may also remove their business profile completely from the directory.  See FAQ, ZoomInfo, http://subscriber.zoominfo.com/usercenter/index.php/pro-faq#removal (last visited Apr. 14, 2016).

17
18
19
20
21
22
23
24
25
26
27
28

     Defendant's assertions that it has no control over the contents of its listings on Google or ZoomInfo are therefore not entirely true.  Defendant concedes that it has not "attempted to influence[] Google or ZoomInfo search results" and has not sent any communications to those websites "since the injunction was entered."  (McFarland I Decl. ¶ 18; Docket No. 114 at 14.). Accordingly, since defendant is able to utilize easily-accessible features on Google and ZoomInfo to remove or correct its public business information, the court will order defendant to remove the word "Grange" from all public telephone and business directory listings, on the internet and otherwise, to the extent it can do so.

1              I.    Disclaimer on Defendant's Website

2                    Plaintiff requests an injunction ordering defendant to

3    include a prominent disclaimer on its website that it is "not

4    affiliated with the California State Grange."  Plaintiff also

5    requests that defendant include a hyperlink on its website that

6    redirects users to plaintiff's website.  That is something more

7    than what the court enjoined or intended to compel in its

8    original injunction, and would go beyond merely preserving the

9    status quo.  Accordingly, the court will deny plaintiff's request

10   to expand the injunction to require defendant to provide a

11   disclaimer on its website or include a hyperlink that redirects

12   users to plaintiff's website.

13             J.    Attorney's Fees

14                   Plaintiff requests that the court order defendant to

15   pay its reasonable attorney's fees in bringing this motion and

16   its previous motion for an order to show cause why defendant

17   should not be held in contempt for violating the court's original

18   injunction, including the declarations of Ed Komski.  Defendant

19   argues that plaintiff voluntarily abandoned its claim for fees

20   when it moved to voluntarily dismiss its monetary claims on

21   September 4, 2015.  (Opp'n at 9 (citing Docket No. 75).)  In that

22   motion, however, plaintiff sought to dismiss its claims for

23   damages or fees without prejudice "to any claims that it may make

24   in the future."  (Docket No. 75 at 1.)

25                   The parties later filed a stipulated motion to dismiss

26   plaintiff's claims for damages with prejudice.  (Docket No. 80.)

27   The parties stipulated "that nothing in the Order sought by this

28   [stipulated] Motion shall be understood to preclude Plaintiff for

1   making a claim for damages in the event of a future violation of

2   any permanent injunction that is ultimately issued in this case."

3   (Id. ¶ 3; Docket No. 80-1 at 2.)  The court granted the parties'

4   stipulated motion on September 29, 2015.  (Sept. 29, 2015 Order

5   at 1-2, 6.)

6          As discussed in this Order, defendant violated the

7   court's permanent injunction by continuing to use "Grange" in its

8   corporate name, business activities, email address on the

9   California Secretary of State website, and business directory

10  listings that it had the opportunity to correct or remove.

11  Plaintiff's fee request here is thus for "a future violation of

12  any permanent injunction" as contemplated by the parties and

13  stipulated in their motion.  (Docket No. 80 ¶ 3.)  Accordingly,

14  plaintiff did not abandon its claim for attorney's fees here.

15         Under 15 U.S.C. § 1117(a), the court may award

16  reasonable attorney's fees to the prevailing party in an

17  exceptional case, "which includes cases in which the act is

18  fraudulent, deliberate, or willful."  Horphag Research Ltd. v.

19  Garcia, 475 F.3d 1029, 1039 (9th Cir. 2007).

20         1.   Prevailing Party

21         "A party is a prevailing party for purposes of an

22  attorneys' fee award if it 'achieved a material alteration in the

23  legal relationship of the parties that is judicially

24  sanctioned.'"  Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A.,

25  Inc., 778 F.3d 1059, 1078 (9th Cir. 2015) (citation omitted).

26  "The material alteration in the legal relationship of the parties

27  must be relief that the would-be prevailing party sought."

28  Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt., 589

1  F.3d 1027, 1030 (9th Cir. 2009).  A party need not succeed on all

2  of its claims to be the prevailing party.  A.V.E.L.A., 778 F.3d

3  at 1078.

4        As for the pending motion, the court has granted a

5  large part of plaintiff's requested relief.  Plaintiff has thus

6  obtained a material alteration in the legal relationship of the

7  parties that is judicially sanctioned.  See id. at 1078; Klamath,

8  589 F.3d at 1035.  As for plaintiff's contempt motion, the court

9  denied that motion without prejudice to plaintiff bringing its

10 pending motion.  (Docket Nos. 117, 125.)  The pending motion is

11 based on exhibits and evidence that plaintiff had submitted with

12 its contempt motion.  (Mot. at 5.)

13       Plaintiff's contempt motion also sought much of the

14 relief the court has granted here.  (See Docket Nos. 109, 109-2

15 (seeking to enjoin defendant and California Grange Foundation

16 from using "Grange" in their corporate names; seeking to enjoin

17 defendant from conducting business using the name "Grange" or

18 representing its email address using the word "Grange"; and

19 requesting the court to order defendant to remove the word

20 "Grange" from its business directory listings on Google and

21 ZoomInfo).)  Plaintiff has therefore obtained the relief it

22 sought in its motion for an order to show cause why defendant

23 should not be held in contempt.  Because plaintiff has obtained

24 the relief it sought in both of its motions, it is the prevailing

25 party on both motions for purposes of a fee award.

26            2.   Exceptional Case

27       A case is considered exceptional "when the infringement

28 is malicious, fraudulent, deliberate, or willful."  A.V.E.L.A.,

33

778 F.3d at 1078 (citation omitted).  "Egregious conduct is not required."  Id.  "Nor is bad faith."  Id.  The court is hard pressed to find that defendant's acts were anything other than deliberate and willful.  There is significant evidence that defendant was aware that its conduct infringed plaintiff's trademark rights and constituted unfair competition against plaintiff.

In its Order of July 14, 2015, the court found significant evidence of representations made by defendant on its website, in its newsletters, and in public media strongly suggesting it was still affiliated with plaintiff.  (July 14, 2015 Order at 9-10; e.g., Turrill Decl. Exs. 7, 23-24 (Docket Nos. 43-4 to 43-11).)  Based on that evidence, the court concluded that a reasonable current or prospective member of plaintiff's national organization, or any other person contemplating doing business with plaintiff, would likely believe defendant is affiliated with plaintiff and be confused as to the origin of its services.  (July 14, 2015 Order at 9-10.)

Defendant's membership brochures and its current website's format, layout, and content are almost identical to those it used when it was affiliated with plaintiff.  (Komski I Decl. ¶¶ 7-8, 28-29, Exs. 1-2, 16-17.)  After its disaffiliation, defendant listed the names of plaintiff's members on its new website, and it displayed links to historical publications made by plaintiff's organization in its website's "News Archive" section.  (Id. ¶¶ 19, 30, Exs. 9-10, 18.)

Despite this court's permanent injunction barring defendant from using "Grange," defendant uses the name "Grange"

34

in public filings and registrations with the California Secretary of State and the County of Sacramento.  See Stover v. Farmers' Educ. & Co-op. Union of Am., 250 F.2d 809, 812-13 (8th Cir. 1958) ("It is immaterial that the injunction did not include a general prohibition of any use of the corporate names of the defendants. It plainly and unambiguously forbade the appellant to use the registered words [and his violations were thus] properly held to be wilful and in contempt of court.").  Defendant's use of the name "Grange" is visible to the public on the Secretary of State and County websites.  (E.g., Komski II Decl. Ex. 2.)  Defendant and McFarland both represent their email addresses as "president@californiagrange.org" on lobbying licenses with the Secretary of State that are visible to the public.

Until at least February 4, 2016, defendant issued billing statements titled "Grange Dues" and endorsed and deposited checks addressed to "California State Grange."  Its public business profiles on Google.com and ZoomInfo listed it as "California State Grange" and its website as www.californiagrange .org, even though defendant was free to correct or remove that information any time it wished.  Defendant's agents have continued to represent that defendant is the "California State Grange."  In December 2015, one of plaintiff's members called defendant's business number and asked if he had reached the "California State Grange"; the receptionist answered, "Yes." (Komski I Decl. ¶ 11.)

There is also evidence that defendant's conduct has caused actual confusion among at least fifty of plaintiff's members regarding defendant's affiliation with plaintiff and the

origin of its services.  (E.g., Allen Decl. ¶¶ 3, 10-11.)  Ample

evidence of actual confusion is the most important support for a

finding of willfulness.  TrafficSchool.com, 653 F.3d at 833;

Earthquake Sound, 352 F.3d at 1218.  The court therefore

concludes that defendant has willfully and deliberately continued

to deceive the public by infringing plaintiff's trademark and

engaging in unfair competition against plaintiff.  See

TrafficSchool.com, 653 F.3d at 833 ("There was overwhelming proof

that defendants knew their statements confused consumers and did

little or nothing to remedy it.  The district court could

reasonably infer that they willfully deceived the public.");

Earthquake Sound, 352 F.3d at 1219 ("The total picture in this

case is one of deliberate, willful infringement . . . . We thus

hold that this is an exceptional case within the meaning of 15

U.S.C. § 1117(a) such that the district court did not abuse its

discretion in awarding Earthquake its attorney's fees.").

Accordingly, the court grants plaintiff's request for
attorney's fees incurred in bringing this motion and its motion
for an order to show cause why defendant should not be held in
contempt.  Within twenty-one (21) days from the date of this
Order, plaintiff shall file a declaration detailing its
attorney's fees for bringing these two motions.  The court will
review the accounting and will thereafter issue an Order
directing defendant to pay such of it as the court approves.

IT IS THEREFORE ORDERED that plaintiff National Grange
of the Order of Patrons of Husbandry's motion for an injunction
(Docket No. 126) be, and the same hereby is, GRANTED IN PART as
follows:

(1) defendant California State Grange and its agents, affiliates, and assigns, and any party acting in concert with defendant or its agents, affiliates, and assigns, including the California Grange Foundation, shall remove the word "Grange" from all corporate registrations and other documents filed with any federal, state, or local government, including, but not limited to, articles of incorporation and lobbying licenses on file with the California Secretary of State and all fictitious business name registrations with the County of Sacramento;

(2) within five (5) days from the date of this Order, defendant shall serve upon California Grange Foundation a copy of this Order and shall file with the clerk a certificate reflecting such service;

(3) defendant and its agents, affiliates, and assigns, and any party acting in concert with defendant or its agents, affiliates, and assigns shall remove the word "Grange" from all public telephone and business directory listings, on the internet or otherwise, including, but not limited to, online business directory listings on www.Google.com and www.ZoomInfo.com, to the extent they can do so;

(4) defendant and its agents, affiliates, and assigns, and any party acting in concert with defendant or its agents, affiliates, and assigns are permanently enjoined from:

(a) conducting business using the name "Grange," including, but not limited to, soliciting dues using the name "Grange," collecting checks addressed to any entity whose name contains the word "Grange," endorsing checks using any name containing the word "Grange," using bank accounts or other

1   financial accounts under any name containing the word "Grange,"

2   and endorsing, signing, or executing any document, lease,

3   instruction, or financial instrument using any name containing

4   the word "Grange";

5              (b) using "Grange" in any domain name or email

6   address or otherwise representing their domain name or email

7   address as containing the word "Grange"; and

8              (c) referencing their past affiliation with

9   plaintiff or any other entity whose name contains the word

10  "Grange," including representing themselves to be the former

11  California State Grange; successor to the California State

12  Grange; or formerly known as, trading as, or doing business as

13  the California State Grange;

14             (5) within fifteen (15) days from the date of this

15  Order, defendant shall file with the court and serve on plaintiff

16  a report in writing under oath setting forth in detail the manner

17  and form in which defendant, its officers, agents, servants,

18  employees, representatives, partners, and all parties acting in

19  concert with defendant have complied with the terms of this

20  Order;

21             (6) within twenty-one (21) days from the date of this

22  Order, plaintiff shall file an accounting of its attorney's fees

23  associated with its motion for an injunction (Docket No. 126),

24  its motion for an order to show cause why defendant should not be

25  held in contempt (Docket No. 109), and the declarations of Ed

26  Komski dated December 28, 2015 (Docket Nos. 99-2 to 99-43) and

27  February 1, 2016 (Docket No. 109-1).  Defendant may file an

28  opposition to plaintiff's fee motion within fourteen (14) days

1   from the date plaintiff's fee motion is filed.  The court will

2   review the accounting and will thereafter issue an Order

3   directing defendant to pay some or all of it; and

4          (7) defendant shall pay plaintiff these attorney's fees

5   and file an affidavit with the court confirming payment within

6   five (5) business days after the court issues its Order regarding

7   the attorney's fees.

8          IT IS SO ORDERED.

9   Dated:  April 20, 2016

10                                                WILLIAM B. SHUBB

11                                                UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28