UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

THE NATIONAL GRANGE OF THE
ORDER OF PATRONS OF
HUSBANDRY, a District of
Columbia nonprofit
corporation,

        Plaintiff,

   v.

CALIFORNIA STATE GRANGE d/b/a
"CSG," a California
corporation,

        Defendant.

CIV. NO. 2:14-676 WBS AC

MEMORANDUM AND ORDER RE: MOTION
FOR ATTORNEY'S FEES

----oo0oo----

      Plaintiff the National Grange of the Order of Patrons
of Husbandry brought this action against defendant California
State Grange, currently known as the California State Guild, for
violations of the Lanham Act.  Presently before the court is
plaintiff's motion for attorney's fees in the amount of
$154,230.80 pursuant to the Lanham Act and this court's Order of
April 20, 2016.  (Docket No. 142.)

///

1

1    I.    Factual and Procedural Background

2           A detailed factual background of this case is set forth

3    in the court's April 20, 2016 Order granting plaintiff's motion

4    for an injunction.   Nat'l Grange of the Order of Patrons of

5    Husbandry v. Cal. State Grange, Civ. No. 2:14-676 WBS AC, 2016 WL

6    1587193 (E.D. Cal. Apr. 20, 2016).   It is therefore unnecessary

7    to repeat that background in full here.

8           In July 2015, the court granted summary judgment in

9    favor of plaintiff on its claims for (1) trademark infringement,

10   15 U.S.C. § 1114; and (2) unfair competition and false

11   designation of origin, 15 U.S.C. § 1125(a).   (Docket No. 60.)[1]

12   In September 2015, the court entered an Order permanently

13   enjoining "[d]efendant and its agents, affiliates, and assigns,

14   or any party acting in concert with [them] from using marks

15   containing the word 'Grange.'"   (Docket No. 86.)   Defendant

16   appealed the court's July and September 2015 Orders; that appeal

17   is currently pending before the United States Court of Appeals

18   for the Ninth Circuit.   (Docket Nos. 87, 89, 95.)   In January

19   2016, this court denied defendant's motion to stay the September

20   2015 permanent injunction pending defendant's appeal.   (Docket

21   No. 108.)

22           In February 2016, plaintiff moved for an order to show

23   cause why defendant should not be held in contempt for violating

24   the court's September 2015 injunction (the "Contempt Motion").

25   (Docket No. 109.)   The court denied that motion without prejudice

26

27   _____

     [1]    Plaintiff dismissed its remaining two claims against
28   defendant with prejudice.   (Id.)

                                  2

1  to plaintiff filing a motion for further injunctive relief based

2  on the issues that were litigated in this case.  (Docket No.

3  117.)  The court additionally denied plaintiff's motion for

4  clarification of the September 2015 injunction.  (Docket No.

5  125.)

6          On April 20, 2016, the court granted in part

7  plaintiff's motion for further injunctive relief based on the

8  issues that were litigated in this case (the "Injunction

9  Motion").  (Apr. 20, 2016 Order (Docket No. 138).)  In its April

10 20, 2016 Order, the court held that plaintiff was entitled to

11 reasonable attorney's fees under section 1117(a) of the Lanham

12 Act in connection with (1) plaintiff's Injunction Motion; (2)

13 plaintiff's Contempt Motion; (3) Ed Komski's February 1, 2016

14 declaration filed in support of plaintiff's Contempt Motion,

15 (Docket No. 109-1); and (4) Komski's December 28, 2015

16 declaration filed in support of plaintiff's opposition to

17 defendant's motion to stay the court's September 2015 injunction

18 pending defendant's appeal, (Docket Nos. 99-2 to 99-43).

19 Pursuant to the court's April 20, 2016 Order, plaintiff now moves

20 for attorney's fees in the amount of $154,230.80.  (Mot. (Docket

21 No. 142); Mem. at 2 (Docket No. 142-1).)

22 II.  Discussion

23      A.   Entitlement to Fees

24          Section 1117(a) of the Lanham Act authorizes reasonable

25 attorney's fees to the prevailing party in an exceptional case.

26 See 15 U.S.C. § 1117(a); Horphag Research Ltd. v. Garcia, 475

27 F.3d 1029, 1039 (9th Cir. 2007).  In its April 20, 2016 Order,

28 the court held that plaintiff was the prevailing party on its

1   Injunction and Contempt Motions for purposes of a fee award
2   because it obtained the relief it sought in those motions.  (Apr.
3   20, 2016 Order at 32-33.)

4         The court also found that this was an "exceptional
5   case" within the meaning of § 1117(a) because there was
6   "significant evidence" that defendant willfully and deliberately
7   continued to infringe plaintiff's trademark rights and engage in
8   unfair competition against plaintiff following the court's
9   September 2015 injunction.  (See id. at 33-36 ("The court is hard
10  pressed to find that defendant's acts were anything other than
11  deliberate and willful.")); see also Fifty-Six Hope Rd. Music,
12  Ltd. v. A.V.E.L.A., Inc., 778 F.3d 1059, 1078 (9th Cir. 2015)
13  (stating that a trademark case is exceptional for purposes of a
14  fee award under § 1117(a) where the defendant's conduct "is
15  malicious, fraudulent, deliberate, or willful," and neither
16  egregious conduct nor bad faith is required for such a finding).

17        B.   Amount of the Fee Award

18        The determination of a reasonable fee involves a two-
19  step inquiry.  Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614,
20  622 (9th Cir. 1993).  First, "the district court applies the
21  lodestar method" by "multiplying the number of hours reasonably
22  expended by a reasonable hourly rate."  Ryan v. Editions Ltd. W.,
23  Inc., 786 F.3d 754, 763 (9th Cir. 2015) (citing Hensley v.
24  Eckerhart, 461 U.S. 424, 433 (1983)).  "The resulting number is
25  frequently called the 'lodestar' amount."  McCown v. City of
26  Fontana, 565 F.3d 1097, 1102 (9th Cir. 2009).  "The party seeking
27  the award should provide documentary evidence to the court
28  concerning the number of hours spent, and how it determined the

4

1    hourly rate(s) requested." Id. (citing Hensley, 461 U.S. at

2    433).

3            Second, "in appropriate cases, the district court may

4    adjust the 'presumptively reasonable' lodestar figure based upon

5    the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d

6    67, 69-70 (9th Cir. 1975), that have not been subsumed in the

7    lodestar calculation." Intel, 6 F.3d at 622.  "The lodestar

8    amount presumably reflects the novelty and complexity of the

9    issues, the special skill and experience of counsel, the quality

10   of representation, and the results obtained from the litigation."

11   Id.  "The court need not consider all [of the Kerr] factors, but

12   only those called into question by the case at hand and necessary

13   to support the reasonableness of the fee award." Cairns v.

14   Franklin Mint Co., 292 F.3d 1139, 1158 (9th Cir. 2002) (citation

15   omitted).

16           1.   Reasonable Rate

17                a.   Prevailing Market Rate

18           To determine a reasonable hourly rate, the court must

19   look to the prevailing rates in the relevant legal community "for

20   similar work performed by attorneys of comparable skill,

21   experience, and reputation." Ingram v. Oroudjian, 647 F.3d 925,

22   928 (9th Cir. 2011) (citation omitted).  "Generally, the relevant

23   community is the forum in which the district court sits." Barjon

24   v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997).  The parties agree

25   that the relevant community in this case is the Eastern District

26   of California.  See id. at 502.  The "burden is on the fee

27   applicant to produce satisfactory evidence--in addition to the

28   attorney's own affidavits--that the requested [hourly] rates are

1  in line with those prevailing in the community for similar

2  services by lawyers of reasonably comparable skill, experience

3  and reputation."  Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984).

4         Plaintiff requests the following hourly rates here:

5  (1) $530 for James Bikoff, a partner at Smith, Gambrell and

6  Russell, LLP ("SGR") with 40 years of experience in trademark

7  litigation; (2) $450 for Bruce McDonald, a partner at SGR with 35

8  years of experience in intellectual property litigation; (3) $330

9  for Holly Lance, an associate at SGR with 5 years of experience

10 in intellectual property litigation; and (4) $720 for Michael

11 Turrill, a partner at Arent Fox, LLP with 20 years of experience

12 in commercial litigation, including intellectual property

13 disputes.  (Bikoff Decl. ¶¶ 3, 6-8, Exs. D-F (Docket No. 142-2);

14 Turrill Decl. ¶ 5 (Docket No. 142-5).)  Defendant does not

15 dispute the reasonableness of the rates that Bikoff,

16 McDonald, or Lance seek and thus the court will award fees at

17 those undisputed rates.  Defendant contends that Turrill's

18 rate of $720 is not reasonable for trademark litigation work

19 in Sacramento, and the court agrees.  Defendant suggests that

20 Turrill's rate should be no greater than $550 per hour.

21        Notably, none of the declarations submitted in this

22 case state that $720 is the prevailing rate in Sacramento for a

23 lawyer of Turrill's experience.  Moreover, none of the sources

24 plaintiff relies on in support of the requested rates

25 establish prevailing rates in Sacramento or support a rate

26 $720 for a partner with 20 years of legal experience.  For

27 example, the American Intellectual Property Law Association's

28 2015 Report of the Economic Survey ("AIPLA survey") provides only

1  national average billing rates for intellectual property

2  attorneys and indicates that the average rate for law firm

3  partners with 20 years of experience like Turrill is $475 per

4  hour.  (Bikoff Decl. ¶ 5, Ex. C); see also Schwarz v. Sec'y of

5  Health & Human Servs., 73 F.3d 895, 908 (9th Cir. 1995) (holding

6  that "a couple of published surveys of ranges of fees charged by

7  various law firms based in Seattle, Washington, and other cities

8  across America . . . told the district court nothing about the

9  prevailing rate in [the relevant communities of] Portland or

10 Phoenix for similarly qualified lawyers working on a similar type

11 of case").

12        Plaintiff also relies on the Laffey Matrix, which is

13 "an inflation-adjusted grid of hourly rates for lawyers of

14 varying levels of experience in Washington, D.C." Prison Legal

15 News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010)

16 (citations omitted).  "The Laffey matrix has been regularly

17 prepared and updated by the Civil Division of the United States

18 Attorney's Office for the District of Columbia and used in fee

19 shifting cases, among others." Craigslist, Inc. v. Naturemarket,

20 Inc., 694 F. Supp. 2d 1039, 1067 (N.D. Cal. 2010).  Although

21 courts have relied on the Laffey Matrix and attempted to adjust

22 its rates to account for legal communities outside of Washington,

23 D.C., this court has criticized the use of the Laffey Matrix

24 without a reliable method to adjust the rates to account for the

25 difference between the prevailing market rates in Washington,

26 D.C. and Sacramento.  See Johnson v. Wayside Prop., Inc., Civ.

27 No. 2:13-1610 WBS, 2014 WL 6634324, at *7 (E.D. Cal. Nov. 21,

28 2014).  Nonetheless, even the Laffey Matrix provides that

1 attorneys with 20 years of experience like Turrill bill $504 per

2 hour in Washington, D.C.

3          Turrill also submits a 2014 National Law Journal survey

4 of billing rates charged by partners in the nation's 350

5 largest firms (the "NLJ survey").  (Turrill Decl. ¶ 6, Ex. 1.)

6 Turrill, who is a partner at Arent Fox, states that his firm "is

7 ranked number 117 in the AmLaw 200 and has offices in Washington,

8 D.C., New York City, San Francisco, and Los Angeles."  (Id. ¶ 4.)

9 Turrill contends that a rate of $720 per hour is reasonable

10 because it "is consistent with the market rate for partners with

11 [20 years] of experience" in "law firms of similar size and

12 reputation and which are either based in Los Angeles or have Los

13 Angeles offices."  (Id. ¶¶ 5-6.)  Turrill also contends that a

14 rate of $720 per hour is in line with the "prevailing rates in

15 Southern California."  (Id. ¶ 7.)  He submits a Los Angeles

16 County Superior Court ruling on a fee motion brought under

17 California Government Code section 12965(b) where the Superior

18 Court found that "each attorney's hourly rate ($700 and $400) is

19 a reasonable rate for comparable legal services in the L.A. metro

20 area for noncontingent employment litigation."  (Id. ¶ 7, Ex. 2);

21 Hancock v. Time Warner Cable Servs., LLC, 2015 WL 5923311 (Cal.

22 Super. Ct. Sept. 1, 2015).  This evidence is unhelpful because

23 the relevant community here is Sacramento, and not Los Angeles or

24 Southern California.  See Barjon, 132 F.3d at 499-500 (holding

25 that the district court correctly "appl[ied] the rates of the

26 local forum--the Sacramento area--rather than the rates of

27 Wallace's place of business--the San Francisco area" because

28 "Sacramento, not San Francisco, was the relevant market").

1        The fee award in <u>Hancock</u> also involved a state law

2   employment discrimination action litigated in Los Angeles and the

3   fee request there was analyzed under California law.  (<u>See</u>

4   Turrill Decl. Ex. 2.)  By contrast, this action involves federal

5   claims under the Lanham Act, was litigated in Sacramento, and

6   federal law governs the present fee motion pursuant to § 1117(a).

7   <u>See</u> <u>Jadwin v. County of Kern</u>, 767 F. Supp. 2d 1069, 1135 n.76

8   (E.D. Cal. 2011) (Wanger, J.) (observing that the lodestar

9   analysis under federal law is different from that under state

10  law); <u>see also</u> <u>99 Only Stores v. 99 Cent Family Sav.</u>, Civ. No.

11  1:10-1319 LJO MJS, 2011 WL 2620983, at *3 (E.D. Cal. June 29,

12  2011) ("[C]osts of practicing law, and hence legal fees, can be

13  significantly higher in Southern California where Plaintiff's

14  firm is located than in the Central Valley of California.").  As

15  a result, neither the NLJ survey nor the Superior Court's fee

16  award establishes that Turrill's $720 hourly rate is a reasonable

17  rate in Sacramento for comparable trademark litigation services

18  performed by attorneys with Turrill's skill and experience.

19       In sum, the court is not persuaded that the reasonable

20  rate in Sacramento for an attorney of Turrill's skill and

21  experience is $720.  The court will therefore award Turrill $550

22  per hour because defendant does not object to that rate for him.

23              2.   <u>Reasonable Number of Hours</u>

24       "A district court, using the lodestar method to

25  determine the amount of attorney's fees to award, must determine

26  a reasonable number of hours for which the prevailing party

27  should be compensated."  <u>Gonzalez v. City of Maywood</u>, 729 F.3d

28  1196, 1202 (9th Cir. 2013).  "Ultimately, a 'reasonable' number

of hours equals the number of hours which could reasonably have been billed to a private client." Id. (alterations and quotation marks omitted).  "[T]o determine whether attorneys for the prevailing party could have reasonably billed the hours they claim to their private clients, the district court should begin with the billing records the prevailing party has submitted." Id.

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992) (citing Hensley, 461 U.S. at 433, 437).  A fee applicant must "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434; see Sealy, 743 F.2d at 1384-85 (applying this standard to fee requests under the Lanham Act).  "By and large, the district court should defer to the winning lawyer's professional judgment as to how much time he or she was required to spend on the case." Ryan, 786 F.3d at 763 (alterations and citation omitted).

"The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." Gates, 987 F.2d at 1397-98 (citing Blum, 465 U.S. at 892 n.5).  "The district court may reduce the amount of requested fees to reflect a party's limited degree of success, to account for block billing, or to deduct those hours the court deems excessive." Ryan, 786 F.3d at 763 (citations omitted).

1    Although "[t]here is no precise formula or methodology that the

2    district court is obligated to follow" when reducing fees, id. at

3    765, "a more specific articulation of the court's reasoning is

4    expected" the greater the "disparity between the requested fees

5    and the district court's award," id. at 764.

6         Counsel submitted billing statements indicating the

7    following hours spent on the matters for which plaintiff is

8    entitled to attorney's fees here: Bikoff (79.9 hours); McDonald

9    (188.7 hours); Lance (68.2 hours); and Turrill (37.4 hours).

10   (See Bikoff Decl. ¶ 3, Ex. B; Turrill Decl. ¶ 8, Ex. 3.)  SGR

11   also proposes a 15% reduction to the total fees billed by Bikoff,

12   McDonald, and Lance.  (Bikoff Decl. ¶¶ 3-4.)

13                    a.    Fees for Unrelated Matters

14        The court held in its April 20, 2016 Order that

15   plaintiff was entitled to attorney's fees associated with its

16   Injunction Motion, its Contempt Motion, and Komski's two

17   declarations.  (Apr. 20, 2016 Order at 38-39.)  Any attorney time

18   that counsel billed for matters unrelated to those four items

19   must be excluded.  Plaintiff requests fees for the time that

20   counsel worked on plaintiff's motion for clarification, which it

21   filed on March 11, 2016.  (Mot. for Clarification (Docket No.

22   122); see Opp'n at 7-8 (Docket No. 146).)  The court's April 20,

23   2016 Order did not hold that plaintiff was entitled to attorney's

24   fees associated with its motion for clarification.  (See Apr. 20,

25   2016 Order at 31-39.)  The court will thus reduce the following

26   hours billed by counsel for working on plaintiff's motion for

27   clarification: Bikoff (1 hour on March 18, 2016); Lance (0.2

28   hours on March 8, 2016); and Turrill (4 hours on March 17-18,

                                11

1  2016).  (Bikoff Decl. Ex. B at 30; Turrill Decl. Ex. 3 at 32).

2        Plaintiff is also not entitled to fees for the 1 hour

3  billed by Bikoff for attending a lunch conference on April 6,

4  2016 with a University of California representative to discuss

5  the University's rental payments under a 2002 lease agreement

6  with defendant.  (Bikoff Decl. Ex. B at 35; Opp'n at 9-10.)

7  Because that issue is unrelated to the four matters for which

8  plaintiff was granted fees, the court will reduce Bikoff's billed

9  time by 1 hour.

10            b.   Block Billing

11        Defendant contends that "substantially all time entries

12 for each counsel [a]re block-billed."  (Opp'n at 10.)  "Block

13 billing is the time-keeping method by which each lawyer . . .

14 enters the total daily time spent working on a case, rather than

15 itemizing the time expended on specific tasks."  Welch, 480 F.3d

16 at 945 n.2 (citations omitted).  As a result, "the amount of time

17 spent by an attorney on each discrete task is not identified, but

18 instead all hours spent during the course of a day on multiple

19 tasks are billed together."  Yeager v. Bowlin, Civ. No. 2:08-102

20 WBS JFM, 2010 WL 1689225, at *1 (E.D. Cal. Apr. 26, 2010).

21 Counsel's billing statements indeed contain significant block

22 billing; over 80% of counsel's billing entries are in block

23 format.  Defendant argues that the extent of counsel's block-

24 billing makes it "hopelessly impossible to tell the amount of

25 time spent on each task" and thus requests a 40% reduction in

26 plaintiff's fee award.  (Opp'n at 10.)

27        District courts may not account for block billing by

28 applying an across-the-board reduction to all hours claimed in a

12

fee petition; rather, courts may apply a percentage reduction only to those hours that are actually block-billed.  <u>Deocampo v. Potts</u>, Civ. No. 2:06-1283 WBS, 2014 WL 788429, at *4 (E.D. Cal. Feb. 25, 2014).  "Courts in the Ninth Circuit have reduced up to thirty percent of the hours that are block-billed."  <u>Id.</u>; <u>see, e.g.</u>, <u>Welch</u>, 480 F.3d at 948 (affirming district court's authority to reduce block-billed hours by 10% to 30%); <u>Willis v. City of Fresno</u>, Civ. No. 1:09-1766 BAM, 2014 WL 3563310, at *18-19 (E.D. Cal. July 17, 2014) (reducing impermissibly block-billed entries by 30%).

"The court also retains discretion not to reduce hours that are purportedly block billed if those time entries 'are detailed enough for the court to assess the reasonableness of the hours billed.'"  <u>Deocampo</u>, 2014 WL 788429, at *4 (alterations omitted) (quoting <u>Campbell v. Nat'l Passenger R.R. Corp.</u>, 718 F. Supp. 2d 1093, 1103 (N.D. Cal. 2010)); <u>see also</u> <u>Trulock v. Hotel Victorville</u>, 92 F. App'x 433, 434 (9th Cir. 2004) (stating that the "use of block billing" is only one factor in determining whether the number of hours claimed are reasonable).  "Although it is true that the fee applicant bears the burden of submitting 'evidence supporting the hours worked and rates claimed,' the Supreme Court has also stated that plaintiff's counsel 'is not required to record in great detail how each minute of his time was expended.'"  <u>Fischer v. SJB-P.D. Inc.</u>, 214 F.3d 1115, 1121 (9th Cir. 2000) (quoting <u>Hensley</u>, 461 U.S. at 433, 437 n.12).  "Instead, plaintiff's counsel can meet [the] burden" of adequately documenting the number of hours billed "by simply listing [the] hours and identifying the general subject matter of

13

1  [the] time expenditures."  Id. (quotations and alterations
2  omitted).

3       In Fischer, for example, the Ninth Circuit held that
4  counsel's block-billed time records were sufficient even though
5  they provided summaries of time spent on broad categories of
6  tasks such as pretrial motions and court appearances.  Id.
7  Similarly, in Secalt S.A. v. Wuxi Shenxi Construction Machinery,
8  668 F.3d 677 (9th Cir. 2012), the Ninth Circuit held in reviewing
9  a fee award under the Lanham Act that even when "billing entries
10 list numerous tasks performed over multi-hour spans, it [is] not
11 an abuse of discretion for the district court to award the
12 associated fees because counsel 'is not required to record in
13 great detail how each minute of his time was expended.'"  Id. at
14 690 (quoting Hensley, 461 U.S. at 437 n.12)).  A block-billed
15 entry is only "a problem where it obscures the nature of some of
16 the work claimed."  Willis, 2014 WL 3563310, at *18 (quotations
17 and alterations omitted).

18      Although a majority of the entries submitted here are
19 in block-billed format, the billing entries identify the
20 particular tasks performed with great detail and specificity.
21 For example, McDonald billed 6.5 hours on December 16, 2015 for
22 the following activities:

23     Examine documents received from Mr. Komski including
       correspondence dated 12/15/2015 from McFarland "Regards,
24     Boutin Jones Inc. by Robert D. Swanson," to Annie Waters,
       President, Little Lake Grange, Willits, CA; email circa
25     11/25/2015 from McFarland to Woodbridge Grange Members;
       investigation and research re cause of action by National
26     Grange for contempt of September 30 injunction; new and
       independent acts of trademark infringement, unfair
27     competition, false advertising, trade libel, interference
       in contractual relations, copyright infringement, with
28

14

availability of exemplary damages and award of costs and attorney's fees, supported by motion for TRO or preliminary injunction under Federal Rule 65; memorandum to Mr. Bikoff re above; draft memo to Messrs. Komski, Jensen, Riordan and Skinner in response to inquiries re availability of relief; continued work on Komski Declaration; memorandum to Mr. Komski re terminology and contents of declaration; memorandum to Ms. Lance with instructions re Huber Declaration; memorandum to Mr. Bikoff and Ms. Lance re problems with use of word "chartered" whereas there is only one California State Grange, recommending amendment of case caption to avoid confusing appearance that California State Grange is defendant; memorandum to Messrs. Bikoff, Komski, Skinner et al. with final declaration; examine comments from Mr. Skinner; examine Shaw Declaration and Komski Declarations filed last week in state court action; conference with Mr. Komski re same; examine and respond to Mr. Komski re exhibit used to document McFarland's statements at December 8 meeting; add content to declaration re rearrangement of Ranchito Grange and new evidence for independent causes of action; memoranda to Mr. Skinner re new additions to declaration; examine and incorporate further comments[.]

(Bikoff Decl. Ex. B at 11.)  The remaining time entries submitted here are similarly detailed and specific.

Counsel's billing statements here are thus sufficiently detailed for the court to assess the reasonableness of the hours billed.  Accord Willis, 2014 WL 3563310, at *18; Gucci America, Inc. v. Pieta, Civ. No. 04-9626 ABC MCX, 2006 WL 4725707, at *2 (C.D. Cal. July 17, 2006).  Accordingly, no reduction is warranted on the ground that the billing entries submitted here are block-billed.

c.   Komski's December 28, 2015 Declaration

Defendant next argues that the court should exclude any fees associated with Komski's December 28, 2015 declaration because plaintiff filed the declaration in support of its opposition to defendant's motion to stay the court's injunction

1   pending appeal.  (Opp'n at 5-6, 12-14.)  Defendant argues that

2   the declaration did not relate to the Contempt or Injunction

3   Motions and should thus be excluded from the fee award.

4   Defendant also argues that any time spent on Komski's December

5   declaration before defendant filed its motion to stay pending

6   appeal should be excluded because defendant's motion to stay is

7   what triggered the December declaration.  (Id. at 5.)

8        These arguments are unavailing.  Plaintiff submitted

9   Komski's December declaration "to describe the public confusion,

10  mistake and deception created by the actions of the Defendant

11  . . . subsequent to this Court's injunction issued on September

12  30, 2015." (Komski Decl. ¶ 2, Dec. 28, 2015.)  The declaration

13  described defendant's actions from the entry of the September

14  2015 injunction until December 28, 2015.  (Id.)  Thus, Komski's

15  December declaration was relevant to more than just defendant's

16  motion to stay pending appeal.  Plaintiff's Contempt Motion, for

17  example, relied on "the Declaration of Ed Komski dated December

18  28, 2015." (Komski Decl. ¶ 2, Feb. 1, 2016.)  Plaintiff's

19  Injunction Motion was "based on exhibits and evidence that

20  plaintiff had submitted with its contempt motion," including

21  Komski's December declaration.  (Apr. 20, 2016 Order at 33.)

22       The court also relied on Komski's December declaration

23  in its April 20, 2016 Order in finding that the California Grange

24  Foundation was bound by the September 2015 injunction because it

25  was defendant's agent or affiliate, (id. at 20); that defendant

26  had some control over the contents of its online business

27  directory listings, (id. at 28); and that defendant willfully

28  deceived the public after the September 2015 injunction was

16

1    issued, (id. at 34-36).  Accordingly, the court declines to

2    reduce plaintiff's attorney's fees associated with Komski's

3    December 28, 2015 declaration.

4                    d.    Time Spent on the Contempt Motion

5              Defendant argues that time spent on the Contempt Motion

6    should be excluded because counsel started work on the Contempt

7    Motion prematurely and did so while simultaneously communicating

8    with defendant about its compliance with the September 2015

9    injunction.  (Opp'n at 4-6.)  The court declines to reduce

10   plaintiff's fee award on that ground because "the Court will not

11   second guess attorney efforts to conduct the litigation strategy

12   for the case," including when to start work on a motion.  E-Pass

13   Techs., Inc. v. 3Com Corp., Civ. No. C-00-2255 DLJ, 2007 WL

14   4170514, at *8 (N.D. Cal. Nov. 14, 2007).

15             Defendant also argues that fees associated with the

16   Contempt Motion should be excluded because the motion was denied.

17   (Opp'n at 11-12.)  Defendant does not provide any authority to

18   support this argument.  Plaintiff's Contempt Motion here was

19   denied without prejudice to plaintiff bringing its subsequent

20   Injunction Motion.  (Apr. 20, 2016 Order at 4.)  In granting

21   plaintiff's Injunction Motion, the court held that plaintiff was

22   entitled to fees associated with its Contempt Motion because the

23   Injunction Motion was "based on exhibits and evidence that

24   plaintiff had submitted with its contempt motion" and the

25   Contempt Motion "sought much of the same relief the court"

26   granted in the Injunction Motion.  (Id. at 33:8-14.)  It was

27   apparent to the court that the time expended on the Contempt

28   Motion was utilized in the Injunction Motion.

1     Defendant further requests that the court exclude any

2   fees for the Contempt Motion incurred between the Contempt

3   Motion's filing on February 1, 2016 and plaintiff's receipt of

4   defendant's opposition to that motion on February 22, 2016,

5   because counsel had no need to continue working on the Contempt

6   Motion until plaintiff received defendant's opposition. (Opp'n

7   at 7, Attach. 3.) The billing records indicate, however, that

8   after plaintiff filed its Contempt Motion, plaintiff's counsel

9   continued to investigate, analyze, and document new information

10  regarding defendant's violations of the September 2015

11  injunction. (Bikoff Decl. Ex. B at 23-24.) In addition, because

12  plaintiff obtained the relief it sought in its Contempt Motion,

13  the court must "defer to the winning lawyer's professional

14  judgment as to how much time he or she was required to spend on

15  the case." Ryan, 786 F.3d at 763 (citation and alterations

16  omitted). Accordingly, the court declines to reduce the hours

17  requested by counsel on these grounds.

18                 e.   McDonald's Fees for Attending Hearings

19     Defendant argues that the court should exclude

20  McDonald's billed hours for attending the March 7, 2016 Contempt

21  Motion hearing and April 18, 2016 Injunction Motion hearing

22  because McDonald did not argue at those hearings. (Opp'n at 9.)

23  "[I]t is not uncommon to have co-counsel in litigation, and fees

24  are commonly awarded to multiple counsel." Stonebrae, L.P. v.

25  Toll Bros., Civ. No. C-08-0221 EMC, 2011 WL 1334444, at *12 (N.D.

26  Cal. Apr. 7, 2011), aff'd, 521 F. App'x 592 (9th Cir. 2013). The

27  court has direction, however, to reduce a fee award "due to

28  unreasonable inefficiencies and duplicative efforts engendered by

1    multiple counsel and law firms."  Id.

2          McDonald billed 6.50 and 6 hours, respectively, on

3    March 7 and April 18, 2016 for the following activities:

4    conferring with Bikoff to prepare for the Contempt and Injunction

5    Motion hearings; attending those hearings; conferring with

6    plaintiff, co-counsel, and opposing counsel following the

7    hearings; and drafting follow-up memoranda, reports, and

8    recommendations relating to the motion hearings.  (Bikoff Decl.

9    Ex. B at 29, 38.)  It is not unreasonable "for two attorneys to

10   work together on such activities, especially when they are

11   working on different components of a brief or working together on

12   a motion."  Garcia, 2012 WL 3778852, at *7; see Chabner v. United

13   of Omaha Life Ins. Co., Civ. No. 95-0447 MHP, 1999 WL 33227443,

14   at *4 (N.D. Cal. Oct. 12, 1999) (finding it "reasonable that the

15   lead attorneys chose to be present during two pivotal points" in

16   the litigation).  The general rule against overstaffing cases

17   "does not prevent two attorneys from working together on certain

18   tasks that are divisible, or conferencing together to determine

19   strategy."  De-Occupy Honolulu v. City & County of Honolulu, Civ.

20   No. 12-668 JMS KSC, 2015 WL 1013834, at *12 (D. Haw. Mar. 9,

21   2015).  "Common sense dictates that . . . a number of people

22   might contribute to one end product."  Chabner, 1999 WL 33227443,

23   at *4.

24         Given plaintiff's ultimate success in obtaining much of

25   the relief that it sought in its Contempt and Injunction Motions,

26   McDonald's billed time for attending the motion hearings is

27   reasonable.  See Ryan, 786 F.3d at 763 ("[T]he district court

28   should defer to the winning lawyer's professional judgment as to

1   how much time he or she was required to spend on the case."

2   (alterations and citation omitted)).  Accordingly, the court

3   finds that the hours billed by McDonald for attending the

4   hearings on plaintiff's Contempt Motion and Injunction Motions

5   are reasonable.

6                       f.    Travel Time

7           Defendant also seeks to exclude McDonald's travel time

8   to the motion hearings.  (Opp'n at 8-9.)  McDonald billed 4.5

9   hours on April 17, 2016 for time spent reviewing case files,

10  conducting research, and conferring with co-counsel in

11  preparation for the hearing on plaintiff's Injunction Motion and

12  "travel to California with Mr. Bikoff" to attend that hearing.

13  (Bikoff Decl. Ex. B at 37-38.)  This is the only billing entry

14  that mentions travel time in counsel's billing statements.

15  Plaintiff states that the inclusion of the "travel to California"

16  language in McDonald's billing entry was a clerical error and no

17  travel time was actually billed to plaintiff.  (Reply at 8-9.)

18          The court finds plaintiff's explanation credible.  Had

19  McDonald actually billed plaintiff for his travel time, he would

20  have billed at least 6 hours for traveling from Washington, D.C.

21  to Sacramento.  As for the 4.5 hours that McDonald billed on

22  April 17, 2016, the court finds that 4.5 hours is a reasonable

23  amount of time for conferring with co-counsel, conducting legal

24  research, and reviewing case files in preparation for the

25  Injunction Motion hearing on April 18, 2016.  Accordingly,

26  because counsel did not bill any travel time to plaintiff, the

27  court declines to reduce plaintiff's fee award on this ground.

28                  g.    Fees Incurred after April 18, 2016

1          Defendant argues that any fees incurred after the

2    Injunction Motion hearing on April 18, 2016 should be excluded

3    because "the briefing and hearing were concluded." (Opp'n at 8.)

4    The court's April 20, 2016 Order, however, granted plaintiff

5    "attorney's fees <u>associated with</u> its motion for an injunction

6    [and] its motion for an order to show cause why defendant should

7    not be held in contempt." (Apr. 20, 2016 Order at 38 (emphasis

8    added).) Plaintiff is thus entitled to any fees incurred in

9    preparing the Injunction and Contempt Motions, attending the

10   hearings on those motions, conferring with plaintiff and co-

11   counsel after the hearings, and reviewing the court's subsequent

12   Orders on those motions.

13          Bikoff and McDonald billed 7 and 3 hours, respectively,

14   on April 19 and 20, 2016 on time spent conferring with co-counsel

15   and communicating with plaintiff regarding the Injunction Motion

16   hearing and the court's subsequent April 20 Order on that motion.

17   (Bikoff Decl. Ex. B at 38.) These tasks are clearly "associated

18   with" plaintiff's Injunction Motion and are thus recoverable.

19   The court thus declines to exclude the attorney's fees that

20   plaintiff incurred after the April 18, 2016 hearing.

21          3.  <u>Lodestar Calculation</u>

22          Accordingly, the final lodestar figure for purposes of

23   this fee motion is $144,715.70, calculated as follows:

24    Bikoff:   $530 x   77.9 =  41,287.00  -15% =  $ 35,093.95

25    McDonald: $450 x  188.7 =  84,915.00  -15% =  $ 72,177.75

26    Lance:    $330 x  68   =  22,440.00  -15% =  $ 19,074.00

27    Turrill: $550 x  33.4 =  15,030.00          $ <u>18,370.00</u>

28                            TOTAL =  $144,715.70

1          C.    Adjustments to the Lodestar

2               A "strong presumption" exists that the lodestar figure

3     represents a "reasonable fee" and should therefore be enhanced or

4     reduced only in "rare and exceptional cases."  Pennsylvania v.

5     Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565

6     (1986) (quotations omitted); see also Gates, 987 F.2d at 1402

7     (stating "a district court may make upward or downward

8     adjustments to the presumptively reasonable lodestar" in "rare

9     cases"); Cunningham v. County of Los Angeles, 879 F.2d 481, 488

10    (9th Cir. 1988) ("[D]istrict courts [must] treat the lodestar

11    figure as presumptively reasonable and adjust it only in rare or

12    exceptional cases.").  The court does not find that any

13    exceptional circumstances warrant an enhancement to the lodestar

14    here.

15              Defendant argues that a reduction to the fee award is

16    warranted here because defendant did not willfully violate the

17    court's September 2015 injunction and because this is not an

18    exceptional case under § 1117(a) of the Lanham Act.  (See Opp'n

19    at 1-2, 12-14.)  The court has already found that plaintiff is

20    entitled to attorney's fees under § 1117(a).  (See Apr. 20, 2016

21    Order at 36 ("[D]efendant has willfully and deliberately

22    continued to deceive the public by infringing plaintiff's

23    trademark and engaging in unfair competition against

24    plaintiff.").)  Defendant's arguments challenge the merits of the

25    court's April 20, 2016 Order, and not the reasonableness of the

26    fee amount.  The court thus declines to reduce plaintiff's fee

27    award on these grounds.

28              IT IS THEREFORE ORDERED that plaintiff's motion for

1  attorney's fees, (Docket No. 142), be, and the same hereby is,

2  GRANTED; and (2) defendant is directed to pay plaintiff

3  $144,715.70 in attorney's fees and file an affidavit with the

4  court confirming payment within fourteen (14) business days from

5  the date this Order is signed.

6          IT IS SO ORDERED.

7  Dated:   September 9, 2016

8  _____

   WILLIAM B. SHUBB

9  UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28