UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| NATIONAL GRANGE OF THE ORDER OF PATRONS OF HUSBANDRY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA GUILD, formerly doing business as "California State Grange,"<br><br>　　　　Defendant. | CIV. NO. 2:14-676 WBS DB<br><br>MEMORANDUM AND ORDER RE: MOTION TO ADD JUDGMENT DEBTOR |

----oo0oo----

On September 12, 2016, the court ordered defendant California Guild ("Guild") to pay plaintiff National Grange of the Order of Patrons of Husbandry $144,715.70 in attorneys' fees ("fees order"). (Sept. 12, 2016 Order (Docket No. 154).) Plaintiff now moves to amend the court's fees order to add Robert McFarland, president of defendant, as a judgment debtor to the order. (Pl.'s Mot. (Docket No. 176).)
///

1

I.   Factual and Procedural Background

Plaintiff brought this action against defendant, a nonprofit corporation, for trademark infringement, false designation of origin, and unfair competition under the Lanham Act. (Compl. (Docket No. 1).) The court granted summary judgment to plaintiff on July 14, 2015, (July 14, 2015 Order (Docket No. 60)), and enjoined defendant "from using marks containing the word 'Grange'" on September 29, 2015 ("September 2015 order"), (Sept. 29, 2015 Order (Docket No. 85)).

On April 20, 2016, the court found defendant in "deliberate and willful" violation of the September 2015 order ("April 2016 order"). (Apr. 20, 2016 Order (Docket No. 138).) Pursuant to 15 U.S.C. § 1117(a), the court awarded plaintiff attorneys' fees incurred from various motions and affidavits it had filed for the purpose of enforcing the September 2015 order.[1] (See id. at 38-39.)

On September 12, 2016, the court determined the amount of fees awarded under the April 2016 order to be $144,715.70. (Sept. 12, 2016 Order at 23.) The court ordered defendant to pay plaintiff the fees awarded and "file an affidavit with the court confirming payment within fourteen (14) business days." (Id.)

On September 19, 2016, McFarland filed a declaration

---

[1] The motions and affidavits are: (1) plaintiff's motion for further injunctive relief (Docket No. 126); (2) plaintiff's motion to show cause as to why defendant should not be held in contempt of court (Docket No. 109); and (3) two declarations of Ed Komski, one supporting plaintiff's contempt motion (Docket No. 109-1), and the other supporting plaintiff's opposition to a request for stay of the September 2015 order that defendant had filed (Docket No. 99-2). (Apr. 20, 2016 Order at 38-39.)

1 | stating that defendant "is unable to comply with the [court's]
2 | Fee[s] Order" because "[m]ost of the funds held by [defendant]
3 | are subject to a preliminary injunction issued in [a] State Court
4 | Action" the parties are involved in.  (Sept. 29, 2016 Decl. of
5 | Robert McFarland ¶¶ 2, 4 (Docket No. 155).)  "As a showing of
6 | good faith," McFarland provided, with his declaration, bank
7 | account records indicating that defendant had access to only
8 | $1,535.71 in bank account funds at the time of his declaration.
9 | (Id. ¶ 11e.)

10 | On December 19, 2016, plaintiff deposed McFarland in
11 | connection with defendant's alleged inability to comply with the
12 | court's fees order.  (See Pl.'s Mot. Ex. 1, Dep. of Robert
13 | McFarland ("McFarland Dep.") (Docket No. 176-2).)  At the
14 | deposition, McFarland testified that defendant's executive
15 | committee voted to pay him $80,000 in July 2016.  (Id. at 82.)
16 | The payment, according to defendant's executive committee
17 | minutes, was a "severance package" paid to McFarland "in the
18 | event the California Guild legal process does not find in
19 | [defendant's] favor and [defendant's] structure fails."  (Pl.'s
20 | Mot. Ex. 4, Cal. Guild Executive Committee Minutes (Docket No.
21 | 176-2).)  As of February 21, 2017, there has been no severance
22 | between McFarland and defendant.  (See Feb. 21, 2017 Decl. of
23 | Robert McFarland ¶ 1.)

24 | Plaintiff also discovered at the deposition that
25 | McFarland has a corporate credit card which defendant covers the
26 | charges for.  (See McFarland Dep. at 50.)  According to
27 | plaintiff, McFarland uses the card to pay for "meals, lodging,
28 | entertainment and miscellaneous personal expenses," and does not

1  submit "expense reports" to defendant for such charges.  (Pl.'s
2  Mot., Mem. ("Pl.'s Mem.") at 18 (Docket No. 176-1).)

3  Based on its discoveries, plaintiff now moves to amend the court's fees order to add McFarland as a judgment debtor to the order on the theory that McFarland is defendant's alter ego for liability purposes in this action.  (Id. at 19.)  Plaintiff's Motion is brought pursuant to Federal Rule of Civil Procedure 69(a) and California Code of Civil Procedure section 187 ("section 187").[2]  (Id. at 19-20.)

## II.  Discussion

Under Rule 69(a), "federal district courts in California may apply California Code of Civil Procedure section 187 'to amend a judgment to add additional judgment debtors.'" Directi Internet Sols. Pvt. Ltd. v. Dhillon, No. CIV. 2:12-1045 WBS, 2014 WL 3057514, at *1 (E.D. Cal. July 7, 2014) (quoting In re Levander, 180 F.3d 1114, 1121 (9th Cir. 1999)).  "Section 187 is premised on the notion that [an] amendment [adding a judgment debtor] 'is merely inserting the correct name of the real defendant,' such that adding a party to a judgment after the fact does not present due process concerns."  Katzir's Floor & Home

---

[2] Defendant has appealed the court's fees order to the Ninth Circuit, where the appeal is currently pending.  (See Docket No. 160.)  While the court does not have jurisdiction to "adjudicate anew the merits" of its fees order while the order is on appeal, it "retains jurisdiction . . . to preserve [the order's] status quo."  Mayweathers v. Newland, 258 F.3d 930, 935 (9th Cir. 2001).  Because a motion to add a judgment debtor based on the alter ego theory merely seeks to "insert[] the correct name of the real defendant" to a judgment, Katzir's Floor & Home Design, Inc. v. M-MLS.com, 394 F.3d 1143, 1148 (9th Cir. 2004), plaintiff's Motion would not alter the merits of the court's fees order.  Accordingly, the court has jurisdiction over plaintiff's Motion.

4

Design, Inc. v. M-MLS.com, 394 F.3d 1143, 1148 (9th Cir. 2004).

"A [section] 187 amendment requires '(1) that the new party be the alter ego of the old party and (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns.'" Id. (quoting Levander, 180 F.3d at 1121).

The "alter ego" prong of section 187 requires a showing that: (1) "there is such unity of interest and ownership" between the individual and the corporation "that the separate personalities of the corporation and the individual no longer exist," and (2) "if the acts [in question] are treated as those of the corporation alone, an inequitable result will follow." Bank of Montreal v. SK Foods, LLC, 476 B.R. 588, 597 (N.D. Cal. 2012).  In deciding whether there is a "unity of interest and ownership" between an individual and a corporation, the court is instructed to consider "a long list of factors," such as: (1) whether the individual "commingl[ed his] funds and . . . assets" with those of the corporation's, (2) whether the individual "treat[ed] the assets of the corporation as his own," (3) whether the corporation "fail[ed] to maintain minutes or adequate corporate records," (4) whether the individual "dominat[ed] and control[led]" the corporation, (5) whether the corporation is "undercapitalize[d]," (6) whether the parties "disregard[ed ]legal formalities and . . . fail[ed] to maintain [an] arm's length relationship[]," and (7) whether there is a "diversion of assets from [the] corporation" to the individual "to the detriment of creditors." Id. at 597-98.

Plaintiff focuses on three factors in particular:

"disregard of corporate formalities," "commingling of assets," and "inadequate capitalization." (Pl.'s Mem. at 25-26.)

Plaintiff argues that defendant's payment of $80,000 to McFarland was authorized without any true regard for corporate formalities because the vote of the executive committee to pay him that money was "orchestrat[ed]." (Id. at 26.) Plaintiff has not offered any evidence indicating that defendant's executive committee and its oversight over defendant's affairs are a sham. Plaintiff also argues that McFarland's disregard for corporate formalities is evidenced by his ability to use defendant's credit card for personal expenses without submitting expense reports. (Id.) Defendant has submitted affidavits, however, testifying that the executive committee reviews McFarland's expenses "every quarter," including his "use of the Guild credit card," and has "never known [McFarland] to use the Guild's [funds] for . . . personal [purposes]." (Decl. of Kathleen Bergeron ("Bergeron Decl.") ¶¶ 4-5 (Docket No. 179-1); Decl. of Cheri Bunker ("Bunker Decl.") ¶¶ 6-8 (Docket No. 179-2).)

Plaintiff next argues that McFarland's commingling of his assets with those of defendant's is evidenced by defendant's payment of $80,000 to McFarland. (Pl.'s Mem. at 25-26.) As with its argument about corporate formalities, plaintiff's argument about commingling of assets depends on the unsupported assumption that defendant's executive committee exercises no real power in limiting McFarland's access to Guild funds.

Plaintiff lastly argues that defendant is inadequately capitalized to comply with the court's fees order because McFarland has divested defendant of its funds. (See id. at 25.)

6

That defendant is inadequately capitalized, however, does not mean that McFarland is singularly responsible for its lack of capital. Again, plaintiff's argument here depends on the unsupported assumption that McFarland exercises unilateral control over defendant's funds.

Even assuming that defendant and McFarland are engaging in fraud by depleting defendant's assets to avoid complying with the court's fees order, the evidence does not support a finding that McFarland is singularly responsible for such fraud such that the court may impose alter ego liability upon him.[3]

Because plaintiff has not offered evidence sufficient to show that McFarland disregarded defendant's corporate formalities, commingled his assets with those of defendant's, or unilaterally divested defendant of its funds, plaintiff has failed to satisfy the "alter ego" prong of section 187.

Even if the court were to assume that McFarland is the alter ego of defendant, plaintiff has also not shown that McFarland "controlled the litigation" in this matter such that adding him as a judgment debtor to the court's fees order would not present "due process concerns."

---

[3] A more appropriate remedy for defendant and McFarland's alleged actions would appear to be an action under the Uniform Fraudulent Transfer Act ("UFTA"), Cal. Civ. Code §§ 3439 et seq., which prohibits "transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim," Arch Ins. Co. v. Sierra Equip. Rental, Inc., No. 2:12-CV-00617 KJM, 2015 WL 1814316, at *4 (E.D. Cal. Apr. 21, 2015). Under the UFTA, a "broad" set of remedies is available, including "[a]voidance of the [fraudulent] transfer or obligation to the extent necessary to satisfy the creditor's claim," Cal. Civ. Code § 3439.07(a)(1), and imposition of tort liability on individuals who conspire to violate the UFTA, see Arch Ins. Co., 2015 WL 1814316, at *5.

To satisfy the "due process" requirement of section 187, plaintiff must show that McFarland "had control of the litigation" in this matter and "occasion to conduct [such litigation] with a diligence corresponding to the risk of personal liability that was involved." Katzir's Floor & Home Design, 394 F.3d at 1150; see also Bank of Montreal, 476 B.R. at 597 (placing burden of proof with respect to section 187 motion on "judgment-creditor"). "Control of the litigation sufficient to overcome due process objections . . . usually includ[es] the financing of the litigation, the hiring of attorneys, and control over the course of the litigation." Bank of Montreal, 476 B.R. at 601 (quoting NEC Elecs. Inc. v. Hurt, 208 Cal. App. 3d 772, 778-79 (6th Dist. 1989)).

The evidence before the court does not indicate that McFarland "had control of the litigation" in this matter. According to affidavits submitted by defendant, "all major litigation decisions" involving the Guild are subject to "a vote of the Guild's Executive Committee," which retains "overs[ight over] all the litigation between the Guild, National Grange and, California State Grange." (Bunker Decl. ¶¶ 3, 6; Decl. of David Edwards ("Edwards Decl.") ¶ 8 (Docket No. 179-7); see also Bergeron Decl. ¶ 3 (corroborating Bunker and Edwards declarations).) One affidavit indicates that defendant, not McFarland, pays defendant's attorneys' fees. (See Edwards Decl. ¶ 7 (noting that "the expenses [of] continuing litigation between the Guild [and] National Grange" are creating "financial restrictions [on] the Guild").) Another affidavit submitted by plaintiff ("Saxton affidavit") shows that decisions regarding how

1  much money to set aside for defendant's litigation expenses are
2  subject to executive committee vote.  (Pl.'s Reply Ex. A, Decl.
3  of Jan Saxton ("Saxton Decl.") ¶¶ 11-13 (recounting executive
4  committee discussion and vote on how much money to set aside for
5  "Grange" litigation) (Docket No. 182-1).)  These affidavits
6  indicate that McFarland did not "ha[ve] control of the
7  litigation" in this matter.

8        Plaintiff cites previous affidavits submitted by
9  McFarland reciting the boilerplate language that he is "President
10 and an authorized representative of Defendant" and has "personal
11 knowledge of . . . facts" he testifies to on defendant's behalf
12 as evidence that McFarland controlled the litigation in this
13 matter.  (See Pl.'s Mem. at 22 (citing Docket Nos. 78-1, 105-1,
14 114-1, 132-8, and 155).)  That McFarland is "President and an
15 authorized representative of Defendant" and has "personal
16 knowledge" of defendant's affairs does not mean that he controls
17 defendant's litigation decisions.  McFarland testifies that while
18 he is "the primary contact person" for defendant with respect to
19 this litigation, he "consulted the Executive Committee" prior to
20 "every major litigation decision" and the committee "vote[d] on
21 [such] issue(s)."  (Feb. 21, 2017 Decl. of Robert McFarland ¶
22 22.)  Thus, plaintiff's citation to McFarland's previous
23 affidavits does not show that McFarland controlled the litigation
24 in this matter.[4]

---

[4] Plaintiff cites In re Levander, 180 F.3d 1114 (9th Cir. 1999) and Jack Farenbaugh & Son v. Belmont Constr., Inc., 194 Cal. App. 3d 1023 (2d Dist. 1987) for the proposition that it need only show that McFarland "was an active participant in this litigation" to satisfy section 187's "control" requirement. (Pl.'s Reply at 7-8 (Docket No. 182).)  Neither case stands for

1           Plaintiff also cites affidavits submitted by its
2  members testifying that McFarland "is personally and uniquely
3  responsible for the bad faith and deliberate intentional actions
4  that resulted in" the court's fees order as evidence that
5  McFarland controlled the litigation that led to the order.  (See
6  Pl.'s Mem. at 22-23 (citing Docket Nos. 68-1, 75-1, 83-1, 99-2,
7  and 109-1).)  That McFarland may have been "personally and
8  uniquely responsible for the bad faith and deliberate intentional
9  actions that resulted in" the court's fees order also does not
10 mean that he controlled the litigation that led to the order.  It
11 would be consistent for the court to find that McFarland engaged
12 in bad faith actions on defendant's behalf, but that the
13 litigation resulting from such actions was controlled by
14 defendant's executive committee, as the evidence here indicates.
15 (See Bunker Decl. ¶¶ 3, 6; Edwards Decl. ¶ 8; Bergeron Decl. ¶ 3;
16 Saxton Decl. ¶¶ 11-13.)  Thus, plaintiff's claim that McFarland
17 "is personally and uniquely responsible for [defendant's] bad
18 faith and deliberate intentional actions" is also unavailing.
19          Lastly, plaintiff suggests that defendant's executive
20 committee is merely a front for McFarland's control of the

---

that proposition.  In Levander, the Ninth Circuit found that a partnership controlled the litigation of a corporation "because the same group of individuals comprised the Partnership and the Corporation."  Levander, 180 F.3d at 1123.  In Jack Farenbaugh, a California appellate court found that the president of a corporation controlled the litigation of the corporation because "he [gave] instructions to [the corporation's] attorney as to what he wanted done," apparently without any interference from other members of the corporation.  Jack Farenbaugh, 194 Cal. App. 3d at 82.  Thus, in both Levander and Jack Farenbaugh, the presiding court found more than mere participation in litigation, but participation as to indicate control of litigation.

1  litigation in this matter.  (See Pl.'s Mem. at 26.)  The
2  committee, according to plaintiff, "orchestrat[es ]corporate
3  formalities to paper over" McFarland's decisions, and in fact
4  exercises no real power over defendant's affairs.  (Id.)  As
5  stated in the "alter ego" analysis of this Order, plaintiff has
6  not offered any evidence to support the claim that the executive
7  committee is merely a front for McFarland.  Contrarily, the
8  Saxton affidavit corroborates defendant's claim that the
9  executive committee meets, actively discusses, and votes on Guild
10 matters, including litigation matters.  (See Saxton Decl. ¶¶ 11-
11 13 (recounting executive committee discussion and vote on how
12 much money to set aside for "Grange" litigation).)  Without any
13 evidence showing that defendant's executive committee is a mere
14 front for McFarland, the court cannot find that McFarland
15 controlled the litigation in this matter such that adding him as
16 a judgment debtor to the court's fees order would comport with
17 due process.  See Bank of Montreal, 476 B.R. at 597.

18         Because plaintiff has failed to satisfy both the "alter
19 ego" and "control[ of] litigation" prongs of section 187, the
20 court must deny plaintiff's Motion.

21         IT IS THEREFORE ORDERED that plaintiff's Motion to
22 amend the court's September 12, 2016 order to add McFarland as a
23 judgment debtor to the order be, and the same hereby is, DENIED.

24 Dated:  March 2, 2017

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE