MARTIN N. JENSEN (SBN 232231)
THOMAS L. RIORDAN (SBN 104827)
**PORTER SCOTT**
350 University Ave., Suite 200
Sacramento, CA 95825
Telephone: 916.929.1481
Facsimile: 916.927.3706
Email: mjensen@porterscott.com
Email: triordan@porterscott.com

JAMES L. BIKOFF (*Pro Hac Vice*)
BRUCE A. McDONALD (*Pro Hac Vice*)
HOLLY B. LANCE (*Pro Hac Vice*)
**SMITH, GAMBRELL & RUSSELL LLP**
1055 Thomas Jefferson Street, N.W., Suite 400
Washington, D.C. 20007
Telephone: 202.263.4341
Facsimile: 202.263.4329
Email: jbikoff@sgrlaw.com
Email: bmcdonald@sgrlaw.com
Email: hlance@sgrlaw.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE NATIONAL GRANGE OF THE ORDER OF PATRONS OF HUSBANDRY,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA GUILD, formerly doing business as "California State Grange,"<br><br>Defendant. | Case No. 2:14-cv-00676-WBS-DB<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF RULE 60 MOTION TO RE-OPEN POST-JUDGMENT PROCEEDINGS FOR FRAUD ON THE COURT**<br><br>Date: April 16, 2018<br><br>Time: 1:30 p.m.<br><br>Courtroom: 5 |

**I. Introduction**

Documents obtained by Plaintiff in December 2017 through subpoena and discovery in related cases[1] reveal that attorney Ellis used a client trust account in the present case to conceal the source of funds used for the payment of attorney fees to Plaintiff in the amount of $239,174.60. These records reveal that Defendant surreptitiously paid $150,000.00 to Ellis Law Group with sums siphoned out of the California Grange Foundation, a California nonprofit corporation created in 1992 by Plaintiff's chartered California chapter, the California State Grange, now controlled by Defendant and going by the name the "Heartland Foundation," and that attorney Ellis laundered the funds through his firm's client trust account.[2] Attorney Ellis knew that these funds were claimed by the California State Grange because he was then representing Defendant in an action by the California State Grange to recover that property.[3] In fact, he aggressively sought to conceal the source of this payment by means of a frivolous motion to quash the subpoena pursuant to which they were ultimately obtained.[4]

The remaining sum, $93,707.78, was covertly removed by Defendant from a restricted account at Morgan Stanley, also owned by the California State Grange, in violation of an order of

---

[1] The subpoena was in *California State Grange v. California Grange Foundation*, Case No. 34-2016-00192665 (Sacramento Super. Ct.); the discovery was in *National Grange and California State Grange v. California Guild and Robert McFarland*, Case No. 2:16-cv-00201-WBS-DB (E.D. Cal.) ("*Grange II*").

[2] *See* check dated March 8, 2017, for $150,000.00, from Heartland Foundation to Ellis Law Group LLP, and check dated March 24, 2017, for $145,466.82, from Ellis Law Group LLP to National Grange, copies appended hereto as Exhibit 1.

[3] *See* letter dated August 17, 2017, from attorney Ellis to Banner Bank, appended hereto as Exhibit 2 ("I represent the Heartland Foundation, erroneously sued as California Grange Foundation;" instructing Banner Bank "not to execute [sic] this subpoena.") (emphasis in original). Mr. Ellis was subsequently disqualified from representing the defendant in that case.

[4] *See* Notice of Motion and Motion to Quash Deposition Subpoena for Production of [Personal] Business Records, filed Aug. 23, 2017 in *California State Grange v. California Grange Foundation,* Case No. 34-2016-00192665 (Sacramento Super. Ct.), copy appended hereto as Exhibit 3. Mr. Ellis and his firm were subsequently disqualified in that case for conflict of interest, *see* Order of Hon. Raymond Cadei dated September 5, 2017, copy appended hereto as Exhibit 4, just as they were disqualified in the state litigation, *see National Grange v. California State Grange*, Case No. 34-2012-00130439 (Sacramento Super. Ct), Order of Hon. David Brown dated July 21, 2017 (Exhibit 5), including two appellate court rulings in the same case (Exhibits 6 and 7); as well as *National Grange v. Bennett Valley Guild,* Case No. SCV-260954 (Sonoma Super. Ct.) (Exhibit 8).

the Sacramento County Superior Court in the parties' state court litigation.[5] Attorney Ellis again funneled these payments through his firm's client trust account in order to create the false appearance of compliance with the Court's orders, proffering three of them in open Court on June 9, 2017, in his capacity as an officer of the Court and for the purpose of concealing the unlawful source of the payments. This conduct was not only a fraud on Plaintiff, but a fraud on the Court.

**A. Background**

On April 20, 2016, this Court found that Defendant had willfully violated the September 2015 permanent injunction and ordered Defendant to pay Plaintiff's attorney fees incurred in enforcement of the injunction. Dkt. # 138, at p. 34. On September 12, 2016, the Court quantified that order and directed Defendant to pay $144,715.70. Dkt. # 154, at p. 23.

Defendant failed to pay the $144,715.70 at the appointed time and instead filed a declaration on September 29, 2016, signed by Robert McFarland, asserting that the Guild was unable to pay the award. Dkt. # 155, p. 1. Mr. McFarland acknowledged the October 2015 state court order preventing dissipation of the Morgan Stanley account:

> 3. The Guild is a nonprofit organization with limited funds and sources of income, *most of which are already subject to the preliminary injunction and/or Court orders* issued in Sacramento County Superior Court Case No. 34-2012-00130439 (the "State Court Action") . . .
>
> 4. *Most of the funds held by the Guild are subject to a preliminary injunction* issued in the State Court Action on November 3, 2015. The preliminary injunction enjoins the Guild from "selling, assigning, transferring, pledging, hypothecating, or encumbering Grange assets possessed or controlled as of April 5, 2013" including certain real property and "*assets in the Wells Fargo and Morgan Stanley/Smith Barney accounts possessed or controlled by Defendants beyond the normal business expenses of the organization*." It is unclear whether the payment of funds in satisfaction of a Court Order would be considered a "normal business expense of the organization" or whether such payment would be considered a violation of the preliminary injunction. * * *

*Id.* (emphasis added).

Plaintiff was subsequently required to enforce the September 2016 order by writ of execution, assignment of Defendant's membership payments toward satisfaction of the judgment,

[5] *See National Grange v. California State Grange*, Case No. 34-2012-00130439, Order dated Oct. 20, 2015 (Exhibit 9).

and other measures. However, shortly after the Court granted Plaintiff's application for an assignment order, Dkt. # 189 at 7-8, Plaintiff received a cashier's check dated March 24, 2017, in the amount of $145,466.82, from Ellis Law Group LLP. *See* Exhibit 1.

On March 17, 2017, Plaintiff submitted a memorandum of costs for attorney fees and other expenses incurred in enforcement of the original award. Dkt. # 193.[6] Defendant opposed the bill on the grounds it had "fully satisfied the existing judgment," Dkt. # 210, at p. 2, implicitly attesting to the legitimacy of the payment,[7] and submitted a copy of the check:

210-1 Filed 05/08/17 Page 9 of 33

BANNER BANK
WALLA WALLA, WA 99362
(800) 272-9933

716712

REMITTER: ELLIS LAW GROUP LLP

Date 3/24/17

PAY TO THE ORDER OF NATIONAL GRANGE

$ *****145,466.82

EXACTLY **145,466 AND 82/100 DOLLARS

CASHIER'S CHECK

THE PURCHASE OF AN INDEMNITY BOND WILL BE REQUIRED BEFORE ANY CASHIER'S CHECK OF THIS BANK WILL BE REPLACED OR REFUNDED IN THE EVENT IT IS LOST, MISPLACED, OR STOLEN.

AUTHORIZED SIGNATURE

*Id.* *Compare* check dated March 8, 2017, for $150,000, from Heartland Foundation (*i.e.*, the California Grange Foundation), to Ellis Law Group LLP:

HEARTLAND FOUNDATION
347 N MAIN ST
YREKA, CA 96097

1019

3-8-17 Date

Pay to the Order of ELLIS LAW GROUP LLP $ 150,000.00

ONE HUNDRED + FIFTY THOUSAND + NO/100 Dollars

Money Market

BANNER BANK

For RE: NOTE

Check: 1019 Amount: $150,000.00 Date: 3/10/2017
Run: 1566, Batch: 2, Seq: 44, Source: 582BC001

6 The bill was amended by Plaintiff on May 17, 2017 (Dkt. # 217); May 18, 2017 (Dkt. # 219); and June 8, 2017 (Dkt. # 221). The final amount, ultimately undisputed by Defendant, was $93,707.78.

7 "[T]he Guild unconditionally tendered full payment of all principal and interest then due[.]" *Id.* at p. 2. "On March 27, 2017, the Guild unconditionally tendered $145,466.82." Id. at 3 (citing Declaration of Mark Ellis). "This tender fully satisfied the . . . judgment[.]" *Id.* "Defendant Guild fully satisfied the 'relevant judgment[.]'" *Id.* at 5-6.

*See* Exhibit 1.

A copy of the illicit $145,466.82 check is accompanied by a declaration dated May 8, 2017, Dkt. # 210-1, in which attorney Ellis attests to the validity of the payment:

> 1. I am an attorney at law duly licensed to practice before this Court, and I am the Managing Partner in the law· firm of Ellis Law Group LLP, attorneys of records for Defendant California Guild. I have reviewed the declarations and records supporting National Grange's Memorandum of Costs (attorney's fees). *I possess personal knowledge of the information set forth herein below*, unless noted as based on information and belief, and if called upon to testify, I could and would competently testify thereto.

Dkt. # 210-1, p. 1-2 (emphasis added).

Attorney Ellis even urges his ethical qualifications upon the Court as grounds to hold that the Court's attorney fee award was satisfied by the $145,466.82 payment:

> 2. I am a 1982 graduate of the College of William & Mary. I graduated from California Western School of Law in 1985, cum laude. At graduation, *I was awarded the Diane Gafford Ethics Award by the faculty as the graduating law student who most exemplified outstanding ethical behavior during law school*. During law school, I acted as the Head Lead Article Editor of the Law Journal, and I was a published member of that law review. From August 1985 to August 1987, I served as one of the judicial law clerks for the Honorable Ray E. Munson, Chief Judge of the Washington State Court of Appeals, Division III.
>
> 4. I left MPBF and founded Ellis Law Group, LLP in October of 2006. I have acted as the managing partner of the firm since its inception. Every year from 2004 to 2017, 1 have been selected as a Northern California Super Lawyer®, one of the top 5 percent of lawyers practicing in Northern California. I have also been featured as one of the nation's top business litigators from 2012 to the present in the Super Lawyers Business Edition. I have been named for the last 7 years as one of the best attorneys in America in Best Lawyers in America® in the area of legal malpractice. My law firm, Ellis Law Group, LLP, has been named in U.S. News & World Report as a "Tier 1" small law firm for the last 6 years. *I am certified by the California State Bar as a specialist in the area of legal malpractice*.
>
> 5. I regularly handle financial institution, directors and officers, business, *professional liability* and commercial litigation, including complex litigation involving a class actions under Federal Rule of Civil Procedure 23 and under California's Unfair Competition Law. My practice also includes consumer litigation in the state and federal courts related to various consumer protection statutes, including the federal Fair Debt Collection Practices Act (FDCPA), the Fair Credit Reporting Act (FCRA), and the Telephone Consumer Protection Act (TCPA), as well as their state equivalents. I have practiced in these areas for 30 years. In this regard, I regularly represent collection agencies and collection attorneys.

*Id.*, Dkt. # 210-1, at pp. 2-3 (emphasis added).

On May 18, 2017, the Court acknowledged attorney Ellis's attestation:

> *Defendant requests that the court note in this Order that its payment of $145,466.82 to plaintiff on March 27, 2017 "fully satisfied the September 12, 2016 judgment*," (Def.'s Reply at 9 (Docket No. 210)), which plaintiff refuses to acknowledge, (*see* Acknowledgment of Partial Satisfaction of Judgment (Docket No. 196)).

Order dated May 18, 2017, Dkt. # 218, p. 2 n. 1 (emphasis added).[8] The Court accepted attorney Ellis's representations about the $145,466.82 check but rejected Defendant's objections to the taxation of additional costs and fees. *Id.* at pp. 9-10.[9]

On June 9, 2017, attorney Ellis appeared in open court with Mr. McFarland for a debtor examination that was scheduled that day by Plaintiff and presented the Court with the following three checks drawn on his firm's client trust account, payable to the National Grange, amounting to $93,707.78, in purported satisfaction of all remaining costs and fees claimed by Plaintiff in *Grange I*:

**Check Dated 06/8/2017 for $18,811.16**

10750

ELLIS LAW GROUP, LLP
GENERAL ACCOUNT
740 UNIVERSITY AVENUE, SUITE 100
SACRAMENTO, CA 95825

BANK OF SACRAMENTO
916-648-2100
90-4277/1211

6/8/17

PAY TO THE ORDER OF National Grange $ 18,811.16

Eighteen Thousand Eight Hundred and Eleven 16/100 DOLLARS

MEMO Satisfaction of Judgment 2:14-CV-00676-WBS

⑈010750⑈ ⑆121142779⑆ 010002791⑈

ELLIS LAW GROUP, LLP GENERAL ACCOUNT 10750

**Check Dated 06/9/2017 for $19,896.62**

10751

ELLIS LAW GROUP, LLP
GENERAL ACCOUNT
740 UNIVERSITY AVENUE, SUITE 100
SACRAMENTO, CA 95825

BANK OF SACRAMENTO
916-648-2100
90-4277/1211

6/9/17

PAY TO THE ORDER OF National Grange $ 19,896.62

Nineteen Thousand Eight Hundred Ninety Six and 62/100 DOLLARS

MEMO National Grange - Fed 1. Satisfaction of Judgment

⑈010751⑈ ⑆121142779⑆ 010002791⑈

---

[8] The Court declined Defendant's request for a statement by the Court that the attorney fee award was "fully satisfied." *Id.*

[9] The Court awarded only $50,283 but did not address the supplemental bills of cost submitted by Plaintiff contemporaneously and subsequent to the order. The final amount of supplemental costs and fees claimed was $93,707.78.

**Cashier's Check Dated 06/9/2017 for $55,000.00**


734016

BANNER BANK

WALLA WALLA, WA 99362
(800) 272-9933

Date 6/09/17

REMITTER: ELLIS LAW GROUP
NATIONAL GRANGE FED-1 FULL SATISFACTION

PAY TO THE ORDER OF THE NATIONAL GRANGE

$ ******55,000.00

EXACTLY **55,000 AND 00/100 DOLLARS

CASHIER'S CHECK

THE PURCHASE OF AN INDEMNITY BOND WILL BE REQUIRED BEFORE ANY CASHIER'S CHECK OF THIS BANK WILL BE REPLACED OR REFUNDED IN THE EVENT IT IS LOST, MISPLACED, OR STOLEN.

AUTHORIZED SIGNATURE

*See* photocopy appended as Exhibit 10.

Unaware that these sums had been stolen from accounts belonging to Plaintiff's chartered California chapter, the California State Grange, Plaintiff filed an Acknowledgement of Full Satisfaction of Judgment on June 27, 2017. Dkt. # 224. It was not until December 27, 2017 that Plaintiff learned from a Morgan Stanley statement produced by Defendant in discovery in *Grange II*, that the three checks written on attorney Ellis Law Group's client trust account were mirror images of payments surreptitiously paid to Ellis Law Group from a restricted account belonging to the California State Grange, all in violation of an order by Judge Brown in the State Action. *See National Grange v. California State Grange*, Case No. 34-2012-00130439, Order dated Oct. 20, 2015 (Exhibit 9).[10] A side-by-side comparison of the illicit payments from the restricted

---

[10] On October 20, 2015, Judge Brown issued a preliminary injunction to "preclude the defendant Unchartered State Grange from wasting Grange assets until the case is finally adjudicated." *See* Order of Hon. David Brown dated October 20, 2015, at p. 1 (copy appended to this memorandum as Exhibit 9). The order enjoined Defendant from "the transfer or encumbrance or alienation of [the Morgan Stanley] assets to third parties, except for normal expenses and bills." *Id.* The preliminary injunction was in effect at the time the payments were made.

Morgan Stanley account with the checks simultaneously written by Ellis Law Group and presented by attorney Ellis in open court on June 9, 2017, speaks for itself:

| Checks from Morgan Stanley Account to Ellis Law Firm[11] | Checks From Ellis Law Group to Plaintiff National Grange[12] |
|---|---|
| $55,000.00 | $55,000.00 |
| $18,811.00 | $18,811.00 |
| $19,896.67 | $19,896.62 |

## II. Argument

Rule 60 of the Federal Rules of Civil Procedure provides in relevant part:

> (b) *Grounds for Relief from a Final Judgment, Order, or Proceeding.* On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); [or]
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]
>
> * * *
>
> (d) *Other Powers to Grant Relief.* This rule does not limit a court's power to:
>
> * * *
>
> (3) set aside a judgment for fraud on the court.

Fed. R. Civ. P. 60.

### A. Under Rule 60(b)(2) and (3), the Court Has Jurisdiction to Re-Open the Post-Judgment Proceedings in this Case on Grounds of Newly Discovered Fraud.

A motion seeking relief from a final judgment under Rule 60(b) must be made "within a reasonable time," and any motion under one of the first three grounds for relief must be made "no more than a year after the entry of the judgment." Fed. R. Civ. P. 60(c)(1). This motion is brought two months after Plaintiffs learned about the fraud and within a year from the satisfaction

---

11 The single-page document disclosing these payments was discovered in documents produced in December 2017 by Defendants in *Grange II*. Attorney Ellis and his client are now attempting to prevent this document from seeing the light of day by means of a frivolous motion for sanctions in *Grange II*. *See* Defendants' Motion for Contempt and Sanctions, filed March 6, 2018, *Grange II*, Dkt. # 180.

12 *See* Exhibit 10.

of judgment filed on June 27, 2017. There is no issue about the timeliness, the relevance, or the gravity of the evidence set forth in this Motion.

**B. The Conduct of Attorney Ellis and His Client Constituted a Fraud on the Court Under Fed. R. Civ. P. 60(d)(3).**

Independent of any limitations in Rule 60(b), courts have discretion pursuant to their "inherent equity power to vacate judgments obtained by fraud." *United States v. Estate of Stonehill*, 660 F.3d 415, 443 (9th Cir. 2011) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). Rule 60(d)(3) preserves this inherent power and recognizes that Rule 60 does not limit a court's power to "set aside a judgment for fraud on the court."[13]

**1. Standard of Review**

"Fraud upon the court" . . . embrace[s] . . . that species of fraud which does, or attempts to defile the court itself, *or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication*." *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003) (internal citations omitted) (emphasis added). "A fraud on the court is an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 805 (9th Cir. 1982) (internal quotation marks and citation omitted). The relevant inquiry is not whether fraudulent conduct "prejudiced the opposing party," but whether it "harmed the integrity of the judicial process." *Estate of Stonehill*, 660 F.3d at 444 (citation and alterations omitted).

Of course, exceptions that "would allow final decisions to be reconsidered must be construed narrowly in order to preserve the finality of judgments." *Abatti v. Comm'r of the I.R.S.*, 859 F.2d 115, 119 (9th Cir. 1988); *see also Appling*, 340 F.3d at 780; *Dixon v.*

---

[13] Fed. R. Civ. P. 60(d)(3); *see also Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003) ("Federal Rule of Civil Procedure [60(d)(3)] preserves the district court's right to hear an independent action to set aside a judgment for fraud on the court."); *Estate of Stonehill*, 660 F.3d at 443 ("Rule [60(d)(3)], which governs relief from a judgment or order, provides no time limit on courts' power to set aside judgments based on a finding of fraud on the court.").

*C.I.R.*, 316 F.3d 1041, 1046 (9th Cir. 2003); and a court "must exercise the power to vacate judgments for fraud on the court with restraint and discretion, and only when the fraud is established by clear and convincing evidence." *Estate of Stonehill*, 660 F.3d at 443-44 (internal quotation marks and citations omitted). Relief for fraud on the court must be "reserved for those cases of 'injustice[ ] which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata." *United States v. Beggerly*, 524 U.S. 38, 46 (1998) (citation omitted).

It is also natural that a party should bear a "high burden in seeking to prove fraud on the court," *Pizzuto v. Ramirez*, 783 F.3d 1171, 1180 (9th Cir. 2015), and that a finding of fraud on the court involves "far more than an injury to a single litigant." *Estate of Stonehill*, 660 F.3d at 444 (citation omitted). "Fraud on the court requires a 'grave miscarriage of justice,' and a fraud that is aimed at the court." *Appling*, 340 F.3d at 780 (quoting *Beggerly*, 524 U.S. at 47). Perjury or non-disclosure by a party or witness, therefore, "does not, by itself, amount to fraud on the court." *Id.*

On the other hand, non-disclosure or perjury _by an officer of the court_ may amount to fraud on the court where, as in the present case, it was "so fundamental that it undermined the workings of the adversary process itself." *Estate of Stonehill*, 660 F.3d at 445 (emphasis). The Ninth Circuit has recognized that "fraud upon the court includes both attempts to subvert the integrity of the court *_and fraud by an officer of the court_*." *Pumphrey v. K.W. Thompson Tool Co*., 62 F.3d 1128, 1131 (9th Cir. 1995) (emphasis added) (holding that the participation of a party's general counsel who did not enter an appearance in the action was nonetheless "sufficient to render him an officer of the court").

> *_There is a powerful distinction between perjury to which an attorney is a party and that with which no attorney is involved_*....[W]hether perjury constitutes a fraud on the court should depend on whether an attorney or other officer of the court was a party to it."

11 Charles Alan Wright *et al*., *Federal Practice and Procedure* § 2870 (3d ed. 2014).

Although attorney Ellis was actively involved in the commission of the fraud on the Court alleged in this case and made numerous affirmative representations to the Court in connection therewith, even passive non-disclosure by an officer of the court may rise to the level of fraud on the court where it had more than a "limited effect on the district court's decision," and where the withheld information would have "significantly changed the information available to the district court." *Estate of Stonehill*, 660 F.3d at 446. In other words, mere non-disclosure by an officer of the court does not constitute fraud on the court *unless there was a duty to disclose*. *See England v. Doyle*, 281 F.2d 304, 310 (9th Cir. 1960) (emphasis added).

Attorneys have a duty to the courts before which they practice, and courts have the corresponding authority to discipline attorneys who practice before them. *In re Snyder*, 472 U.S. 634, 643 (1985) (courts have inherent authority to discipline lawyers which "derives from lawyer's role as an officer of the court which granted admission"); *Cord v. Smith*, 338 F.2d 516, 524 (9th Cir.1964) (ethical rules of a federal court apply to attorney appearing before a federal court even if state rules differ); *accord, Erickson v. Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996).

The power to punish contempt and to coerce compliance with issued orders is based on statutes and the Court's inherent authority. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994). Though this power must be exercised with restraint, the Court has wide latitude in fashioning appropriate sanctions to fit the conduct. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980). Thus, a federal court also has inherent power to impose sanctions against parties *and attorneys* for "bad faith" conduct in litigation, even if the conduct is sanctionable under other rules such as Federal Rule of Civil Procedure 11 or Section 1927. *Chambers*, 501 U.S. at 43. Sanctions against an attorney may be awarded in any case where the Court finds that the attorney "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Id.* at 45-46. Recklessness combined with other factors such as frivolousness, harassment, or an improper purpose, may constitute bad faith warranting sanctions under a court's inherent power. *B.M.K. v.*

*Maui Police Dep't*, 276 F.3d 1091, 1106 (9th Cir. 2002). "Sanctions under the Court's inherent power are particularly appropriate for fraud practiced upon the court. *Chambers*, 501 U.S. at 54 (emphasis added).

**2. The Conduct of Attorney Ellis Constituted Fraud on the Court.**

Even without direct participation, an attorney's knowledge or sponsorship of misdeeds by his clients, including a client's nondisclosure of material information when appearing before a court, may be grounds for alleging fraud on the court against the attorney. *H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1118–19 (6th Cir. 1976); *Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972). Attorney Ellis's conduct went far beyond mere non-disclosure, or even sponsorship of misdeeds by his client. Defendant's attorney orchestrated and directed a scheme to launder Defendant's illicit payment of Plaintiff's attorney fees, and to conceal the source of those payments, not only by funneling the payments through his law firm's client trust account but affirmatively vouching for them in open court.

These actions by attorney Ellis, committed in his capacity as an officer of the Court, were a classic fraud on the Court. *See Hazel-Atlas Glass Co. v Hartford Empire Co.*, 322 U.S. 238 (1944), *reh. den.* 322 U.S. 772.[14] They also meet the definition of "money laundering" under the United States Criminal Code, 18 U.S.C. § 1956(a)(1)(B)(i). *See United States v. Golb*, 69 F.3d 1417, 1421 (9th Cir. 1995) (describing money laundering as "financial transactions that are intended to conceal the source of illegal

---

[14] In *Hazel-Atlas Glass*, the Supreme Court held that fraud on the U.S. Court of Appeals was established where the defendant's attorneys, one of whom had played a part in having a spurious article prepared for publication, had directed the appellate court's attention to this article, and the court of appeals, quoting from the article to show that new and differentiating elements of a process patented by the defendant were recognized, had held that the defendant's patent was valid and infringed, and had reversed a district court judgment. The Supreme Court emphasized that the case did not merely involve a judgment obtained through the aid of a witness who, on the basis of after-discovered evidence, was believed possibly to have been guilty of perjury, but that the case involved a deliberately planned and carefully executed scheme to defraud the court. The Court also noted that the matter did not only concern private parties, but that there were "issues of great moment to the public" under the circumstances of the case, and that tampering with the administration of justice by the defendant's counsel, involved more than an injury to a single litigant, but involved a wrong against the institutions set up to protect and safeguard the public.

proceeds"); *United States v. Watlington,* 287 Fed. Appx. 257 (4th Cir. 2008), *cert. denied,* 129 S. Ct. 1018 (2009) (affirming conviction for money laundering where defendant attorney used client trust account "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity"); *United States v. Harmon,* Case No. 08-CR-00938-LHK, 2014 WL 4246582 (N.D. Cal. Aug. 27, 2014) (attorney convicted of five counts of money laundering for using client trust account to conceal illicit origin of funds attorney knew were derived unlawfully by client).[15]

### 3. The Fraud on the Court by Defendant's Attorney is Part of a Larger Course of Fraudulent Conduct Causing Severe and Irreparable Injury to the California Granges and the Public.

Although Plaintiff was the target of Defendant's fraud, the Court got in Defendant's way and was materially deceived by Defendant's attorney in the process. Attorney Ellis not only had the temerity to deceive both Plaintiff and the Court by laundering illicit funds covertly misappropriated from Plaintiff's chartered California chapter and funneled through a client trust account, he also submitted a declaration dated May 8, 2017, Dkt. # 210-1, p. 1-2, urging his ethical qualifications upon the Court to argue that the award was fully satisfied by the first unlawfully obtained check for $145,466.82. He even appeared in open court on June 9 to exhibit the other three laundered checks totaling $93,707.78.

---

[15] *See also Dixon v. C.I.R.*, 316 F.3d 1041, 1046 (9th Cir. 2003), *as amended* (Mar. 18, 2003) (reversing Tax Court's refusal to vacate judgment for fraud on the court, holding that fraud on the court occurs when the misconduct harms the integrity of the judicial process, regardless of whether the opposing party is prejudiced); *accord, United States v. Estate of Stonehill*, 660 F.3d 415, 444 (9th Cir. 2011) (in "determining whether fraud constitutes fraud on the court, the relevant inquiry is . . . whether it "harm[ed] the integrity of the judicial process"); *In re Intermagnetics America, Inc.*, 926 F.2d 912, 917 (9th Cir. 1991); *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989); *United States v. Sierra Pac. Indus.*, 100 F. Supp. 3d 948, 956 (E.D. Cal. 2015) ("a showing of prejudice to the party seeking relief is not required" to demonstrate fraud on the court). "[F]raud upon the court includes both attempts to subvert the integrity of the court *and fraud by an officer of the court*." *Intermagnetics*, 926 F.2d at 916 (emphasis added).

None of this, however, equals the harm that Defendant and its attorney are causing to the California Granges and the public. The conduct described above is part of a larger course of fraud by Defendant and its counsel that has resulted in "far more than an injury to a single litigant." *Estate of Stonehill*, 660 F.3d at 444 (citation omitted). This injury is described in the Declaration of the Redwood Valley Grange appended hereto as Exhibit 10, ¶ 11 (illustrating attorney Ellis's participation in Defendant's fraudulent scheme to seize ownership and control of the California Granges).

## III. Conclusion

Defendant surreptitiously raided two bank accounts belonging to the California State Grange to pay the attorney fee award in this case, one in violation of a court order and both subject to litigation between the parties. Knowing that Plaintiff would not accept payment of its attorney fees in funds stolen from Plaintiff's chartered California chapter, attorney Ellis and his client concealed the source of these payments by laundering them through Ellis Law Group's client trust account and affirmatively representing them to the Court as a satisfaction of the Court's attorney fee awards. This was a classic fraud on the Court, warranting a reinstatement of the original attorney fee award in addition to costs and fees in bringing this Motion, and specifically, the assessment of these penalties directly against Defendant's attorney and his firm, jointly and severally with his client, for his role in orchestrating and effectuating the fraudulent conduct.

Respectfully submitted,

**SMITH, GAMBRELL & RUSSELL LLP**

Date: March 12, 2018

By: /s/ James L. Bikoff

James L. Bikoff, *Pro Hac Vice*
Bruce A. McDonald, *Pro Hac Vice*
Holly B. Lance, *Pro Hac Vice*
1055 Thomas Jefferson St. NW, Ste. 400
Washington, DC 20009
Telephone: 202.263.4300
Facsimile: 202.263.4329
Email: jbikoff@sgrlaw.com
bmcdonald@sgrlaw.com
hlance@sgrlaw.com

Martin N. Jensen (SBN 232231)
Thomas L. Riordan (SBN 104827)
PORTER SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
Telephone: 916.929.1481
Facsimile: 916.927.3706
Email: mjensen@porterscott.com
triordan@porterscott.com

*Attorneys for Plaintiff*

- 14 -

PL'S MEMORANDUM IN SUPPORT OF
RULE 60 MOTION TO REOPEN
CASE NO. 2:14-CV-00676-WBS-DB

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 12th day of March 2018, I electronically filed the foregoing **PLAINTIFF'S MEMORANDUM IN SUPPORT OF RULE 60 MOTION TO RE-OPEN POST-JUDGMENT PROCEEDINGS FOR FRAUD ON THE COURT** with the Clerk of the Court, using the CM/ECF system, which will automatically send email notifications of such filing to all counsel who have entered an appearance in this action.

_/s/ James L. Bikoff_______________
James L. Bikoff
Attorney
Smith, Gambrell & Russell

- 15 -

PL'S MEMORANDUM IN SUPPORT OF
RULE 60 MOTION TO REOPEN
CASE NO. 2:14-CV-00676-WBS-DB