MARTIN N. JENSEN (SBN 232231)
THOMAS L. RIORDAN (SBN 104827)
**PORTER SCOTT**
350 University Ave., Suite 200
Sacramento, CA 95825
Telephone: 916.929.1481
Email: mjensen@porterscott.com
Email: triordan@porterscott.com

JAMES L. BIKOFF (*Pro Hac Vice*)
BRUCE A. McDONALD (*Pro Hac Vice*)
HOLLY B. LANCE (*Pro Hac Vice*)
**SMITH, GAMBRELL & RUSSELL LLP**
1055 Thomas Jefferson Street, N.W., Suite 400
Washington, D.C. 20007
Telephone: 202.263.4341
Email: jbikoff@sgrlaw.com
Email: bmcdonald@sgrlaw.com
Email: hlance@sgrlaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE NATIONAL GRANGE OF THE ORDER OF PATRONS OF HUSBANDRY, <br><br> Plaintiff, <br><br> v. <br><br> CALIFORNIA GUILD, formerly doing business as "California State Grange," <br><br> Defendant. | Case No. 2:14-cv-00676-WBS-DB <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF RULE 60 MOTION** <br><br> Date: April 16, 2018 <br> Time: 1:30 p.m. <br> Courtroom: 5 |

Plaintiff replies as follows to Defendant's opposition and supporting declaration of its attorney Mark Ellis.

**I.     Summary of the Issues**

Defendant's opposition fails to address the two principal questions before the Court. The first is whether the Court should vacate the acknowledgements of satisfaction of the $239,174.60 attorney fee award, dated April 10, 2017, and June 27, 2017, where the undisputed evidence shows that the award was paid by Defendant, without Plaintiff's knowledge, in funds owned by

Plaintiff's chartered California chapter. The answer is that the acknowledgements must be vacated and the original attorney fee award reinstated pursuant to Rule 60(b)(3). *In re Hunter,* 66 F.3d 1002, 1004 (9th Cir. 1995) (holding that filing of a satisfaction of judgment is "functionally equivalent to filing a voluntary dismissal," which is "a judgment, order or proceeding from which Rule 60(b) relief can be granted"). Such relief is warranted, <u>with or without evidence of fraud</u>, on the ground that the attorney fee award has in reality <u>not been paid</u>.[1]

The second question is whether the Court, pursuant to Rule 60(d)(3) and its inherent authority, should sanction Defendant and its attorney, Mark Ellis, jointly and severally, where the uncontroverted evidence shows that the fee award was paid entirely with funds owned or claimed by Plaintiff and its California chapter, at least $93,707.78 of which was unlawfully taken by Defendant from an account owned by Plaintiff's California chapter in willful disregard of an injunction in the parties' state court litigation, all of which was actively concealed from Plaintiff and the Court by channeling those payments through the trust account of Defendant's attorney and his firm. The answer to that question is that such concealment constituted a fraud on the court,[2] that the fraud was so serious as to prevent the judicial machinery from performing "in the usual manner its impartial task of adjudging cases that are presented for adjudication,"[3] and that this Court, as a matter of law, cannot fail to recognize the gravity of the conduct.[4]

## II. Recent Developments

On March 21, 2018, the Sacramento County Superior Court ruled in the parties' state court action that Defendant had "willfully violated" an injunction in that case by paying attorney

---

[1] *See* Fed. R. Civ. P. 60(b) (judgment may be set aside for "(3) fraud . . ., misrepresentation, <u>or other misconduct of an adverse party</u>; . . . (6) <u>any other reason justifying relief</u>") (emphasis added); *Jimenez v. Franklin,* 680 F.3d 1096 (9th Cir. 2012) (reversing district court order that granted satisfactions after defendants paid less than full amount of fee award).

[2] *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995); *Fraud as Ground for Relief From Judgment; Nondisclosure of Evidence and Perjury*, 47 Am. Jur. 2d Judgments § 665.

[3] *In re Intermagnetics Am., Inc.*, 926 F.2d 912, 916 (9th Cir. 1991).

[4] *In re Levander,* 180 F.3d 1114 (9th Cir. 1999) (reversing district court, holding fraud on the court established by party's undisclosed transfer of assets to shell entities and subsequent deposition testimony that "assets haven't been sold").

fees in the present case with funds owned by Plaintiff's California chapter.[5] Defendant already had a record of "deliberate and willful" disregard of the September 2015 permanent injunction in the present case.[6] Plaintiff has also received a declaration from another local Grange.[7] The new declaration illustrates that the fraud alleged in this Motion is a small piece of a large scale enterprise by Defendant to seize ownership of the California Granges, which is wreaking havoc on Plaintiff's members and the public across the State of California.[8]

## III. Uncontroverted Evidence

### A. The $145,715.70 Payment

The evidence is undisputed that Defendant's partial payment of Plaintiff's attorney fee award in the amount of $145,715.70 was funneled through the trust account of Defendant's counsel Mark Ellis and his law firm, Ellis Law Group, and that the effect of such action, regardless of its purpose, was to disguise the fact that the payment was siphoned out of assets owned by the California Grange Foundation, f/k/a Heartland Foundation (hereinafter "the Foundation"), a nonprofit entity created by Plaintiff's California chapter in 1992. Those assets are claimed by Plaintiff's California chapter in a state case in which Ellis represented the defendant prior to his disqualification in September 2017,[9] and are the subject of Plaintiff's

---

[5] *National Grange v. California State Grange,* Case No. 34-2012-00130439-CU-MC) (Sacramento Sup. Ct.) (the "State Action"), Order of the Hon. David Brown, March 21, 2018, Dkt. # 228-1 at 3.

[6] Memorandum and Order, April 20, 2016, Dkt. # 138, at p. 34 ("The court is hard pressed to find that defendant's acts were anything other than deliberate and willful.").

[7] *See* Declaration of Jacinto Grange, March 25, 2018, Exhibit 1 hereto.

[8] *See also* Declaration of Redwood Valley Grange, ¶ 11, Dkt. # 226-2 at 6 (describing Ellis's participation in a fraudulent scheme to seize ownership of the Redwood Valley Grange Hall).

[9] *See California State Grange v. California Grange Foundation,* Case No. 34-2016-00192655-CU-MC-GDS (Sacramento Super. Ct.) ("the Foundation Action"), Order of the Hon. Raymond Cadei Granting Motion to Disqualify the Ellis Group," September 5, 2017) (Exhibit 4 to Plaintiff's Rule 60 Motion, Dkt. # 226-2 at 75). Plaintiff's California chapter alleges in the Foundation Action that it formed the Foundation in 1992 to hold charitable contributions for use in accordance with the rules of the National Grange and the California State Grange, that despite federal and state court orders, <u>the Foundation and the Grange property that it holds remain 'under the control of Robert McFarland and others, who are not affiliated with The Grange and who are using that property for purposes other than activities to support the California State Grange's work, programs, and goals</u>," and that since November 2013, Defendant has "<u>used the</u>

conversion claim in *National Grange and California State Grange v. California Guild and Robert McFarland,* Case No. 2:16-cv-00201-WSB-DB (E.D. Cal.) ("*Grange II*").[10] Ellis offers the following peculiar explanation for his concealment of that fact:

> Because the Guild did not have sufficient funds to pay off the judgment, it looked to borrow funds from third parties. Eventually, a loan in the amount of $150,000 was arranged, the terms of which are confidential, and attorney-client privileged. The loan is evidenced in a confidential, written promissory note. The terms of this note are expressly confidential, and attorney-client privileged. * * *

Declaration of Mark Ellis, ¶ 6, Dkt. # 229-1, p. 3.

The proposed explanation makes no sense. First, even assuming that the Guild obtained a secret $150,000 loan from an unidentified third party, Ellis does not explain why a *different* entity, the Foundation – represented at that time by Ellis in an action by Plaintiff's California chapter to recover ownership of its assets – would simultaneously and surreptitiously write a check to Ellis Law Group in the identical amount, followed immediately by a $145,466.82 payment by Ellis Law Group to the National Grange.

Second, the explanation is in conflict with the bank records of the Foundation, which show that the sum of $150,000, after being depleted from the Foundation's account in the form of a check in that exact amount to Ellis Law Group, was *never replenished*.[11] Therefore, even if the Guild *did* receive a secret payment of $150,000 from a silent benefactor, the $150,000 used for the payment in *this* case came directly and indisputably from the Foundation.

Third, the suggestion that the Guild received a $150,000 loan from an anonymous third party who cannot be identified because of attorney-client privilege is preposterous on its face. The concealment of a silent investor funding Defendant's litigation effort violates the basic

---

*funds held by the Foundation for purposes besides the charitable purposes for which those funds were donated to the Foundation*." Dkt. # 226-2 at 76 (emphasis added).

[10] Plaintiffs' Amended Complaint, Aug. 17, 2016, ¶¶ 146-147, Dkt. # 75 at 51.

[11] *See* Banner Bank statements appended hereto as Exhibit 2, at pp. 23 – 42, PL 015073 – PL 015114. On February 28, 2017, prior to the illicit payment, the Foundation had a balance of $202,555.80. *Id.* at PL 015095. On April 2, 2017, after the payment (and others), that balance was $9,060.64. *Id.* at PL 015097. On December 31, 2017, the balance was $940.03. *Id.* at PL 015114.

purpose of Fed. R. Civ. P. 26.[12]  Defendant's failure to disclose that source, or even the fact that Defendant was withholding the identity of the source, if there was such a source, was a sanctionable discovery abuse in *Grange II*.  In any event, even if Paragraph 6 of Ellis's declaration is entirely truthful, it is irrelevant because <u>Defendant does not dispute that the payment went directly from the Foundation to Ellis Law Group to the National Grange</u>.

### B. The $93,707.78 Payment

The evidence is similarly undisputed that Defendant paid $93,707.78 to Ellis Law Group in funds surreptitiously drained from a restricted account at Morgan Stanley owned by Plaintiff's chartered California chapter in violation of the injunction in the State Action, and that Ellis turned around and paid that exact sum to discharge Defendant's remaining liability for Plaintiff's attorney fee award without revealing that he was paying the award with funds owned by Plaintiff's California chapter in willful disregard of Judge Brown's order.

Ellis rationalizes the use of restricted funds to pay the attorney fee award in the present case as necessary to the "very survival of the California Guild." Dkt. # 229-1 at 4.  Ellis further argues "[t]hose payments violated no order of this Court in Fed Grange 1, <u>or, in my judgment and opinion, in any other court</u>." *Id.* (emphasis added).  This purported justification is mistaken as a matter of law, because on March 21, 2018, Judge Brown held that Defendant "willfully violated" the court's November 15, 2015 injunction by using the Morgan Stanley account as a source of the attorney fee payments in the present case.[13]  The same is true for Ellis's assertion that Plaintiff "does not claim it owns the right to any of the funds in the Guild's bank accounts," *id.,* ¶ 13, Dkt. # 229-1 at p. 5, which is legally incorrect because those accounts are claimed by Plaintiff <u>and</u> its California chapter in *Grange II*.[14]

---

[12]  *E.g., Wopsock v. Mitchell,* Case No. 2:12-cv-0570-RJS-EJF, 2018 WL 1578086, at *5 (D. Utah Mar. 29, 2018).

[13]  State Court Action, Order of Judge Brown, March 21, 2018, Dkt. # 228-1, at 3.

[14]  *Grange II*, Plaintiffs' Amended Complaint, Aug. 17, 2016, ¶¶ 146 and 147, Dkt. # 75 at 51.

1       **C.    Other Irrelevant and False Representations**

The remainder of Ellis's declaration discusses the cases in which he has been disqualified, which are either irrelevant or do not count in his favor. He also states (falsely) that Banner Bank produced the $150,000 check written to Ellis Law Group by the Foundation "notwithstanding the trial court's admonition." In fact, Banner Bank produced the check *pursuant* to the trial court's order on a subpoena that Ellis fought for six months.[15]

## IV.    Argument

Defendant admits the factual allegations in Plaintiff's Motion and attempts to justify them by assertions of good faith. However, overt misconduct by a party and its attorney cannot be excused by subjective good faith. *Forte v. County of Merced,* No. 1:11–cv–00318–AWI–BAM, 2015 WL 461599, at *9 (E.D. Cal. Feb. 3, 2015). When evaluating the imposition of sanctions, the Court should "consider not whether the party demonstrated subjective good faith in filing the document, but whether the party acted objectively reasonably in doing so.[16]

      **A.    Defendant Defrauded Plaintiff by Paying the Attorney Fee Award in Funds Stolen From Plaintiff's Chartered California Chapter and Concealing That Fact From Plaintiff.**

Although satisfaction of a judgment is usually the last act of a legal proceeding, a satisfaction that has been filed and entered may be set aside for any proper cause.[17] "Fraud, undue influence and mistake are the generally recognized grounds for vacating a satisfaction."[18]

---

[15]    Foundation Action, Order of Hon. Christopher Krueger, Dec. 19, 2017 (Exhibit 3 hereto).

[16]    *G.C. & K.B. Invs. v. Wilson,* 326 F.3d 1096, 1109 (9th Cir. 2003); *see also Ingenuity 13 LLC v. Doe,* Case No. 2:12-cv-08333-ODW-JC, 2013 WL 765102, at *1 (C.D. Cal. Feb. 7, 2013) (quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986)).

[17]    *Vacation of Satisfaction*, 40A Cal. Jur. 3d § 357 (citing *Brochier v. Bochier,* 17 Cal.2d 822, 112 P.2d 602 (1941); and *Cason v. Glass Bottle Blowers Ass'n,* 113 Cal.App.2d 263, 247 P.2d 931 (2d Dist. 1952)).

[18]    40A Cal. Jur. 3d § 357 (citing *S. California Edison Co. v. Harnischfeger Corp.,* 99 Cal. App. 3d 9, 160 Cal. Rptr. 23 (2d Dist. 1979)). "A party to the record may have a satisfaction, entered in fraud of his rights, set aside on motion in the immediate action in which the judgment was entered." *Clark v. Johnston,* 49 Cal. App. 315, 318, 193 P. 864, 865 (1920); *accord, Wherry v. Rambo,* 97 Cal. App. 2d 569, 571, 218 P.2d 142 (2d Dist. 1950); *Gilson Quartz*

1  However, the Court is not required to find fraud in order to reinstate the original attorney fee

2  award - the Court is merely required to find that the award has not been paid.[19]

3  Defendant argues that "no 'fraud' was perpetrated on this Court in the payment of the

4  judgment."[20] Fraud on the court is determined under Fed.R.Civ.P. 60(d)(3). However, Plaintiff's

5  Rule 60 Motion also alleges misconduct directed at *Plaintiff* under Rule 60(b)(3). Moreover,

6  Plaintiff may prevail on this Motion under Rule 60(b)(3) by showing that the acknowledgements

7  of satisfaction were obtained through fraud, misrepresentation, or *any other misconduct* that

8  prevented Plaintiff from "fully and fairly presenting [its] case."[21] Failure to disclose materials in

9  discovery *alone* can constitute "misconduct" under Rule 60(b)(3).[22]

10  Plaintiff alleges with particularity, and the uncontroverted evidence is clear and

11  convincing, that Defendant and its attorney obtained the acknowledgements of satisfaction by

12  concealing the source of the payments, knowing that Plaintiff would not accept payment of the

13  attorney fee award with funds stolen from Plaintiff or its chartered California chapter; that

14  Plaintiff justifiably relied on the implied representation that Defendant was not paying the

15  attorney fee award with funds stolen from Plaintiff or its California chapter; and that payment of

16  the attorney fee award in funds belonging to Plaintiff's California chapter was no payment at all.

17  This evidence requires the Court to set aside the satisfaction of judgment under *any conceivable*

18  *standard*.[23]

---

*Min. Co. v. Gilson,* 47 Cal. 697 (1874) (vacating satisfaction of judgment where judgment debtor fraudulently refused to deliver a check promised to the judgment creditor).

[19] *Jimenez v. Franklin,* 680 F.3d at 1098-99.

[20] Dkt. # 229 at p. 2. The National Grange has "failed to identify exactly what was 'fraudulent' about the payments." *Id.*

[21] *Atchison, T. & S.F. Ry. Co. v. Barrett,* 246 F.2d 846, 849 (9th Cir. 1957) (emphasis added).

[22] *Jones v. Aero/Chem Corp.,* 921 F.2d 875, 879 (9th Cir. 1990); *Anders v. Cryovac, Inc.,* 862 F.2d 910, 923 (1st Cir. 1988).

[23] *See Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 990, 22 Cal.Rptr.3d 352, 102 P.3d 268 (2004) (setting forth elements of fraud); *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1239, 44 Cal.Rptr.2d 352, 900 P.2d 601 (1995) (same).

**B.  Defendant and its Attorney Also Committed a Fraud on the Court.**

Courts have inherent equity power to vacate judgments obtained by fraud.[24] The remedy is available for a satisfaction of judgment[25] and any other final order obtained through the willful concealment of material evidence.[26] The Court's inherent authority allows it to sanction a "broad range" of improper conduct,[27] even when addressing misconduct outside of the courtroom.[28] The authority to sanction attorney misconduct is not limited to granting relief for fraud but arises from the Court's inherent powers to manage its cases and its courtroom, and also from the attorney's role as an officer of the court.[29] An attorney admitted to a particular bar may also be disciplined for conduct that violates that bar's local rules of professional conduct.[30]

---

[24] *In re Levander,* 180 F.3d at 1118; *Landis Revin Nutraceuticals v. Arthur Andrew Med., Inc.,* Case No. CIV. S-06-2114 FCD GGH, 2007 WL 397144, at *5 (E.D. Cal. Feb. 1, 2007) ("Recklessness combined with other factors such as frivolousness, harassment, or an improper purpose, may constitute bad faith warranting sanctions under a court's inherent power.") (citing *B.M.K. v. Maui Police Dep't*, 276 F.3d 1091, 1106 (9th Cir. 2002)); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–45 (1991) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." (citation omitted) (internal quotation marks omitted); *In re Rich,* Case No. 10-64847-B-7, 2012 WL 8249563, at *6 (E.D. Cal. Aug. 29, 2012).

[25] *In re Hunter,* 66 F.3d 1002 (9th Cir. 1995).

[26] *Pumphrey*, 62 F.3d at 1133; *U.S. v. Dixon,* 316 F.3d 1041 (9th Cir. 2003) (setting aside judgment for failure to disclose adverse videotaped product tests); *Combs v. Rockwell Int'l Corp.,* 927 F.2d 486 (9th Cir.1991) (affirming dismissal of case as sanction for falsifying a deposition); *Fraud as Ground for Relief From Judgment; Nondisclosure of Evidence and Perjury*, 47 Am. Jur. 2d Judgments § 665.

[27] *Knupfer v. Lindblade (In re Dyer),* 322 F.3d 1178, 1196 (9th Cir. 2003) (citing *Fink v. Gomez,* 239 F.3d 989, 992–93 (9th Cir.2001) (determining limitation of federal district court's inherent sanctioning authority)).

[28] *Chambers,* 501 U.S. at 57; *W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 873 (9th Cir. 1992).

[29] *In re Brooks–Hamilton,* 400 B.R. 238, 247 (9th Cir. BAP 2009) (citing *Chambers,* 501 U.S. at 43); *In re Snyder,* 472 U.S. 634, 643 (1985). "<u>When an attorney appears before a federal court, he is acting as an officer of that court, and it is that court which must judge his conduct</u>." *Galam v. Carmen (In re Larry's Apartment, LLC),* 249 F.3d 832, 838 (9th Cir. 2001) (citing *Cord v. Smith,* 338 F.2d 516, 524 (9th Cir. 1964)) (emphasis added).

[30] *United States v. Wunsch,* 84 F.3d 1110, 1114 (9th Cir. 1996) (emphasis added) (citation omitted). As an attorney admitted to practice before the federal courts in the Eastern District of California, Ellis was also obligated to comply with California's standards of professional conduct. *See* E.D. Cal. R. 180(e) (adopting the Rules of Professional Conduct of the State Bar of California, Rules 1–100–5–320, and the State Bar Act, codified at California

1    Fraud on the court is established in the present case by undisputed evidence of "an unconscionable plan or scheme which is designed to improperly influence the court in its decision."[31] Concealing the illicit source of the attorney fee payments was "so fundamental that it undermined the workings of the adversary process itself."[32] In addition, the misconduct has caused "more than an injury to a single litigant," *Estate of Stonehill,* 660 F.3d 415 at 444, as it is part of a widespread scheme by Defendant to loot the California Granges.[33] The conduct is injuring people all over the State of California, not just Plaintiff's members.[34]

### C. Plaintiff is Not Required to Establish that the Underlying Conduct Was Criminal in Nature Where the Concealment of that Conduct Defrauded Plaintiff and the Court.

Defendant and its attorney argue that their conduct was either not technically illegal or not in violation of any ruling by *this* Court. Referring to the State Action injunction that Defendant "willfully disregarded,"[35] Defendant has the temerity to state:

> Here, National Grange asserts that contempt justifies imposing sanctions. But what court order of *this* Court was violated?

Dkt. # 229 at 5 (emphasis in original).

---

Business & Professions Code §§ 6000–6238), incorporated by L.B.R. 1001–1(c). *In re Rich,* Case No. 10-64847-B-7, at *6, 2012 WL 8249563 (E.D.Cal. Aug. 29, 2012).

[31] *Pumphrey*, 62 F.3d at 1131.

[32] *United States v. Estate of Stonehill*, 660 F.3d 415, 445 (9th Cir. 2011); *see also* 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2870 (3d ed. 2014) (observing, by analogy, that "[T]here is a powerful distinction between perjury to which an attorney is a party and that with which no attorney is involved.... [W]hether perjury constitutes a fraud on the court should depend on whether an attorney or other officer of the court was a party to it.").

[33] *See* Declaration of Redwood Valley Grange, Dkt. # 226-2, ¶ 11 (describing participation of Ellis); Declaration of Jacinto Grange, Exhibit 1 hereto (illustrating Defendant's *modus operandi*). *See also* email dated Feb. 4, 2018, received at website of Plaintiff's chartered California chapter, appended hereto as Exhibit 4 ("What is being done about the stolen Grange buildings in N. CA?").

[34] *See* email dated April 7, 2018, to Ed Komski from Marjorie Corey, member of the public formerly employed as a server at Guild events, copy appended hereto as Exhibit 5 ("I'm concerned for my safety").

[35] Order of the Hon. David Brown, March 21, 2018, Dkt. # 228-1, at 3.

1 The answer to that rhetorical question is that this Court has the inherent authority to sanction the conduct of Defendant's attorney inside <u>or outside of the courtroom</u>.[36]

Defendant and its attorney did not merely pay the judgment in stolen funds – they *concealed* the illicit source of the funds. The funds were siphoned out of the Foundation's account in violation of the U.S. tax code,[37] and embezzled from a restricted account at Morgan Stanley,[38] in contempt of Judge Brown's order in the State Action,[39] all under the direction of Ellis.[40] The contempt of Judge Brown's order in the State Action alone was a criminal offense.[41] In fact, the Declarations of the Redwood Valley Grange and the Jacinto Grange, taken together, demonstrate a "pattern of racketeering activity" within the meaning of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.*[42]

---

[36] *Chambers,* 501 U.S at 57 (emphasis added).

[37] The disbursement of $150,000 to Ellis Law Group on March 8, 2017, by the Foundation constituted a transfer of tax-exempt assets of the Foundation to satisfy the liability of an "insider" - Robert McFarland. The transfer was therefore a private inurement in violation of Section 501(c)(3) of the Internal Revenue Code. *See* Report to Internal Revenue Service, March 9, 2018, appended hereto as Exhibit 6, at p. 5.

[38] Embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Littleton*, 942 F.2d 551, 555 (9th Cir. 1991); *In re Dietz,* Bankruptcy No. 08-13589-B-7, 2011 WL 10637551, *20 (E.D. Cal. July 28, 2011). Embezzlement is established upon a showing of three elements: (1) property rightfully in the possession of a non-owner; (2) the non-owner's appropriation of the property to a use other than which it was entrusted; and (3) circumstances indicating fraud." *In re Littleton, supra.*

[39] State Action*,* Order Granting Motion for Appointment of Receiver, March 21, 2018, Dkt. # 228-1, at 3 (contradicting Defendant's argument that "Plaintiff should have brought an enforcement claim in the State Action," Dkt. # 229 at p. 2).

[40] There can be no dispute that Ellis was aware of the illegality, having represented Defendant in the related state court actions.

[41] *See* Cal. Penal Code § 166(a)(4).

[42] "[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are *not isolated events*." 18 U.S.C. §3575(e); *Sun Sav. & Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191 (9th Cir.1987). "Racketeering activity" is defined in 18 U.S.C. § 1961(1)(B) as including any act "indictable" under certain enumerated federal criminal statutes, including 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud). *Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1399 (9th Cir. 1986).

However, it is not only the *illegality* of these actions that warrants relief under Rule 60, but their *concealment*. Defendant mischaracterizes the nature and extent of misconduct that Plaintiff is required to prove, even though the evidence meets any possible standard. Criminal or otherwise, the conduct of Defendant and its attorney was fraudulent because (1) the concealment was material where Defendant and its attorney knew that Plaintiff would not have accepted payment in stolen funds; and (2) such concealment prevented Plaintiff from fully and fairly presenting its case insofar as the acknowledgements of satisfaction were concerned. Given the clear and convincing evidence of such misconduct, the burden shifts to the nonmoving party to demonstrate *by clear and convincing evidence* that the misconduct had no prejudicial effect on the outcome of the litigation.[43] Defendant's assertions that the covert $150,000 payment to Ellis Law Group was "borrowed or advanced in good faith," Dkt. # 229 at p. 2, and that the payment of the $93,707.78 did not violate any order of *this* Court (even though it was in contempt of Judge Brown's injunction in the State Action), do not come close to meeting that burden.

**D. Rule 60 is the Proper Mechanism For the Requested Relief.**

Defendant lacks any basis to suggest that the present Motion has been improperly asserted under Rule 60. "Judgments obtained through fraud, misrepresentation or other misconduct should be vacated, by use of Rule 60(b) of the Federal Rules of Civil Procedure,"[44] Rule 60 is applicable because the misconduct of Defendant and its attorney prevented Plaintiff from fully and fairly presenting its position on satisfaction of the attorney fee award. That award, unbeknownst to Plaintiff or the Court, was wholly and completely negated by the fraud and misconduct of Defendant and its attorney.

Defendant argues that Plaintiff's motion is untimely because it was not brought within a year of final judgment. That assertion is incorrect for two reasons. First, the motion was brought within a year of the fraudulent acknowledgements of satisfaction, which were filed on April 10,

---

[43] *Venture Indus. Corp. v. Autoliv ASP, Inc.*, 457 F.3d 1322, 1333 (Fed. Cir. 2006).

[44] *Atchison, T. & S.F. Ry. Co. v. Barrett*, 246 F.2d at 849; *In re Intermagnetics Am., Inc.,* 926 F.2d 912 at 916-17.

2017, and June 27, 2017.[45] Second, Plaintiff's motion alleges not only misconduct under Rule 60(b)(3), but fraud on the court under Rule 60(d)(3), for which there is no time requirement.

### E. Defendant Has Not Been Deprived of "Due Process" by Absence of the Words "Inherent Authority" in Plaintiff's Notice of Motion.

Defendant argues that granting Plaintiff's Motion would violate Defendant's due process rights because Plaintiff's Notice of Motion cited Rule 60 but did not mention the Court's "inherent authority." However, due process requires only that parties whose rights may be prejudiced by a change in the judgment receive reasonable notice and an opportunity to be heard regarding the trial court's proposed action of vacating or amending a judgment.[46] While a party's failure to serve the opposing party with any notice whatsoever warrants denial of a motion for relief from judgment, it hardly follows that omission of the words "inherent authority" from Plaintiff's Notice of Motion constituted a violation of due process.[47] Due process merely requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

### F. Plaintiff's Rule 60 Motion Did Not Require a Declaration by Plaintiff's Counsel, But a Declaration is Filed Herewith.

Finally, Defendant argues that Plaintiff's motion is defective for failure to include a declaration or affidavit. While fully authenticated evidence is necessary to support Plaintiff's

---

[45] Defendant states, "Here, National Grange equates the satisfaction of judgment to be the same as entry of a judgment or order, but with no supporting authority." In fact such authority abounds, *e.g., In re Hunter*, 66 F.3d 1002 (9th Cir. 1995) (equating satisfaction of judgment to entry of judgment under Rule 60); *Jimenez, supra* (9th Cir. 2012) (equating entry of judgment to entry of attorney fee award under Rule 60).

[46] *See Notice as Prerequisite to Opening, Modifying, or Vacating Judgment,* 57 Am. Jur. 2d Judgments § 669 (citing authorities).

[47] *See United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 272 (2010) (holding that where student loan creditor received actual notice of filing and contents of debtor's Chapter 13 plan, such notice "more than satisfied" creditor's due process rights); *In re Jawa,* BAP No. CC-15-1077, 2015 WL 8033762 (9th Cir. Dec. 4. 2015) (rejecting due process claim where notice of motion failed to specifically state that movant owned the property it was seeking to recover).

motion, the evidence in support of Plaintiff's Motion was created, written and signed by Defendant and its attorney. These writings are therefore "admissions of a party opponent and admissible as non-hearsay under Fed. R. Evid. 801(d)(2)."[48] Nevertheless, appended hereto is a declaration of Plaintiff's counsel attesting to the veracity of the evidence cited in the Rule 60 motion.

## V. Conclusion

Defendant and its attorney have neither controverted the factual allegations in Plaintiff's Motion nor offered any colorable justification for their astonishing misconduct. *At a minimum*, Fed. R. Civ. P. 60(b)(3) authorizes the Court to reinstate the original attorney fee award on the ground that the award has not been paid. *Jimenez*, *supra*.

In addition, Plaintiff is entitled to sanctions under Fed. R. Civ. P. 60(d)(3), including an assessment of the original fee award jointly and severally against Defendant and its attorney, as well as costs and attorney fees for bringing this Motion, because the uncontroverted evidence is clear and convincing that Defendant and its attorney violated the tax law, the criminal law, and the state court injunction, by paying the attorney fee award in the present case with funds stolen from Plaintiff's chartered California chapter, and concealing the source of the stolen funds from Plaintiff and the Court.

Respectfully submitted,

**SMITH, GAMBRELL & RUSSELL LLP**

Date: April 9, 2018         By:      /s/ James L. Bikoff
                                     James L. Bikoff, *Pro Hac Vice*
                                     Bruce A. McDonald, *Pro Hac Vice*
                                     Holly B. Lance, *Pro Hac Vice*
                                     1055 Thomas Jefferson St. NW, Ste. 400
                                     Washington, DC 20009
                                     Telephone: 202.263.4300
                                     Email:   jbikoff@sgrlaw.com
                                              bmcdonald@sgrlaw.com
                                              hlance@sgrlaw.com

---

[48] *Fleming v. Purcell Painting & Coating Sw., Inc.,* Case No. 2:13-cv-001720-KJM-EFB, 2014 WL 7409467, at *1 (E.D. Cal. Dec. 30, 2014) (quoting *In re Homestore.com, Inc. Sec. Litig.,* 347 F.Supp.2d 769, 781 (C.D. Cal. 2004)).

Martin N. Jensen (SBN 232231)
Thomas L. Riordan (SBN 104827)
PORTER SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
Telephone: 916.929.1481
Email:   mjensen@porterscott.com
         triordan@porterscott.com

*Attorneys for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on the 9th day of April 2018, I electronically filed the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF RULE 60 MOTION** with the Clerk of the Court, using the CM/ECF system, which will automatically send email notifications of such filing to all counsel who have entered an appearance in this action.

          /s/ James L. Bikoff
James L. Bikoff
Attorney
Smith, Gambrell & Russell