```
 1                    IN THE UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF CALIFORNIA
 2                    BEFORE THE HONORABLE WILLIAM B. SHUBB

 3    NATIONAL GRANGE OF THE
      ORDER OF PATRONS OF
 4    HUSBANDRY,

 5            Plaintiff,
      vs.                              Sacramento, California
 6                                     No. 2:14-CV-00676
                                       Monday, April 16, 2018
 7    CALIFORNIA STATE GRANGE,         1:30 p.m

 8            Defendant.
      _____/
 9

10                              --oOo--

11                  REPORTER'S TRANSCRIPT OF PROCEEDINGS
                  RE: PLAINTIFF'S RULE 60 MOTION TO REOPEN
12                      POSTJUDGMENT PROCEEDINGS

13                              --oOo--

14    APPEARANCES:

15    For the Plaintiff:       SMITH, GAMBRELL & RUSSELL LLP
                               BY:  JAMES L. BIKOFF
16                                  Attorney at Law
                                    BRUCE A. McDONALD
17                                  Attorney at Law
                                    HOLLY B. LANCE
18                                  Attorney at Law
                               1055 Thomas Jefferson Street NW, #400
19                             Washington, DC  20007

20    For the Defendant:       ELLIS LAW GROUP, LLP
                               BY:  MARK E. ELLIS
21                                  Attorney at Law
                               1425 River Park Drive, Suite 400
22                             Sacramento, CA  95815

23    Official Reporter:       KACY PARKER BARAJAS
                               CSR No. 10915, RMR, CRR, CRC
24                             501 I Street
                               Sacramento, CA  95814
25                             kbarajas.csr@gmail.com
```
*Transcript produced by computer-aided transcription.*

1          SACRAMENTO, CALIFORNIA, MONDAY, APRIL 16, 2018, 1:30 PM

2                              --oOo--

3          THE CLERK:  Please remain seated and come to order

4     this court is again in session.

5          Item 2, civil 14-676, National Grange of the Order of

6     Patrons of Husbandry versus California State Grange.

7          Counsel, your appearances, please.

8          THE COURT:  Mr. Ellis, I thought you weren't going to

9     be here.

10         MR. ELLIS:  Well, I am in trial across the street.

11         THE COURT:  Oh.

12         MR. ELLIS:  When I didn't hear anything back on the

13    2:14 case, I thought I had to be here.

14         THE COURT:  I'm glad you're here.  If you really

15    weren't here, I was going to make some inquiry and see when you

16    could be present, but as long as you're here, let's take that

17    motion.

18         THE COURT:  Mr. Bikoff, what would you like to say?

19         MR. BIKOFF:  Your Honor, I'd like to present on this,

20    and if there's any time left over, Mr. McDonald is here.  He

21    can comment on some of the cases that we've cited.

22         THE COURT:  But Mr. Ellis is here.  He's got a matter

23    in state court, so I think we ought to take advantage of the

24    fact that he's present.

25         MR. BIKOFF:  That's fine.

1          THE COURT:  And hear this matter now.

2          MR. BIKOFF:  Okay.  Your Honor, on March 27th, 2017,

3     plaintiff National Grange counsel received a cashier's check

4     from Ellis law firm for $145,000 and change allegedly in full

5     satisfaction of the attorney fee judgment that was granted

6     September 12th, 2016.

7          On June 9th, 2017, Mr. Ellis presented plaintiff's

8     counsel with three checks totaling 93,707 and change drawn on

9     his firm's trust account, allegedly in full satisfaction of

10    remaining costs and fees awarded by this Court.

11         It was not until December 27th, 2017, that plaintiff's

12    counsel learned in discovery in Grange II that the source of

13    the 73,707 (sic) check was a restricted Morgan Stanley account

14    belonging to plaintiff's chartered California State Grange.

15         Three checks in the amounts of 55,000, 15,008, and

16    19,008 were sent from Morgan Stanley to Mr. Ellis, and checks

17    in the same amounts were then sent to the National Grange

18    counsel or provided to the National Grange counsel on June 9th.

19         THE COURT:  So is that all of the 145,000, or was

20    there some of it that didn't come from that account?

21         MR. BIKOFF:  145,000 came from the Heartland

22    Foundation.  93,707 came from Morgan Stanley.

23         THE COURT:  So the 93 is what came from Morgan

24    Stanley?

25         MR. BIKOFF:  Yes.

1          THE COURT:  Okay.

2          MR. BIKOFF:  So the funds were restricted under a

3    California superior court injunction issued by Judge Brown

4    October 20th, 2015, which enjoined any use of these funds,

5    those funds, quote, except for normal expenses and bills of the

6    defendant Guild.

7          Plaintiff's counsel later learned that the 145,000

8    cashier's check was part of a transfer of 150,000 on March 8th,

9    2017, from the Heartland Foundation, which was formerly the

10   California Grange Foundation, a charitable entity founded by

11   plaintiff's chartered California State Grange in 1992.

12         These funds have been claimed by the California State

13   Grange in a separate and pending lawsuit as belonging to the

14   California State Grange.  All of these payments were siphoned

15   by defendant and Attorney Ellis out of funds belonging to or

16   claimed by California State Grange.

17         THE COURT:  Were they all covered by the injunction

18   that Judge Brown entered?

19         MR. BIKOFF:  No.  Only the Morgan Stanley were covered

20   by the injunction.

21         THE COURT:  And what's the total of that?

22         MR. BIKOFF:  That's 93,000.

23         THE COURT:  93, okay.

24         MR. BIKOFF:  The 150 is from the Heartland.

25         THE COURT:  So what are complaining about, just the 93

1    or you're also complaining --

2           MR. BIKOFF:  I'm complaining about the whole thing.

3           THE COURT:  All right.

4           MR. BIKOFF:  In fact, Judge Brown found that the use

5    of the Morgan Stanley funds to pay attorneys' fees in Grange I

6    was in willful disregard of his order.  A receiver has now been

7    appointed to prevent further dissipation of the Guild's assets.

8           THE COURT:  All right.  Now your motion is a Rule 60

9    motion to set aside the judgment.  You're not really asking the

10   court to set aside the judgment, are you, because the judgment

11   stands.  It's a judgment in your favor.

12          MR. BIKOFF:  Right.

13          THE COURT:  Isn't what you're asking that the Court

14   set aside the satisfaction of judgment?

15          MR. BIKOFF:  Exactly.

16          THE COURT:  That's not Rule 60 then.

17          MR. BIKOFF:  Well, we're asking that the satisfaction

18   be set aside, not the judgment.  But we have a case that says

19   that the satisfaction of judgment is also covered under the

20   Hunter case.

21          THE COURT:  All right.  So Mr. Ellis, what's your

22   explanation?

23          MR. ELLIS:  So the judgment needed to be satisfied,

24   your Honor.

25          THE COURT:  Yeah.  But you took the money out of an

6

1    account that you shouldn't take it from, according to the

2    plaintiff.

3              MR. ELLIS:  Well, I understand that is the plaintiff's

4    position, but I don't believe that's Judge Brown's position.

5    I've heard the -- I know that order.  I know the exception to

6    the order.  I put another order from the superior court in

7    front of you by Judge Long.  And in one of your own orders you

8    said that the Guild has got to survive.  So my --

9              THE COURT:  Let's just talk about the $93,000.

10             MR. ELLIS:  Sure.

11             THE COURT:  You say that comes within the exception of

12   normal expenses; is that your answer?

13             MR. ELLIS:  I believe it does.  And if it doesn't,

14   then Judge Brown can tell me that.  And it's not that I'm

15   trying to be hubristic about this.  It is Judge Brown's order

16   and what -- the nuances of how the state court case,

17   Judge Shubb, has gone on, has not been put in front of you, and

18   if I can just --

19             THE COURT:  I'll tell you something.  I'm very annoyed

20   at the fact that you people have two cases pending.  You're

21   playing the judges off against each other.  Two cases in state

22   court, one in federal court, and then you say I don't

23   understand what's going on in the state court.  I'm sure you're

24   telling him he doesn't understand what's going on here.

25             MR. ELLIS:  I'm not saying anything like that.  But

1   what I am saying, and I've got the case law that I gave to you,

2   which is that in a -- first of all, I don't believe that

3   Rule 60 applies here at all.

4           THE COURT:  No.  I think it's more appropriately

5   characterized as setting aside a satisfaction of judgment that

6   was entered by mistake.  That's what they're saying.  They

7   thought that they had been fully paid.  In fact, they have not.

8   And so a party that enters a satisfaction of judgment in error

9   is allowed to set it aside.

10          MR. ELLIS:  So there is no error here.  The fact is

11  the funds were borrowed by the Guild and used -- that 93,000

12  was used to satisfy the judgment.  Money is money, your Honor.

13  It's ubiquitous.  And I don't hear anyone saying that they're

14  going to give the $93,000 back.

15          THE COURT:  Well, but that would be a condition of

16  this Court's order if I rule in their favor.

17          MR. ELLIS:  I mean, a payment is a payment.  I'm not

18  trying to annoy you.  I'm not trying to play you off against

19  Judge Brown.  What I'm saying is is that if Judge Brown thinks

20  that I did something wrong or he thinks that the Guild did

21  something wrong, there's a remedy for that.  That's not the

22  remedy that's being asked for here.  They can go back in the

23  front of Judge Brown.

24          And my point is that I think it's really, really

25  significant that the people that are bringing this motion had

1    none of the conversations that I had with Mr. Serlin who you

2    recall was the attorney that was doing the enforcement

3    proceedings.  You don't have a declaration in front of him

4    about this.  They're claiming that I made misrepresentations.

5    Based upon what?  I mean, what I really don't understand is

6    what I am alleged to have done wrong, much less the Guild.

7         And the fact is is that from the time that the 2015

8    injunction came down, your Honor, in November of 2015, and

9    you'll recall I was not representing the Guild at that point in

10   time, either in this case in this court or in the state court.

11   Monies were taken to pay attorneys' fees, not for me.  Because

12   as you can see from my declaration, I haven't earned a wit of

13   one cent in my representation in these federal cases, just

14   haven't.

15        So my point is that -- and I want to cite to you one

16   of the cases that I cited in my opposition, and that's from the

17   6th United States Circuit Court of Appeals, and that's

18   Children's Center for Development in Richmond.  That's at 612

19   F.3rd 518.  And on the last page of the decision what the Court

20   of Appeals states when it's -- and this is really addressing

21   the Chambers versus NASCO inherent power.  The inherent power

22   to assess attorneys' fees -- and just as a step aside for a

23   second, that arises in the context of sanctions.  However,

24   arises from the court's authority to manage its own affairs so

25   as to achieve the orderly and expeditious disposition of cases

1    and cites the United States Supreme Court.  This rationale does

2    not extend to cases in other courts.  The inherent power of a

3    court to manage its own affairs by assessing attorneys' fees

4    does not also empower it to assess fees in cases litigated in

5    other venues.  In fact, such a conclusion would infringe on the

6    inherent power of other judges to manage their own affairs.

7             THE COURT:  I don't know why you're reading that case.

8    It has nothing to do with here.  We're not talking about

9    attorneys' fees.  We're only talking about attorneys' fees if I

10   rule against somebody, and that's not under the inherent power

11   of the court.  That's under a specific statute.

12            But the question is, and I'll ask Mr. Bikoff, he wants

13   to know why you don't go to the superior court and ask that

14   judge to make some sort of a decision that they shouldn't take

15   the money out of that account.

16            MR. BIKOFF:  Well, they already made that decision

17   with regard to Morgan Stanley.  They felt that they found that

18   the defendant was in willful disregard of the injunction order.

19   But more simply, your Honor --

20            THE COURT:  Can I -- would you give me a copy of that

21   order?  Let me look at it.

22            MR. BIKOFF:  Yes.  We'll pull that out.

23            But more simply, your Honor, the reason that we're

24   bringing this motion before you is that the funds that were

25   used to pay both the attorney fee award and the additional

1   costs that were assessed, that all of that money either is

2   owned by or claimed by the California State Grange, the

3   chartered affiliate, and so we were paid basically with our own

4   money.

5           THE COURT:  I know.

6           MR. BIKOFF:  If we had known that --

7           THE COURT:  I read all that.

8           MR. BIKOFF:  Okay.

9           THE COURT:  So is there something in this thing that

10  you've handed me that says that they were not authorized to

11  take money?

12          MR. BIKOFF:  Yes.

13          THE COURT:  Okay.  Just show it to me.

14          MR. BIKOFF:  The two underlined paragraphs, your

15  Honor.

16          THE COURT:  When the Court says the Guild has expended

17  tens of thousands of dollars on attorneys' fees in favor of a

18  CFG affiliate in an unrelated case, is the Court talking about

19  the $93,000 here?

20          MR. BIKOFF:  Yes, your Honor.

21          THE COURT:  All right.  Mr. Ellis, you want to respond

22  to that?

23          MR. ELLIS:  I don't know if that is what he's talking

24  about.

25          THE COURT:  What else could he be talking about?

1    MR. ELLIS:  He could be talking about the fees that

2    went to the Boutin firm as attorneys' fees paid by the Guild

3    from the same accounts.

4        THE COURT:  Okay.  Bikoff declaration, 4, 5, Exhibits

5    3, 4, that ought to tell me right there.  That's what he's

6    referring to.  Let me see.  Bikoff declaration, paragraphs 4

7    and 5, Exhibits 3 and 4 from the state court proceeding.

8        MR. BIKOFF:  Your Honor, we don't have that with us.

9        THE COURT:  Go home and get it.  Where is it?  It's

10   crucial.

11       MS. LANCE:  I can get it on my phone perhaps.

12       MR. BIKOFF:  Why don't you get it.

13       THE COURT:  Well, go ahead.  Just get it.  We're going

14   to answer this question.  This will give us the answer to the

15   question.

16       MR. BIKOFF:  It's on the motion for the receiver in

17   the state court.  It's my declaration that was attached to that

18   motion.

19       THE COURT:  You see my frustration.  You bring these

20   actions in state court, federal court, now if you had brought

21   them all in the same court, we would have all the records here.

22   Well, get the records.

23       MR. BIKOFF:  Okay.

24       THE COURT:  Is there another unrelated case that I

25   don't know anything about that this judge could be referring

1   to?

2          MR. ELLIS:  I don't know, your Honor, because I've

3   been, as you know, recused out of the state court cases.

4          THE COURT:  I don't know you're recused out of the

5   state court cases.  I don't know anything about the state court

6   cases.  I don't know that you're recused.

7          MR. BIKOFF:  Your Honor, I believe it applies to this

8   case, and I will get this declaration for you.

9          MR. ELLIS:  So my point is, I didn't participate in

10  that motion order.

11         THE COURT:  While we're waiting, whose idea was it to

12  take the $93,000 out of this specific account?

13         MR. ELLIS:  I don't -- I actually don't know.

14         THE COURT:  It wasn't your idea?

15         MR. ELLIS:  It was not.

16         THE COURT:  They sent you some checks from that

17  account; is that correct?

18         MR. ELLIS:  They did.

19         THE COURT:  Your clients did?

20         MR. ELLIS:  So here's -- if I may, as you recall and

21  Mr. Bikoff stated this correctly, in early March of 2017, your

22  Honor, there had been -- Mr. Serlin had filed -- I think it's

23  like March 2nd or March 3rd, 2017, had filed what the current

24  amount was with interest, and it was about 147,000.  And

25  as -- and then I asked him what is the payoff amount?  And

1    that's what we thought it was at the time.

2            THE COURT:  Thought what was?

3            MR. ELLIS:  The payoff amount to satisfy the

4    judgment.

5            THE COURT:  Okay.

6            MR. ELLIS:  Was about 147.  So that's when the

7    transaction that you see, the loan transaction from the third

8    party was entered into, confidential loan.  By the way, as I

9    indicate in my declaration, I actually have that document here.

10   It's confidential.  But if you would like to look at it in

11   camera to --

12           THE COURT:  I'm more concerned right now with the

13   93,000.

14           MR. ELLIS:  So what happened was we kept trying to get

15   a definite number from Mr. Serlin.  And I know you've got so

16   many cases you don't remember, but that became a moving target.

17   And we had -- so he just gave me a flat $50,000 attorneys' fee

18   number, and what I did is I came in to move to tax because I

19   didn't know what that number came from.  To make a long story

20   short, every time -- when we finally came down here on

21   June 9th, I thought we had the payoff amount.  It kept moving.

22   And so what we did to get the thing satisfied was just pay

23   money from my trust account, and then I would be reimbursed for

24   that money from the Guild.  And that's what happened.  It's not

25   like they sent me the two --

1          THE COURT:  I see.  So it's the other way around.  In

2    other words, you paid it from your trust account, and they

3    reimbursed you, rather than them putting the money in your

4    trust account and you're paying them.

5          MR. ELLIS:  With respect to the 93,000, that's

6    correct.

7          THE COURT:  The 93,000?

8          MR. ELLIS:  That's correct.  First that money did come

9    into my -- the loan proceeds did come into my trust account.

10   We were afraid at that point in time that other people would be

11   reaching out and trying to grab it.  That's what you have a

12   trust account for.

13         THE COURT:  All right.

14         MR. ELLIS:  Your Honor, I just want to finish up with

15   this.  I have too much respect for the district courts in

16   general and you in particular to have done something that I

17   think is improper.

18         THE COURT:  That's my impression also.

19         MR. BIKOFF:  One second, your Honor.

20         THE COURT:  I'm looking for --

21         MR. BIKOFF:  Would you like me to bring it to you?

22         THE COURT:  Your declaration.

23         MR. BIKOFF:  It's right here.

24         THE COURT:  I'd like to read it.  I can read it off of

25   his phone.

1          THE CLERK:  Okay.

2          THE COURT:  All right.  There's no question,

3   Mr. Ellis, that Judge Brown is referring to the $93,000 that

4   you paid in satisfaction of this judgment when he refers to the

5   Guild expending tens of thousands of dollars on attorneys' fees

6   in violation of his order.

7          Paragraph 4 of the Bikoff declaration to which he

8   refers starts with the statement:  The Morgan Stanley bank

9   accounts show that in June of 2017 the Guild wrote three checks

10  totaling $93,707.67 to the Ellis Law Group on account number

11  XXX at Morgan Stanley, the so-called asset management account.

12  It is my understanding that that account was subject to the

13  Court's preliminary injunction, et cetera.  And then in

14  paragraph 5 he says:  Attached are true and correct copies of

15  three checks which he describes totaling $93,707.78 received by

16  the National Grange from the Ellis Law Group to pay the costs

17  incurred by the National Grange, et cetera.

18          So he's referring to these.  Now that means that the

19  judgment in this case at least in part was attempted to be

20  satisfied with money that your client was not entitled to use

21  and which I have to assume is ultimately going to have to be

22  returned to that account.  To me, the way to handle this is to

23  grant their motion to set aside the satisfaction of judgment on

24  the ground that it was filed by mistake upon the condition that

25  they return at least the $93,000 to you so that it can be in

1    turn returned to that account.

2          And then --

3          MR. ELLIS:  So there would still be a partial

4    satisfaction?

5          THE COURT:  Well, I don't know.  Now I have to think

6    about the $145,000 because there's some argument about that.

7    It seems clear to me though that they're entitled to have it

8    set aside, whether it's because of just the $93,000 or the

9    $145,000, I haven't decided.

10          So tell me more about the 145,000.

11          MR. BIKOFF:  Well, your Honor, the 145,000 we -- the

12    check on Mr. Ellis's trust account was for 145 and change out

13    of 150,000 which was sent by the Heartland Foundation -- we

14    have a copy of the check -- two weeks before, and it says on it

15    "note," and then it's 150,000.  Two weeks later 145 and change,

16    the amount in the check from Mr. Ellis came -- was given to

17    us.

18          THE COURT:  Okay.  Now what is it about the Heartland

19    Foundation's check that causes you concern?

20          MR. BIKOFF:  Well, first of all, we claim that the

21    accounts at the Heartland Foundation belong to our affiliate,

22    the chartered California State Grange.  Secondly, the

23    California Guild -- the California Grange Foundation, which is

24    now called the Heartland Foundation, is a charitable

25    institution.  And here we have a charity, which has purposes of

1    collecting money, donations, and using it for charitable

2    purposes sending a check to pay attorneys' fees in a completely

3    unrelated matter.

4            THE COURT:  Isn't it then up to the California State

5    Grange to take some action to challenge the Heartland

6    Foundation's right to use that fund?

7            MR. BIKOFF:  Your Honor, it's our position that had

8    these payments not been concealed, had we known where they were

9    coming from, which we later found in discovery, we would never

10   have accepted those checks.

11           THE COURT:  I know.  But here's the problem.  It's not

12   the fact that you satisfied the judgment from money that they

13   shouldn't have taken.  It's the fact that they should not have

14   taken the money that you're really challenging.

15           MR. BIKOFF:  They should not have taken it.

16           THE COURT:  Here's the analogy.  The judgment debtor

17   goes out and robs a bank to get the money to pay off the debt.

18   The judgment debtor then uses the money from the bank robbery

19   to pay off the judgment.  Now what you're really contesting in

20   that hypothetical is the fact that the bank robber should not

21   have robbed the bank.  So it's really up to the bank to demand

22   the money back from the bank robber in the hypothetical just as

23   it may be the right of the Heartland Foundation to challenge

24   the right of the defendants here to use those funds in the way

25   that they did.

1          MR. BIKOFF:  Your Honor, we believe that the Heartland

2     Foundation's controlled by the California Guild, and that

3     they're -- those money came to pay those fees.

4          THE COURT:  But it's a charity.  Maybe it's the

5     California State Grange that should complain to the Heartland

6     Foundation.  I don't know.

7          MR. BIKOFF:  But except for the fact that we're the

8     ones that received the check, and that money we claim is our

9     money.  And we have -- there is another lawsuit, a separate

10    lawsuit --

11         THE COURT:  A separate lawsuit, another one a third

12    one, a fourth one, maybe a fifth one?

13         MR. BIKOFF:  There's a third one.  There may be some

14    others, but the third one is against the Heartland Foundation

15    by the California State Grange, and that one is still pending

16    but we claim those monies are ours.

17         THE COURT:  Well, maybe in that case you're going to

18    resolve the question of whether this $145,000 is stolen

19    money.

20         MR. BIKOFF:  Well, except for the fact that I think

21    pending a decision in that case, we still should set aside the

22    satisfaction.  We would have never taken that money had we

23    known.

24         THE COURT:  Okay.  Fine.  Why don't you return the

25    $145,000 as well, and I'll set aside the whole satisfaction of

1    judgment.  And then you can litigate this other case whether

2    they get to keep the 145 or whether they get to use it to

3    satisfy this judgment.

4          MR. BIKOFF:  On 145, I think what we're recommending

5    is that if we set aside the judgment --

6          THE COURT:  Not the judgment.

7          MR. BIKOFF:  I'm sorry.  The satisfaction of judgment,

8    they pay us the 145, and we will release the other 145 back to

9    the charity.

10          THE COURT:  Well, why don't you just release it to the

11    charity first?

12          MR. BIKOFF:  Well, because the funds were paid over --

13    when was it -- in 2017, and these are nonprofit entities, your

14    Honor.

15          THE COURT:  I didn't follow your answer.  Look, why

16    don't -- I've already told you you're going to have to refund

17    the $93,000.

18          MR. BIKOFF:  Right.

19          THE COURT:  Now the question is, what about the

20    $145,000?  Why don't you just refund the whole $145,000 as

21    well, and I'll just set aside the whole satisfaction of

22    judgment.  They still owe you the full amount, and then you can

23    decide where they're going to get the money to pay you off.

24          MR. BIKOFF:  The reason, your Honor, is that we don't

25    think that the Guild, the defendant, has money to pay.

1          THE COURT:  Then don't keep the 145.

2          MR. BIKOFF:  They're in receivership now.

3          THE COURT:  If you think they stole the 145, don't

4    keep it.

5          MR. BIKOFF:  Well, I think there was an improper

6    payment of money that we claim money belongs to us, but we

7    certainly don't want to return it unless we're reimbursed for

8    it.

9          THE COURT:  But it came from the Heartland Foundation,

10   right?

11         MR. BIKOFF:  It did.

12         THE COURT:  Why don't you just return it to the

13   Heartland Foundation?  Then if the Heartland Foundation

14   squanders it in some way that you feel is a violation of their

15   trust with you, then you can take that up with the court that

16   has that third suit involving the Heartland Foundation.

17         MR. BIKOFF:  Your Honor, the Heartland Foundation at

18   the time that it cut this check for 150,000 had over 200,000 in

19   its account.  It went down to about 50,000.  Then it went down

20   a few months later to 9,000.  It's now at 3,000.  They have

21   dissipated their funds.

22         THE COURT:  Well, then you want to keep the 145,

23   right?

24         MR. BIKOFF:  Yes.

25         THE COURT:  Okay.  Then I'll just set aside the

1  judgment for the 93,000.  You keep the 145.  And they owe you

2  93,000.  How is that?

3       MR. BIKOFF:  Well, we can live with that.  Although, I

4  can tell you that we don't feel that -- again, we feel we've

5  accepted something on the basis that it was coming from the

6  Guild, not from a charity that belongs to --

7       THE COURT:  But you don't trust the charity enough to

8  return the money back to them.

9       MR. BIKOFF:  Not at this point, no.

10       THE COURT:  Okay.  Well, then you want to keep the

11  145.  Is that what you want to do?

12       MR. BIKOFF:  Well, if the option is to pay it again

13  and probably never see it again or not, that would be my

14  choice.

15       THE COURT:  All right.  So Mr. Ellis, I think you

16  might be being misused by your client, quite frankly.  They

17  took that money.  They shouldn't have taken that $93,000.  They

18  threw you under the bus.

19       MR. ELLIS:  Well, here's what I have to say about

20  that, and I appreciate the comments.  I have now represented

21  Mr. McFarland and the Guild in one way or another since 2012.

22       THE COURT:  And you're not getting paid.

23       MR. ELLIS:  It's a heck of a thing, isn't it?  Well,

24  that's not their fault.  There's other stuff.  I will tell you

25  I have gotten to know Mr. McFarland quite well, and I will tell

1    you -- and this is my representation to the Court.  I know I'm

2    saying it in open court with a court reporter in front of a

3    federal judge.  I have never known him to take one wit of one

4    cent and apply it to him personally.  He has, I think,

5    impeccable integrity when it comes to that.  The only thing

6    that Mr. McFarland may be faulted for perhaps is having a ton

7    of attorneys all giving him, myself included probably,

8    contradictory advice, and wanting to see his entity, the

9    break-off guild, survive.

10           THE COURT:  Well, it's up to you.

11           MR. BIKOFF:  Your Honor, could -- would you allow

12   Mr. McDonald just to make one comment?

13           THE COURT:  What are we going to talk about?  Go

14   ahead.

15           MR. McDONALD:  Your Honor, there's a 500-pound gorilla

16   in the room that nobody's talked about yet, and that's the fact

17   that it was all concealed from the plaintiff.  It's not -- it's

18   not the illegality of the underlying conduct that --

19           THE COURT:  What do you want me to do about it?

20           MR. McDONALD:  There's two elements.

21           THE COURT:  Just tell me what you want me to do.  Why

22   are you standing there?  What do you want me to do that I

23   haven't already told you that I'm going to do?

24           MR. McDONALD:  We want you to recognize that it is the

25   concealment of the illegality that brought us into court.

1          THE COURT:  What do you mean recognize it?  What does

2    that do?

3          MR. McDONALD:  Because, your Honor, this grounds for

4    relief under two different parts of Rule 60.

5          THE COURT:  What relief do you want?

6          MR. McDONALD:  We want the judgment set aside.

7          THE COURT:  No.  I'm not going to set aside the

8    judgment.  I told you that.  It's a judgment in your favor.

9          MR. McDONALD:  The attorney fee award needs to be set

10   aside.

11         THE COURT:  And I told you I'm going to do that.

12         MR. McDONALD:  And there ought to be sanctions because

13   it was concealed.  It was concealed in bad faith.  It was

14   concealed in --

15         THE COURT:  You want sanctions against somebody that

16   you say doesn't have any money.

17         MR. McDONALD:  We want the attorney fee assessed

18   against Ellis law firm for the astonishingly, astonishingly and

19   blatant willful deceit and concealment of this fact when he

20   funneled this money through his law firm's trust account and

21   paid it to us without telling us that and represented to the

22   Court based on his own ethical qualifications, which he touted

23   to the Court, that it was in full satisfaction of the award,

24   sent to Mr. Ellis.

25         THE COURT:  You're not accomplishing anything by

1    making this personal against Mr. Ellis.  You're not helping

2    your client a bit.

3             So that's what I'm going to do, and I'll do it in a

4    written order.

5             Now let's get on to the other motion.

6             MR. ELLIS:  Thank you, your Honor.

7             MR. BIKOFF:  Thank you, your Honor.

8             (The proceedings adjourned at 2:05 p.m)

9                              --oOo--

10   I certify that the foregoing is a correct transcript from the

11   record of proceedings in the above-entitled matter.

12                          /s/ Kacy Parker Barajas

13                          _____
                            KACY PARKER BARAJAS
14                          CSR No. 10915, RMR, CRR, CRC

15

16

17

18

19

20

21

22

23

24

25